IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>                      Plaintiffs,<br>  v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br>                      Defendant. | Index No.<br>19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST, LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br><br>                      Plaintiffs,<br>  v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br>                      Defendant. | |

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

                    Plaintiffs,

   v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                    Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING VIDA'S SOLD POLICIES

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................. 2

LEGAL STANDARD .............................................................................................................. 4

ARGUMENT ........................................................................................................................... 5

    I.    Vida Assigned the Claims in the FAC to the Purchasers....................................... 5

    II.   Vida Lacks Contractual Standing to Prosecute Its Claims on the Sold Policies. ................ 8

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*,
 731 F.2d 112 (2d Cir. 1984) .................................................................................................. 6

*Acme Blacktop Paving Corp. v. Brown & Matthews, Inc.*,
 294 N.Y.S.2d 826 (App. Div. 1968) ...................................................................................... 6

*Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*,
 57 F.3d 146 (2d Cir. 1995) .................................................................................................... 7

*Bey v. City of New York*,
 2010 WL 3910231 (S.D.N.Y. 2010) ...................................................................................... 4

*Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*,
 540 F. Supp. 3d 382 (W.D.N.Y. 2021) .................................................................................. 8

*California Bank & Tr. v. Piedmont Operating P'ship, L.P.*,
 218 Cal. App. 4th 1322 (2013) .............................................................................................. 7

*Fund Liquidation Holdings LLC v. Bank of Am. Corp.*,
 991 F.3d 370 (2d Cir. 2021) .................................................................................................. 6

*Gelboim v. Bank of Am. Corp.*,
 823 F.3d 759 (2d Cir. 2016) .................................................................................................. 9

*Henderson v. Golden Corral Franchising Sys., Inc.*,
 19 CV 2878, 2021 WL 4392525, at *5 (S.D.N.Y. Sept. 23, 2021) ........................................ 9

*Horowitz v. Nat'l Gas & Electric, LLC*,
  17-CV-7742, 2021 WL 4478622 (S.D.N.Y. Sept. 30, 2021) ................................................. 6

*House of Europe Funding I, Ltd. v. Wells Fargo Bank, N..A.*,
 13 CIV. 519, 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) .................................................. 6

*L-7 Designs, Inc. v. Old Navy, LLC*,
 647 F.3d 419 (2d Cir. 2011) .................................................................................................. 4

*Lincoln Prop. Co., N.C., Inc. v. Travelers Indem. Co.*,
 137 Cal. App. 4th 905 (2006) ................................................................................................ 7

*Mariama Amar v. New York City Health & Hosps. Corp.*,
 14 CIV. 2503, 2015 WL 3754999 (S.D.N.Y. June 15, 2015) ................................................ 5

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*,
 11 F.4th 345 (5th Cir. 2021) .................................................................................................. 7

*Molina Healthcare, Inc. v. Celgene Corp.*,
　21-CV-05483-JCS, 2022 WL 161894 (N.D. Cal. Jan. 18, 2022) .............................................. 6

*Molina v. Faust Goetz Schenker & Blee, LLP*,
　230 F. Supp. 3d 279 (S.D.N.Y. 2017) ................................................................................... 6

*Moore v. City of New York*,
　15 CIV. 4578, 2016 WL 3963120 (S.D.N.Y. July 21, 2016) .................................................. 4

*Nasdaq Inc. v. Exchange Traded Mgrs. Grp., LLC*,
　17 CIV. 8252, 2018 WL 3996932, at *7 n.9 (S.D.N.Y. Aug. 21, 2018) ................................. 8

*Nat'l Rsrv. Co. of Am. v. Metro. Tr. Co. of Cal.*,
　17 Cal. 2d 827 (1941) ............................................................................................................ 7

*Patel v. Contemp. Classics of Beverly Hills*,
　259 F.3d 123 (2d Cir. 2001) .................................................................................................. 5

*Pay Tel Sys., Inc. v. Seiscor Tech., Inc.*,
　850 F. Supp. 276 (S.D.N.Y. 1994) ....................................................................................... 8

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
　14-CV-10116, 2015 WL 2359358 (S.D.N.Y. May 18, 2015) ................................................ 7

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*,
　757 F.3d 79 (2d Cir. 2014) ............................................................................................... 8, 9

*Roberts v. Babkiewicz*,
　582 F.3d 418 (2d Cir. 2009) ................................................................................................. 4

*Sira v. Morton*,
　380 F.3d 57 (2d Cir. 2004) ................................................................................................... 5

*SM Kids, LLC v. Google LLC*,
　963 F.3d 206 (2d Cir. 2020) ................................................................................................. 8

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
　436 F. Supp. 3d 653 (S.D.N.Y. 2020) .................................................................................. 8

*Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon*,
　16 CIV. 1597, 2018 WL 1417850 (S.D.N.Y. Mar. 8, 2018) ................................................ 6

*Valdin Inv. Corp. v. Oxbridge Cap. Mgmt., LLC*,
　651 F. App'x 5 (2d Cir. 2016) ............................................................................................. 6

*VoiceAge Corp. v. RealNetworks, Inc.*,
　926 F. Supp. 2d 524 (S.D.N.Y. 2013) .................................................................................. 5

*Warth v. Seldin*,
　422 U.S. 490 (1975) ................................................................................................................ 8

**<u>Rules</u>**

Fed. R. Civ. P. 10(c) .................................................................................................................... 4

Fed. R. Civ. P. 12(c) .................................................................................................................... 4

Defendants John Hancock Life Insurance Company of New York ("JHNY") and John Hancock Life Insurance Company (U.S.A) ("JHUSA") (collectively, "John Hancock") respectfully submit this memorandum of law in support of their motion under Federal Rules of Civil Procedure 12(c) for judgment on the pleadings dismissing Vida's claims as to 21 policies that were previously assigned to third parties (the "Sold Policies").[1]

## INTRODUCTION

Vida alleges that John Hancock impermissibly increased cost of insurance ("COI") rates for certain universal life insurance policies Vida owns or owned in violation of John Hancock's contractual obligations pursuant to those policies.  First Am. Compl. ¶ 4 (Dkt. 102) ("FAC").  Vida alleges breach of the express terms of the contracts; breach of the covenant of good faith and fair dealing implied in those contracts; conversion, on the theory that the contracts created a "property interest in" certain funds; and declaratory relief, seeking a declaration that the COI increase breached the contracts.  *Id.* ¶¶ 49–81.  Vida, however, has sold its interest in 21 of the 76 policies identified in the FAC, and expressly assigned to the purchasers any right Vida had to bring the claims asserted in the FAC.  *Id.* ¶¶ 11, 12, 14 & nn.2–4, Ex. 5; Answer to FAC ¶¶ 11, 12, 14 & nn.4–6, Exs. A–J (Dkt. 117) ("Ans.").  Therefore, Vida lacks contractual standing to maintain this action with respect to the Sold Policies, and its claims related to those policies must be dismissed.  Dismissal would resolve the only "unique" aspect of Vida's cases identified by Vida's counsel in response to the Court's recent request.  (Dkt. 163 at 1.)

---

[1] "Vida" refers to the three plaintiffs who sold one or more of the Sold Policies: VICOF II Trust (policies 1200378, 93875979, and 94193604); Vida Longevity Fund, LP (policies 1204979, 1202867, 1203029, 1203695, 1217443, 93443638, 93506590, 93605368, 93862431, 93967396, 93994457, 94177094, 93714061, and 93766673); and Vidaquant Sub-Fund Delaware Trust (policies 93719300, 93720050, 94009917, and 94010824).  First Am. Compl. (Dkt. 102) ¶¶ 11, 12, 14 nn.2–4.

1

**FACTUAL BACKGROUND**

Vida's FAC identifies 76 policies for which it alleges John Hancock increased COI rates in a manner contrary to the terms of the contracts. Vida alleges that 21 of those policies "were sold by" Vida "after the effective date of the COI increases." FAC ¶¶ 11, 12, 14 & nn.2–4, Ex. 5. For the 55 policies Vida alleges it still owns, Vida seeks damages measured by the difference between the actual COI charges on those policies and the COI charges "that would have been in effect absent the COI Rate Increases," plus certain expenses. *Id.* ¶¶ 53, 60, 67, 76. For the Sold Policies, however, Vida does *not* seek damages measured by alleged COI overcharges, and instead seeks only "the reduction in purchase price paid by the third-party purchaser for these policies due to the COI Rate Increases." *Id.*

The purchase-and-sale agreements ("PSAs") for the policy sales that Vida referenced in its FAC are attached to John Hancock's Answer. They plainly establish that, when Vida sold each of the Sold Policies, it sold, transferred, and assigned any and all rights to bring the claims in the FAC as to the Sold Policies. Vida's PSAs contain three variations of operative language, each of which establishes that Vida has not retained the right to sue for express or implied breach of contract, conversion, or declaratory relief in connection with any of the Sold Policies.

Vida used the first type of PSA to convey 16 of the 21 Sold Policies in five separate sales.[2] In each "Type I PSA," Vida agreed to "sell, convey, transfer, assign and deliver to the Purchaser, and the Purchaser shall purchase, acquire and accept from the Seller, on the Closing Date, the

---

[2] *See* Ans. Ex. A, VIDA-JH-000133760, at -796 (conveying policy number 1200378); Ex. C, VIDA-JH-000130970, at -1006–08 (conveying policies 93994457, 93766673, 93605368, 1203695, 1202867); Ex. D, VIDA-JH-000133379 at -417 (conveying policies 93714061); Ex. E, VIDA-JH-000133453, at -491–92 (conveying policies 93506590, 1204979, 93443638, 94177094, 1203029, 93862431); Ex. H, VIDA-JH-000133559, at -595–97 (conveying policies 93720050, 94010824); Ex. I, VIDA-JH-000133628, at -663 (conveying policy 94009917).

Seller's respective legal and equitable rights, titles and interests in and to such Transferred Policy and all the other Assets relating to such Transferred Policy (other than Excluded Assets)."[3] The Type I PSAs define the "Assets" conveyed to mean "all of Seller's legal and equitable rights, titles and interests in and to each Policy, including, without limitation, the following:" "**all of Seller's rights, claims, actions, remedies, powers and privileges with respect to the Policies, including, without limitation, the right to service the Policies and to enforce against any Person any obligations that may arise under any Policy Document (and all proceeds from such enforcement)**;" and they define "Excluded Assets" to include only two items not relevant here.[4]

Vida used a second type of PSA to convey three policies in three separate sales.[5] In each "Type II PSA," Vida agreed to "sell, transfer, assign, convey, set over and deliver to Purchaser: (i) **all of Seller's right, title and interest under each Purchased Asset**;" and "(ii) **all claims, causes of action, defenses and right of offset or counterclaim against a third party (other than the Purchaser and its affiliates), relating to or in connection with any of the Purchased Assets**."[6]

Vida used a third type of PSA to convey two policies in one sale, and in the "Type III PSA," Vida agreed to transfer "all of the Seller's right, title and interest in, to and under such Policy and the other Conveyed Property relating to each such Policy" where "Conveyed Property" was defined to include, *inter alia*, each "such Policy and any and all rights relating thereto" and

---

[3] Ans. Ex. A, at -772; Ex. C, at -982; Ex. D, at -391; Ex. E, at -465; Ex. H, at -571; Ex. I, at -639.
[4] *See* Ans. Ex. A, at -764–66, Ex. C, at -974–75; Ex. D, at -383–85; Ex. E, at -457–59; Ex. H, at -563–64; Ex. I, at -632–33. Unless otherwise noted, all citations and internal quotes are omitted, and all emphasis added.
[5] Ans. Ex. F, VIDA-JH-000133819, at -846 (conveying policy 1217443); Ex. G, VIDA-JD-000133528, at -555 (conveying policy 93969396); Ex. J, VIDA-JH-000133731, at -757 (conveying policy 93719300).
[6] Ans. Ex. F, at -825; Ex. G, at -534; Ex. J, at -737.

3

"**all rights of recourse or recovery against any third party, and all other claims, rights and causes of action, relating to or arising out of any of the foregoing**."[7]

Vida alleges that it sold each of the Sold Policies, and yet still seeks "reduction in purchase price" damages, while disclaiming COI overcharge damages, for those Policies. FAC ¶¶ 11, 12, 14 & nn.2–4, Ex. 5; *id.* ¶¶ 53, 60, 67, 76. In so doing, Vida relied upon and incorporated the PSAs into the FAC. The terms of those PSAs, which John Hancock attached to its Answer, show that Vida assigned any rights it had to bring the claims asserted in the FAC for the Sold Policies.

## LEGAL STANDARD

A party may move for judgment on pleadings any time after the pleadings are closed, so long as it is early enough to not delay trial. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is particularly appropriate where it "serves the interest of judicial economy and may save the parties unnecessary time and expense which otherwise would be incurred during trial." *Bey v. City of New York*, 01 CIV. 8906, 2010 WL 3910231, at *3 (S.D.N.Y. Sept. 21, 2010), *aff'd*, 454 F. App'x 1 (2d Cir. 2011).

In deciding a motion for judgment on the pleadings, the Court may consider "the complaint, the answer, [and] any written documents attached to them," including documents attached to the Answer. *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (considering exhibits to defendant's Answer, after finding "[t]here is no question that the email exhibits were 'attached' to Old Navy's Answer"); *Moore v. City of New York*, 15 CIV. 4578, 2016 WL 3963120,

---

[7] Ans. Ex. B, VIDA-JH-000133692, at -697 (defining scope of "Purchase and Sale"); *id.*, at -727 (conveying policies 93875979, 94193604).

4

at *1 n.2 (S.D.N.Y. July 21, 2016) (relying on documents attached to the defendant's Answer in deciding a 12(c) motion); *Mariama Amar v. New York City Health & Hosps. Corp.*, 14 CIV. 2503, 2015 WL 3754999, at *5 (S.D.N.Y. June 15, 2015) (same). A pleading also includes "materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). A document not expressly cited is incorporated into the pleading if it is integral to the plaintiff's ability to pursue its cause of action. *Id.* Here, there can be no dispute that the PSAs are integral to Vida's claims in the FAC, as it alleges that these sales took place and asserts a new theory of damages that relies on the terms and effects of the sales.

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Judgment on the pleadings "can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013).

## ARGUMENT

### I. Vida Assigned the Claims in the FAC to the Purchasers.

Vida sold the Sold Policies on terms that stripped it of any right to bring the claims at issue in this case. The PSAs use broad language to convey to the purchasers "all of Seller's rights, claims, actions, remedies, powers and privileges" including "to enforce against any Person any obligations that may arise under any Policy Document" (Type I PSAs); "all claims [or] causes of action … relating to or in connection with any of the Purchased Assets" (Type II PSAs); and "all rights of recourse or recovery" and "all other claims, rights and causes of action, relating to or arising out of any of the foregoing" (Type III PSA). A broad assignment of "all rights, title, and

5

interest" includes within its scope the assignor's legal claims under the contract. *See, e.g.*, *Triaxx Prime CDO 2006-1, Ltd. v. Bank of New York Mellon*, 16 CIV. 1597, 2018 WL 1417850, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd sub nom. Triaxx Prime CDO 2006-1, Ltd. v. U.S. Bank Nat'l Ass'n*, 741 F. App'x. 857 (2d Cir. 2018) (assignors lost right to bring contract claims because assignment of "'all of its right, title and interest' in 'any and all ... property' is broad enough to include the transfer of the right to bring contract claims relating to" the contracts).

Such an assignment divests Vida of its right to enforce the claims it has brought on the Sold Policies, as "[i]t is hornbook contract law that 'when rights are assigned, the assignor's interest in the rights assigned comes to an end.'" *Horowitz v. Nat'l Gas & Electric, LLC*, 17-CV-7742, 2021 WL 4478622, at *12 n.8 (S.D.N.Y. Sept. 30, 2021); *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 125 (2d Cir. 1984) ("An unequivocal and complete assignment extinguishes the assignor's rights against the obligor[.]"); *Valdin Inv. Corp. v. Oxbridge Cap. Mgmt., LLC*, 651 F. App'x 5, 7 (2d Cir. 2016) ("Valdin's assignment of its rights extinguished its claims against Oxbridge and deprived it of any interest in this litigation."); *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381–382 (2d Cir. 2021) (limiting *Aaron Ferer* and *Valdin* but reaffirming "the prohibition on raising another's legal rights" as "a prudential rule of standing"); *Molina v. Faust Goetz Schenker & Blee, LLP*, 230 F. Supp. 3d 279, 285 (S.D.N.Y. 2017) ("A valid assignment divests the assignor of all interest in (and control over) the suit[.]"); *House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 13 CIV. 519, 2014 WL 1383703, at *16 (S.D.N.Y. Mar. 31, 2014) ("A party that has assigned away its rights under a contract lacks standing to sue for breach of that contract."); *Molina Healthcare, Inc. v. Celgene Corp.*, 21-CV-05483-JCS, 2022 WL 161894, at *15 (N.D. Cal. Jan. 18, 2022) ("assignment of 'all "rights, title and interest" in claim' constituted assignment 'lock, stock, and barrel'," and therefore

6

"'no other party (including the assignor) has standing to bring the claims' asserted."); *Acme Blacktop Paving Corp. v. Brown & Matthews, Inc.*, 294 N.Y.S.2d 826, 827 (App. Div. 1968) (Assignor of "all its right, title and interest to moneys due or to become due under the contract" had "no interest in the proceeds of the contract and therefore may not maintain the present action.").

The broad assignment here includes the claims in the FAC: each of the PSAs expressly states that the assignment includes all claims that relate to or arise out of the assigned policies. This assignment and extinguishment of claims in the assignor extends not only to claims literally styled as a "breach of contract," but also those sounding in tort that arise out of purported breaches of contractual obligations. *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 151-52 (2d Cir. 1995); *see Nat'l Reserve v. Co. of Am. v. Metro. Tr. Co. of Cal.*, 17 Cal. 2d 827, 833 (1941) (assignment includes any claim that "cannot be asserted apart from the contract out of which it arises"); *Lincoln Prop. Co., N.C., Inc. v. Travelers Indem. Co.*, 137 Cal. App. 4th 905, 914–15 (2006) (the implied covenant is "a supplement to the express contractual covenants" and does not have "an existence independent of its contractual underpinnings"). Assignment of a contract entails assignment of claims and causes of action "incidental thereto," and extinguishes them in the transferee, *any time* a contract is assigned "unless a contrary intention is shown." *California Bank & Tr. v. Piedmont Operating P'ship, L.P.*, 218 Cal. App. 4th 1322, 1347–48 (2013). The rule applies here *a fortiori* because Vida's PSAs are not silent; rather, they are particularly explicit that Vida assigned its rights to bring all claims that arise out of alleged breaches of the Sold Policy contracts Vida assigned, includes all of the claims alleged in the FAC.

7

## II. Vida Lacks Contractual Standing to Prosecute Its Claims on the Sold Policies.

Because Vida has assigned its rights to bring claims on the Sold Policies to the purchasers, Vida's continued prosecution of these claims violates the established "prohibition on raising another's legal rights." *Fund Liquidation*, 991 F.3d at 382 (describing that as "a prudential rule of standing"); *see also Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 351 (5th Cir. 2021); *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 14-CV-10116, 2015 WL 2359358, at *2 (S.D.N.Y. May 18, 2015) (finding "plaintiffs are contractually barred from directly asserting claims as to the certificates at issue in this action" because "such claims belong to the indenture trustees"). In particular, Vida no longer has contractual standing, because it lacks "the right to enforce a contract." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020). *See* Ans. Exs. A, C, D, E, H, I (assigning the right "to enforce against any Person any obligations that may arise under any Policy Document (and all proceeds from such enforcement)"); Exs. F, G, J (assigning "all claims [and] causes of action" "relating to or in connection with any of the Purchased Assets"); Ex. B (assigning "all rights of recourse or recovery" "relating to or arising out of" the policies). Because Vida lacks contractual standing, it has failed to state a claim related to the Sold Policies. *Buffalo Xerographix, Inc. v. Hartford Ins. Grp.*, 540 F. Supp. 3d 382, 390 (W.D.N.Y. 2021); *Nasdaq Inc. v. Exchange Traded Mgrs. Grp., LLC*, 17 CIV. 8252, 2018 WL 3996932, at *7 n.9 (S.D.N.Y. Aug. 21, 2018).

Contractual standing is a version of the general rule that a plaintiff may only "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)). Vida cannot pursue such relief because it is barred "from asserting the rights or legal interests of others in order to obtain relief" for an alleged injury

8

to itself. *Id.* In particular, "a contract may be enforced only by contracting parties or intended third-party beneficiaries," *id.*, and an assignor "cannot claim breach of contract since she is no longer individually a party to the contract that was allegedly breached," *Henderson v. Golden Corral Franchising Sys., Inc.*, 19 CV 2878, 2021 WL 4392525, at *5 (S.D.N.Y. Sept. 23, 2021).

Contractual standing is one of a family of prudential doctrines meant to avoid "abuse of litigation process," including the risk of "subsequent duplicative litigation." *Pay Tel Sys., Inc. v. Seiscor Tech., Inc.*, 850 F. Supp. 276, 278 (S.D.N.Y. 1994); *see Town & Country Linen Corp. v. Ingenious Designs LLC*, 436 F. Supp. 3d 653, 663 (S.D.N.Y. 2020), *partially vacated on other grounds*, 18 CIV. 5075, 2020 WL 996732 (S.D.N.Y. Mar. 2, 2020) (prudential standing in patent cases aims to avoid "risk of 'multiple litigations and multiple liabilities and recoveries'"); *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 772 (2d Cir. 2016) (antitrust standing avoids the "risk that other plaintiffs would be entitled to recover duplicative damages"). The risk of duplicative recovery here appears on the face of the pleadings. Vida disclaims damages measured by alleged COI overcharges on the Sold Policies, but still alleges that it is entitled to damages for the same alleged breach measured by a different yardstick. *Id.* ¶¶ 53, 60, 67, 76. Vida thus implicitly concedes that it has transferred *some* right to recover for alleged breach of the Sold Policies to the purchasers, yet it still asserts a right to recover for the *exact same* alleged breach. It is axiomatic that two parties cannot recover inconsistent, duplicative damages awards for the same alleged breach simply by using two different damages calculations. The contractual standing rule, which "bars litigants from asserting the rights or legal interests of others," *Rajamin*, 757 F.3d at 86, is the tool this Court possesses to ensure finality and protect both the parties before it and not yet before it from the risk of multiple and inconsistent judgments.

Vida's lack of contractual standing is plain from the pleadings, particularly Vida's allegation that it "sold" the policies and all claims related to breach of the policies, understood in light of the PSAs that are incorporated in and integral to the FAC and attached to the Answer. Accordingly, the issue is ripe for judgment on the pleadings.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court grant its motion for judgment on the pleadings, dismissing Vida's claims as to the Sold Policies.

Dated: February 4, 2022

/s/ Alan B. Vickery
Alan B. Vickery
John F. LaSalle
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

Jack Wilson
Joseph F. Kroetsch
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Tel.: (914) 749 8200
Fax: (914) 749-8300

*Attorneys for Defendants*