IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>      Plaintiffs,<br><br> v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br>      Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br>      Plaintiffs,<br><br> v.<br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>      Defendant. | |

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

                        Plaintiffs,

    v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                        Defendant.

## DEFENDANTS' MEMORANDUM OF LAW ISO MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE REGARDING REGULATORY MATTERS

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "Defendants" or "John Hancock") respectfully move this Court for an order *in limine* precluding Plaintiffs from offering any evidence or arguments, including any expert opinions, regarding the New York Department of Financial Services's ("NYDFS") review of or commentary regarding John Hancock's increase of cost of insurance ("COI") rates on certain Performance UL policies (the "COI Redetermination")—including correspondence between John Hancock and the NYDFS—and any evidence or arguments regarding John Hancock's compliance with regulatory requirements ("Regulatory Matters").

As the Court has already acknowledged, "this is a contract case, not a regulatory case." Ex. A, Jan. 9, 2023 Status Conference Tr. at 32:10-11.  Nevertheless, between the more than 4,900 exhibits on Plaintiffs' fifth amended exhibit list, Ex. B, Plaintiffs' Fifth Amended Exhibit List, Plaintiffs' designations of deposition testimony, and Plaintiffs' witness list, it is clear that Plaintiffs intend to introduce evidence and make arguments regarding the Regulatory Matters in droves.  Indeed, Plaintiffs

2

have retained an expert whose sole purpose is to address the NYDFS's review of, or commentary regarding, John Hancock's increase of COI rates. Evidence concerning the Regulatory Matters—including regulatory compliance or commentary by regulators—is irrelevant to and will only confuse the issues in this case, and is a waste of time, unfairly prejudicial to Defendants, and likely to unduly prejudice the jury. Accordingly, such evidence and arguments must be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.[1]

## BACKGROUND

As both this Court and Plaintiffs have repeatedly recognized, "this is a contract case, not a regulatory case." Ex. A, Jan. 9, 2023 Status Conference Tr. at 32:10-11; *see also, e.g.*, *id.* at 32:22-23 ("I repeat, this is not a regulatory case. It's a contract case."); Ex. C, Oct. 13, 2021 Hr'g Tr. at 3:16-19 ("This is a contract claim and the contract spells out exactly what it is that's at issue."); Ex. D, Jan. 5, 2022 Hr'g Tr. at 18:24-25 (Plaintiffs' counsel acknowledging that the "liability side of the case" revolves around "whether John Hancock breached the policies of improperly raising rates").

Specifically, Plaintiffs claim that John Hancock's COI Redetermination breached the unambiguous terms of the Performance UL policies by increasing COI rates allegedly in an unfairly discriminatory manner and based on considerations other than John Hancock's expectations of future experience specified in the contracts. *See* Plaintiffs' Second Amended and Consolidated Complaint (Dkt. 179) at ¶¶ 4, 51. The policy provisions that Plaintiffs assert that John Hancock breached appear in two policy forms on which the Performance UL Products were issued.[2] The 03PERUL policy form states, in relevant part:

> The Applied Monthly Rates will be ***based on our expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and***

---

[1] Also submitted herewith is the Declaration of Matthew T. Martens in Support of John Hancock's Motions *in Limine* Nos. 1-11, which attaches all exhibits cited in John Hancock's 11 motions *in limine*. The exhibits cited herein are cited as "Ex. []."

[2] One of the relevant policy forms refers to "Applied Monthly Rates" whereas the other relevant policy form refers to "Cost of Insurance Rates." For ease of reference and simplicity, John Hancock will refer herein to both as "COI rates."

3

> *future tax, reserve and capital requirements* … Any change in the Applied Monthly Rates for the Basic Sum Insured or for the Additional Sum Insured will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force for the same length of time (emphasis added).

*See, e.g.*, Ex. E, DX C, JH_LEONARD_000011149 at -164. The 06PERFUL policy form states, in relevant part:

> The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and will be *based on <u>our</u> expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions* … We review our Cost of Insurance rates from time to time, and may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured (emphasis added).

*See* Ex. F, DX D, JH_LEONARD_000175087 at -109. As Plaintiffs' counsel has previously admitted, Plaintiffs' additional implied covenant of good faith and fair dealing and conversion claims rise and fall on John Hancock's compliance with the above contractual provisions. *See* Ex. G, July 21, 2022 Hr'g Tr. at 6:25-7:3 (Plaintiffs' counsel acknowledging all claims in the case are derivative of the breach of contract claim, stating it is "likely" that if Plaintiffs "[lose] on the breach of contract, [they] lo[]se everything").

Nevertheless, despite the Court's admonition that Plaintiffs' counsel "will not prejudice the jury by bringing in what regulators did or did not do," Ex. A, Jan. 9, 2023 Status Conference Tr. at 33:4-5, Plaintiffs have made clear that they intend to introduce at trial at least three broad categories of evidence regarding the Regulatory Matters:

1. Evidence regarding John Hancock's compliance with New York Regulation 210[3];

---

[3] *See, e.g.*, Plaintiffs' Designations, Zahir Bhanji 30(b)(6) Testimony Designations 146:12-15; 146:18-21; 147:14-19; 147:22-24; 155:11-15; 155:17-20; 156:24-157:4; 157:6-7; Faisel Gulamhussein 30(b)(6) Testimony Designations 119:16-20; 119:23-120:4; 180:20-24; 181:3-8; 181:11-11; 182:8-13; 182:16-22; Richard Harris Dec. 3, 2020 Testimony Designations 276:19-23; 277:2-9.

4

2. Exhibits regarding correspondence between John Hancock and the NYDFS[4]; and

3. The report and trial testimony of Plaintiffs' purported regulatory expert, Gregory Serio.[5]

By attempting to inject the Regulatory Matters into this case, Plaintiffs are trying to re-write the policies that they acquired with full knowledge of the policies' terms by retroactively reading into the policy forms requirements those policy forms unambiguously do not contain. None of this evidence is relevant, and whatever relevance it may have is far outweighed by its prejudicial effect.

## ARGUMENT

Motions *in limine* "can play an especially important and useful role in a jury trial," particularly where, as here, Plaintiffs are seeking to infuse into an already complicated case irrelevant and unnecessary evidence regarding the Regulatory Matters that is likely to confuse the jury and waste time. *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Insdustrie*, 2015 WL 5459662, at *1 (S.D.N.Y. Sept. 16, 2015); *see also Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (Hellerstein, J.) ("The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." (citation omitted)). The Court should exclude evidence of the Regulatory Matters.

### I. New York Regulation 210 and John Hancock's Compliance

Plaintiffs intend to introduce evidence—both fact evidence and expert opinion evidence—regarding the requirements of New York Regulation 210 ("Reg. 210"), N.Y. Comp. Codes R. & Regs. Tit. 11, § 48 *et seq*, and John Hancock's compliance with Reg. 210.[6] Plaintiffs' focus on Reg. 210 is

---

[4] *See, e.g.*, PTX10264, PTX10265, PTX10269, PTX10273, PTX10274, PTX10275, PTX10278, PTX10280, PTX10296, PTX10460, PTX10495, PTX10515, PTX10523.

[5] *See* PTX10141.

[6] *See, e.g.*, Plaintiffs' First Amended Deposition Designations, Zahir Bhanji 30(b)(6) Testimony Designations 146:12-15; 146:18-21; 147:14-19; 147:22-24; 155:11-15; 155:17-20; 156:24-157:4; 157:6-7; Faisel Gulamhussein 30(b)(6)

not only irrelevant but is likely to confuse the issues for the jury and needlessly waste time.

*First*, John Hancock's compliance with Reg. 210 is not relevant to Plaintiffs' claims. As the Court has repeatedly recognized—and as Plaintiffs themselves have acknowledged—"this is a contract case, not a regulatory case." *See* Ex. A, Jan. 9, 2023 Status Conference Tr. at 32:10-11; *see also, e.g.*, *id.* and 32:22-23; Ex. C, Oct. 13, 2021 Hr'g Tr. at 3:16-19; Ex. D, Jan. 5, 2022 Hr'g Tr. at 18:24-25. That is because Plaintiffs' claims turn on whether John Hancock breached its policy forms, not whether it complied with any extracontractual regulatory requirements. *See, e.g., Sciascia v. Rochdale Village, Inc.*, 851 F.Supp.2d 460, 477 (E.D.N.Y. 2012) ("'[A] court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties.'"). Indeed, there can be no argument that the Performance UL policy forms somehow guarantee compliance with Reg. 210. That regulation went into effect more than eight years after the Performance UL policies were issued, and the regulation only has application in New York—not the various other states in which Plaintiffs' policies were issued. *See* N.Y. Comp. Codes R. & Regs. Tit. 11, § 48.0 (noting that Reg. 210 applied to "life insurance policies and annuity contracts delivered or issued for delivery in this State [*i.e.*, New York]").

Furthermore, the policy forms at issue, which make no reference to Reg. 210 or any other regulation concerning the redetermination of COI rates, make clear that "[t]he entire contract between the applicant and [John Hancock] consists of the policy, such application, and any riders and endorsements … **Nothing is incorporated by reference**." *See* 03PERUL Policy Form, Ex. E, DX C, JH_LEONARD_000011149 at -168 (emphasis added); 06PERFUL Policy Form Ex. F, DX D, JH_LEONARD_000175087 at -114 (emphasis added); *see also* N.Y. Ins. Law § 3204(a)(1) ("Every policy of life … insurance … delivered or issued for delivery in this state, shall contain the entire

---

Testimony Designations 119:16-20; 119:23-120:4; 180:20-24; 181:3-8; 181:11-11; 182:8-13; 182:16-22; Richard Harris Dec. 3, 2020 Testimony Designations 276:19-23; 277:2-9.

contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued."). Whether John Hancock complied with Reg. 210 therefore does not make it any more or less probable that John Hancock complied with its policy forms. *See* Fed. R. Evid. 401.

*Second*, evidence regarding John Hancock's compliance with Reg. 210 will only confuse the issues for the jury, waste time, and risk eliciting reactions or decisions from jurors based on matters *other than* John Hancock's compliance with the relevant provisions of the policy forms. *See, e.g.*, *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 260 (S.D.N.Y. 2015) (excluding evidence that was likely to lead to "confusion" and "emotional reaction or policy judgment" from jurors that "would have no proper bearing on the discrete and narrow issues left to be tried"). To the extent the jury hears evidence regarding John Hancock's compliance with Reg. 210, the jury may substitute its irrelevant judgment regarding John Hancock for its required, relevant judgment regarding whether John Hancock complied with the policy form provisions. Moreover, to the extent Reg. 210 is at all relevant, it is only relevant to Plaintiffs' policy forms issued in New York. N.Y. Comp. Codes R. & Regs. Tit. 11, § 48.0 (noting that Reg. 210 applied to "life insurance policies and annuity contracts delivered or issued for delivery in this State [*i.e.*, New York]"). Introducing evidence regarding John Hancock's compliance with Reg. 210—but not any other state's insurance regulations—will place undue focus on New York and risk the jury applying standards reflected in Reg. 210 to policies issued in states other than New York.

For the foregoing reasons, the Court should exclude from trial evidence and arguments regarding Reg. 210 and John Hancock's compliance with Reg. 210 pursuant to Fed. R. Evid. 401, 402, and 403.

## II.  Communications Between John Hancock and the NYDFS

Putting aside whether correspondence between the NYDFS—New York's state insurance regulator—and John Hancock is admissible under Federal Rules of Evidence 801, 802, and 803,

7

correspondence between John Hancock and the NYDFS, presentations made to the NYDFS, and internal communications regarding correspondence with the NYDFS (the "NYDFS Correspondence") that Plaintiffs seek to introduce are both irrelevant and unduly prejudicial.

As an initial matter, the NYDFS Correspondence is irrelevant because it **nowhere** addresses whether John Hancock complied with the relevant provisions of the policy forms. Rather, the eight months of correspondence concerns myriad irrelevant topics, including John Hancock's courtesy submission to the NYDFS of a description of its methodology for redetermining COI rates, the NYDFS's observations regarding John Hancock's Original Pricing Assumptions for the Performance UL products, and emails scheduling meetings and calls between John Hancock and the NYDFS. *See supra* n. 4. None of this evidence has any bearing on whether John Hancock complied with the provisions of the policy forms at issue and is therefore irrelevant. *See* Fed. R. Evid. 401 (defining relevant evidence as that which has any tendency to make a fact "of consequence" more or less probable).[7]

Even if the NYDFS Correspondence were relevant (it is not), any limited probative value is far outweighed by the danger that a focus on such correspondence with a state insurance regulator regarding matters having no bearing on John Hancock's compliance with the policy forms could confuse the issues for or mislead the jury, or waste valuable time. *See* Fed. R. Evid. 403. The Second Circuit has often recognized that "[d]istrict courts have broad discretion to balance probative value against possible prejudice" under Rule 403. *Luitpold Pharm.*, 2015 WL 5459662, at *1. **Indeed, the Court has already recognized that "what regulators did or did not do" would "prejudice the jury."** Ex. A, Jan. 9, 2023 Status Conference Tr. at 33:4-5. Particularly where the NYDFS Correspondence has no bearing on whether John Hancock breached its policy forms, the balancing called for by Rule 403 precludes the

---

[7] As separately addressed in John Hancock's Motion *in Limine* No. 3, evidence regarding the Original Pricing Assumptions for the Performance UL products is irrelevant and should be independently excluded pursuant to Federal Rules of Evidence 401, 402, and 403.

introduction of the NYDFS Correspondence by Plaintiffs.

### III. Serio's Report and Opinions

The opinions of Plaintiffs' purported regulatory expert, Gregory Serio ("Serio"), should be excluded as both irrelevant and because they constitute improper expert opinion under Federal Rule of Evidence 702.

#### a. Serio's Opinions Are Irrelevant And Prejudicial

As an initial matter, Serio's testimony is nothing more than commentary and purported "opinion" regarding the import of the same NYDFS Correspondence that is irrelevant and prejudicial for the reasons stated above. Indeed, Serio admits that he was "retained by Plaintiffs to analyze, evaluate, and render [his] opinion concerning" Defendants' "submissions to the [NYDFS]" concerning the COI Redetermination and the NYDFS's "responses to those submissions." Ex. H, PTX 10141, Expert Report of Gregory Serio ("Serio Report") at 1. To the extent the NYDFS Correspondence is irrelevant, so too are Serio's purported regulatory opinions.

Moreover, all of Serio's purported regulatory opinions are directed at, and seek to undermine the import of, a March 9, 2018 letter sent to John Hancock by the NYDFS reflecting the NYDFS's view that the COI Redetermination did "not violate any New York State statutes or regulations" (the "No Violation Letter"). *See* Ex. H, Serio Report at 7. But, as noted above, the fact that John Hancock's COI Redetermination complied with New York statues or regulations has no bearing on whether the COI Redetermination complied with the unambiguous provisions of the policy form at issue. And nowhere does Serio offer any opinion regarding the unambiguous policy form language at issue, Plaintiffs' purported theories of breach, or any other opinions bearing on relevant matters. Nor can he, as it is "axiomatic that an expert is not permitted to … interpret legal terms." *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 255 (S.D.N.Y. 2022) (citation omitted). Accordingly, Serio's opinions have no probative value to the issues to be tried and are, instead, a regulatory "sideshow" that

will unnecessarily waste the jury's time. *See Luitpold Pharm.*, 2015 WL 5459662, at *16 (granting motion *in limine* under Fed. R. Evid. 402 and 403 in breach of contract case to preclude introduction of "sideshow" and irrelevant testimony regarding regulatory submissions and finding the purported evidence "a waste of time").

Accordingly, the Court should exclude from trial any evidence or arguments from or concerning Serio's opinions. *See* Fed. R. Evid. 401, 402, 403.

### b. Serio's Opinions Are Improper Expert Opinion

Serio's opinions and trial testimony should be excluded for the independent reason that they reflect improper expert opinion under Federal Rule of Evidence 702. Rule 702 dictates that an expert may only testify in the form of an opinion if: the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; "the testimony is the product of reliable principles and methods"; and the "expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Here, it is beyond dispute that Serio's opinions are neither helpful to understanding the evidence or determining a fact in issue, nor are they a "reliabl[e]" application of "reliable principles and methods." *Id*.

As noted above, Serio's opinions purport to explain the NYDFS Correspondence. For example, one-quarter of Serio's report reflects a recitation and characterizations of various correspondence between John Hancock and the NYDFS. *See, e.g.*, Ex. H, Serio Report at 10 (excising portions of emails between NYDFS and John Hancock and purporting to characterize the emails). Serio's opinions are also premised on speculation regarding the purported motives of the NYDFS and John Hancock. For example, Serio purports to characterize John Hancock's motivations in engaging in discussions with the NYDFS, *id*. at 11, John Hancock's motivations underlying outreach to certain individuals at the NYDFS, *id*. at 17, and the NYDFS's motivations in issuing the No Violation Letter, *id*. at 19. But the jury is itself more than capable of understanding correspondence between John Hancock and its

10

regulator; the jury does not need an intermediary to explain what it is that either John Hancock or the NYDFS is saying or to draw speculative inferences unsupported by the factual record. *See United States v. Cook*, 922 F.2d 1026, 1036 (2d Cir. 1991) ("Expert testimony is only admissible when such testimony is helpful to the trier of fact.  Such testimony is unnecessary where the jury is capable of comprehending the facts and drawing the correct conclusions from them.  Indeed, the judge in his discretion may exclude expert testimony when it is not helpful to the jury").

Moreover, Serio is not qualified to offer the opinions he offers.  Serio's tenure as Superintendent of Insurance at the New York Department of Insurance ended in 2005—***thirteen years*** before the events here and six years before the NYDFS was even formed. Ex. H, Serio Report at 1.  There is no basis to believe that Serio's experiences between 2001 and 2005 have any relevance to the import of John Hancock's correspondence with the NYDFS in 2017 and 2018 under an entirely different Superintendent of Insurance, and Serio offers none. *See Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 367 F. Supp. 2d 413, 424-25 (W.D.N.Y. 2005) (noting that "proponent of the expert testimony carries the burden to establish" the requirements for admissibility and that "where an expert's opinion exceeds the scope of his qualifications, the witness's opinions are subject to exclusion").

Accordingly, Serio's opinions should be excluded pursuant to Federal Rule of Evidence 702 as improper expert opinion.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court issue an order precluding Plaintiffs from introducing any evidence or arguments regarding the Regulatory Matters.

Date: January 27, 2023

/s/ Matthew T. Martens
Matthew T. Martens
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

Robert K. Smith (*pro hac vice*)
Yavor Nechev (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109 USA
Tel.: (617) 526-6000
Fax: (617) 526-5000

John F. LaSalle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York*