## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST, | Index No. 19-cv-11093 (AKH) |

Plaintiffs,

    v.

JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,

                    Defendant.

VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,

                    Plaintiffs,

    v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                    Defendant.

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

       Plaintiffs,

  v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

       Defendant.

## DEFENDANTS MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING THE <u>REASONABLENESS OF ORIGINAL PRICING ASSUMPTIONS</u>

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "Defendants" or "John Hancock") respectfully move this Court for an order *in limine* precluding Plaintiffs from offering evidence or argument regarding the reasonableness of the assumptions used to price the Performance Universal Life ("Performance UL") policies at issue in this Action ("Subject Policies").

This case concerns whether John Hancock's redetermination *in May 2018* of cost of insurance ("COI") rates for the Subject Policies complied with the terms of the policy forms—*not* whether decisions made by John Hancock actuaries up to over 15 years earlier concerning the assumptions used to price the Subject Policies ("Original Pricing Assumptions") were reasonable. Indeed, not a word of Plaintiffs' Second Amended and Consolidated Complaint suggests that the Original Pricing Assumptions were in any way inappropriate. *See* Plaintiffs' Second Amended and Consolidated Complaint (ECF No. 179) ("Compl.").

Nevertheless, between the more than 4,900 exhibits on Plaintiffs fifth amended exhibit list, Ex.

B, Plaintiffs' Fifth Amended Exhibit List, Plaintiffs' designations of deposition testimony, and Plaintiffs' witness list, it is clear Plaintiffs intend to offer at trial evidence and argument intended to revisit those decades-old decisions supposedly to demonstrate that the Original Pricing Assumptions were "unreasonable."  But the reasonableness of the Original Pricing Assumptions is irrelevant to Plaintiffs' narrow breach of contract claim, and introducing evidence or argument concerning the reasonableness of the Original Pricing Assumptions would be unfairly prejudicial, confuse the issues, mislead the jury, and waste time.  Accordingly, pursuant to Federal Rules of Evidence 401, 402, and 403, the Court should preclude Plaintiffs from offering evidence or argument concerning the reasonableness of the Original Pricing Assumptions.[1]

## BACKGROUND

The crux of Plaintiffs' breach of contract claim—and, thus, this case—is whether John Hancock's COI increase was "based on" John Hancock's expectations of future experience.  The policy provisions that Plaintiffs assert John Hancock breached appear in two policy forms on which the Performance UL Products were issued.[2]  The 03PERUL policy form states, in relevant part:

> The Applied Monthly Rates will be **based on _our_ expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve and capital requirements** … Any change in the Applied Monthly Rates for the Basic Sum Insured or for the Additional Sum Insured will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force for the same length of time.

_See_ Ex. E, DX C, JH_LEONARD_000011149 at -164 (emphasis added).  The 06PERFUL policy form states, in relevant part:

---

[1]     Also submitted herewith is the Declaration of Matthew T. Martens in Support of John Hancock's Motions _in Limine_ Nos. 1-11, which attaches all exhibits cited in John Hancock's 11 motions _in limine_.  The exhibits cited herein are cited as "Ex. []."

[2]     One of the relevant policy forms refers to "Applied Monthly Rates" whereas the other relevant policy form refers to "Cost of Insurance Rates."  For ease of reference and simplicity, John Hancock will refer herein to both as "COI rates."

The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and will be **based on _our_ expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions** … We review our Cost of Insurance rates from time to time, and may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured.

*See* Ex. F, DX D, JH_LEONARD_000175087 at -109 (emphasis added). As Plaintiffs' counsel has previously admitted, Plaintiffs' additional implied covenant of good faith and fair dealing and conversion claims rise and fall on John Hancock's compliance with the above contractual provisions. *See* Ex. G, July 21, 2022 Hr'g Tr. at 6:25-7:3 (Plaintiffs' counsel acknowledging all claims in the case are derivative of the breach of contract claim, stating it is "likely" that if Plaintiffs "[lose] on the breach of contract, [they] lo[]se everything").

As is readily apparent, the word "reasonable" appears nowhere in the relevant provisions—a stark contrast to the contractual provisions at issue in other COI-rate litigation. *See In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 211 (S.D.N.Y. 2022) (provision stating that COI rates would be "based on **reasonable** assumptions as to expenses, mortality, policy and contract claims, taxes, investment income, and lapses" (emphasis added)). And nowhere do the relevant provisions purport to limit John Hancock's ability to redetermine COI rates if the Original Pricing Assumptions are deemed unreasonable at some point well after when the Subject Policies were priced.

Given the absence in the relevant policy form provisions of any mention of the "reasonableness" of John Hancock's Original Pricing Assumptions, it is no surprise that Plaintiffs' Second Amended and Consolidated Complaint—filed more than two years after Plaintiffs' original complaint—nowhere references the reasonableness of the Original Pricing Assumptions. Plaintiffs nevertheless have made clear that they intend to offer at trial evidence and argument concerning the reasonableness of the Original Pricing Assumptions. This includes, among other things:

1. Exhibits that Defendants believe Plaintiffs intend to offer to demonstrate the

supposed "unreasonableness" of the Original Pricing Assumptions.[3]

2. Witness testimony concerning the Original Pricing Assumptions.[4]

3. Portions of an expert report that purport to cast doubt on the reasonableness of the Original Pricing Assumptions.[5]

This evidence—as well as any other evidence or argument concerning the reasonableness of the Original Pricing Assumptions that Plaintiffs may seek to offer—should be excluded.

## ARGUMENT

Motions *in limine* "can play an especially important and useful role in a jury trial," particularly where, as here, Plaintiffs are seeking to infuse into an already complicated case irrelevant and unnecessary evidence regarding the Original Pricing Assumptions that is likely to confuse the jury and waste time. *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Insdustrie*, 2015 WL 5459662, at *1 (S.D.N.Y. Sept. 16, 2015); *see also Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (Hellerstein, J.) ("The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." (citation omitted)). The Court should exclude evidence and argument regarding the reasonableness of the Original Pricing Assumptions for two reasons. *First*, evidence or argument on this issue is not relevant to assessing whether John Hancock breached the provisions of the policy forms for the Subject Policies. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."). *Second*, even if the evidence or argument had any probative value (which it does not), it would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403.

---

[3]      *See, e.g.*, PTX10273, PTX10278, PTX10308, PTX10327, PTX10357, PTX10370, PTX10495, PTX10703, PTX10706.

[4]      *See, e.g.*, Plaintiffs' First Amended Deposition Designations, Zahir Bhanji Depo. Tr. (Nov. 19, 2021) 169:15-170:6, 170:9-12, 170:15-22, 171:1-5; Plaintiffs' First Amended Deposition Designations, Naveed Irshad Depo. Tr. (Oct. 23, 2020) 106:8-24, 107:2-5, 107:8-13, 107:16-22, 107:25-108:1, 108:4-14, 108:17-21.

[5]      *See* Ex. P, PTX10137, Expert Report of Larry N. Stern ("Stern Report") ¶¶ 189-210.

I.      **The Reasonableness Of The Original Pricing Assumptions Is Irrelevant To Plaintiffs' Claims**

Evidence or argument concerning the reasonableness of the Original Pricing Assumptions has no tendency to make a fact "of consequence" more or less probable than it would be without the evidence and is therefore inadmissible.  *See* Fed. R. Evid. 401, 402; *see also, e.g.*, *Busher v. Barry*, 2019 WL 6895281, at *12 (S.D.N.Y. Dec. 18, 2019) (excluding evidence "not relevant to any issue remaining in this case," including "such testimony as is anticipated" from certain witnesses); *Berger v. New York City Police Dep't*, 2019 WL 6909526, at *4 (S.D.N.Y. Dec. 19, 2019) (excluding as "irrelevant and thus inadmissible" evidence concerning matters "not part of this case").

*First*, evidence or argument regarding the reasonableness of the Original Pricing Assumptions is untethered to any fact of consequence to Plaintiffs' breach of contract claim.  As is relevant here, Plaintiffs assert that, when John Hancock redetermined COI rates for the Subject Policies in May 2018, it did not redetermine COI rates based on the expectations of future experience enumerated in the policy forms.  *See* Compl. ¶¶ 42-46.  To succeed on that theory, Plaintiffs must demonstrate that the redetermined COI rates were not "based on" ***John Hancock's own*** subjective expectations of future experience since the policy forms expressly state that COI rates will be set based on "our" expectations. The term "our" as used in the relevant policy forms is defined in those forms to "refer ***only*** to the Company."  *See* Ex. E, DX C, JH_LEONARD_000011149 at -158; Ex. F, DX D, JH_LEONARD_000175087 at -103.  Whether the Original Pricing Assumptions were "reasonable" has no bearing on the indisputably subjective standard articulated in the policy forms, which speaks to ***John Hancock's own*** expectations of future experience.  Indeed, courts have no authority to rewrite and read into a contract a new reasonableness requirement that is indisputably missing from the contract but that one of the parties wishes in retrospect the contract contained.  *See U.S. Fidelity & Guar. Co. v. Annunziata*, 67 N.Y.2d 229, 232 (1986) ("courts should refrain from rewriting the agreement") (citations omitted); *cf. Misano di Navigazione, SpA v. United States*, 968 F.2d 273, 275 (2d Cir. 1992)

(stating that if the contract clearly identifies a subjective standard, "the courts should not imply an additional requirement of reasonableness").

To the extent there are contractual constraints on John Hancock's subjective expectations of future experience, those constraints are a function of the implied covenant of good faith and fair dealing. *See Abbit v. ING USA Annuity & Life Ins. Co.*, 252 F. Supp. 3d 999, 1011 (S.D. Cal. 2017) ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another."); *see also Security Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 810 (2d Cir. 2014). But the implied covenant is "breached only in a narrow range of cases," and breach does not turn on whether John Hancock's Original Pricing Assumptions were "reasonable." *See Security Plans.*, 769 F.3d at 817-18 (stating that in order to show a breach of the implied covenant, a "plaintiff must show substantially more than evidence that the defendant's actions were negligent or inept"); *see also Nat'l Life & Accident Ins. Co. v. Edwards*, 119 Cal. App. 3d 326, 339 (2d Dist. 1981) (dismissing implied covenant claim on summary judgment due to lack of evidence of "more than negligent conduct on the part of the insurer"). Just as a court may not read into a contract a requirement it does not contain, so too the implied covenant of good faith and fair dealing does not give rise to a new reasonableness requirement that the contract itself does not contain. *See Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 976 F.3d 239, 248 (2d Cir. 2020) ("[U]nder New York law, the covenant of good faith and fair dealing does not give rise to new, affirmative duties on contracting parties."); *cf* Appendix Tables 6 and 7 from Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, Dkt. 189. Accordingly, the law forecloses any argument by Plaintiffs that the reasonableness of John Hancock's Original Pricing Assumptions is remotely relevant to any of Plaintiffs' claims.

*Second*, allowing Plaintiffs to offer evidence or argument regarding the reasonableness of the Original Pricing Assumptions would effectively permit them to contradict the policy forms at issue. It

is well-settled that evidence contradicting unambiguous contract language is inadmissible.  *See Royal Bank of Canada v. Mahrle*, 818 F. Supp. 60, 62 (S.D.N.Y. 1993) ("[T]he Court cannot consider evidence" that "contradicts the express terms" of a "binding agreement which is unambiguous on its face.").  Here, the relevant provisions in the policy forms do not limit John Hancock's ability to redetermine its COI rates if the Original Pricing Assumptions are later deemed unreasonable—indeed, the word "reasonable" appears nowhere in those provisions.  *See supra* at 2-3.  But, as the opinion of Plaintiffs' purported actuarial expert makes clear—and despite the plain language of the policy forms and the absence of one word regarding the "reasonableness" of the Original Pricing Assumptions in the Complaint—Plaintiffs intend to introduce evidence and argue that if the Original Pricing Assumptions were unreasonable, so too was the redetermination of COI rates:

> To the extent the assumptions John Hancock used to originally price, market, and sell Plaintiffs' Policies were unreasonable, it would be unreasonable, contrary to sound actuarial practice, and, from an actuarial perspective, in violation of Plaintiffs' Policies, John Hancock's NGE Policy, and applicable standards of practice and regulations to charge policyholders for the cost of switching from those unreasonable assumptions.

Ex. P, Stern Report ¶ 190.  Setting aside that this argument is illogical and would read out of the policy forms John Hancock's unambiguous right to change COI rates, *see* Ex. F, DX D, JH_LEONARD_000175087 at -109 ("We . . . may re-determine Cost of Insurance rates . . . on a basis that does not discriminate unfairly within any class of lives insured."), the Court should not allow Plaintiffs to re-write the contractual language by introducing evidence or argument on an issue the policy forms unambiguously demonstrate is irrelevant.

## II.  Evidence And Argument Concerning The Reasonableness Of The Original Pricing Assumptions Is Unfairly Prejudicial, Confusing, And Likely To Waste Time

Even if evidence or argument concerning the reasonableness of the Original Pricing Assumptions somehow were relevant, whatever probative value it arguably has would be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [and] wasting time."  Fed. R. Evid. 403.

Evidence or argument purporting to show that the Original Pricing Assumptions were "unreasonable" could improperly predispose jurors to think negatively of John Hancock regarding a matter that, as described above, has no bearing on the question of whether John Hancock complied with the language of the policy forms, tainting jurors' assessment of John Hancock's redetermination of COI rates for the Subject Policies notwithstanding the many years between the time the Subject Policies were priced and the time the COI rates were redetermined.  *See, e.g.*, *Amica Mut. Ins. Co. v. Coan, Tr. for Williams*, 2020 WL 3396733, at *3 (D. Conn. June 19, 2020) (excluding as unduly prejudicial evidence carrying potential of creating mistaken "inference" regarding one of the parties); *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 260 (S.D.N.Y. 2015) (excluding evidence that was likely to lead to "emotional reaction or policy judgment" from jurors that "would have no proper bearing on the discrete and narrow issues left to be tried").

Relatedly, evidence or argument regarding the reasonableness of the Original Pricing Assumptions may cause confusion and distract jurors from their ostensible focus: whether John Hancock **in 2018** complied with relevant provisions of the policy forms.  *See Amica Mut. Ins. Co.*, 2020 WL 3396733, at *3  (excluding as  likely to "confuse the jury" evidence carrying potential of creating mistaken "inference" regarding one of the parties); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding as likely to cause confusion evidence that threatened to turn proceedings into "multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case").

Finally, eliminating the risk of unfair prejudice and needless confusion would require the Court and the parties to expend a considerable amount of time and significant resources to educate jurors regarding the distinctions between the pricing of the Subject Policies, the redetermination of the COI rates many years later, and why John Hancock's Original Pricing Assumptions were in fact reasonable.

*Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 WL 351827, at *5 (N.D.N.Y. Jan. 14, 2022) (excluding evidence the admission of which would likely cause one party to expend time "expos[ing] [its] weaknesses," "result[ing] in an undue waste of time"); *Estate of Mali v. Fed. Ins. Co.*, 2011 WL 2516246, at *2 (D. Conn. June 17, 2011) (excluding evidence where it was "almost certain that allowing such evidence would result in confusion amongst the jury and lead to a wasteful and unnecessary debate regarding" the evidence).   Doing so will require substantial expert testimony regarding complicated actuarial concepts about which reasonable actuaries can disagree, as Plaintiffs' own purported actuarial expert has admitted.   *See* Ex. Q, Larry N. Stern Depo. Tr. (July 6, 2022) at 37:16-18 ("I think reasonable actuaries can disagree within a range of reasonableness."), 39:13-20 ("Q. It's possible, correct, for two actuaries looking at the same set of data to arrive at different conclusions as to expectations of future mortality, but for both conclusions to be reasonable, correct? . . . A. It's possible."), 167:24-25 ("I think reasonable actuaries can disagree on a lot of different factors.").   Such a burdensome undertaking is fundamentally inconsistent with this Court's admonition that this case involves a narrow contract issue, Ex. C, Oct. 13, 2021 Hr'g Tr. at 3:16-19, and threatens to turn a simple breach of contract action into a protracted battle of experts regarding matters referenced nowhere in the policy forms.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court issue an order precluding Plaintiffs from offering evidence or argument concerning the reasonableness of the Original Pricing Assumptions.

Date: January 27, 2023

*/s/ Matthew T. Martens*　　　　　　
Matthew T. Martens
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

Robert K. Smith (*pro hac vice*)
Yavor Nechev (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109 USA
Tel.: (617) 526-6000
Fax: (617) 526-5000

John F. LaSalle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendants John Hancock Life*
*Insurance Company (U.S.A.) and John Hancock*
*Life Insurance Company of New York*