IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>                Plaintiffs,<br>   v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br>                Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br>                Plaintiffs,<br>   v.<br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>                Defendant. | |

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

                              Plaintiffs,

    v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                              Defendant.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 8 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING INTERVENING VALUATION ASSUMPTIONS

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "Defendants" or "John Hancock") respectfully move this Court for an order *in limine* precluding Plaintiffs from offering evidence or argument regarding assumptions that John Hancock developed for valuation of the Performance Universal Life ("Performance UL") policies at issue in this Action ("Subject Policies") *between* the time the policies were originally priced and the time their cost of insurance ("COI") rates were redetermined ("Intervening Valuation Assumptions").

This Court has made clear countless times that, at its core, this is a straightforward contract case. The crux of the dispute is whether John Hancock's redetermination of COI rates for the Subject Policies (the "COI Redetermination"), which was announced in May 2018, was "based on" John Hancock's expectations of future experience. The answer to that question depends on whether John Hancock's expectations of future experience as of when it undertook the COI Redetermination changed as compared to John Hancock's expectations of future experience at the time it priced the Subject Policies, such that the increased COI rates were "based on" John Hancock's then-existing expectations

1

of future experience.  The Intervening Valuation Assumptions reflect neither category of expectations because they were: (i) developed *between* the time the Subject Policies were originally priced and the time the COI Redetermination was undertaken; and (ii) developed and used for a purpose other than pricing, or redetermining COI rates for, the Performance UL products.  Accordingly, the Intervening Valuation Assumptions are irrelevant to Plaintiffs' claims, and whatever probative value evidence or argument concerning the Intervening Valuation Assumptions might arguably have is outweighed by the danger of juror confusion and misuse of scarce time and resources.  Accordingly, pursuant to Federal Rules of Evidence 401, 402, and 403, the Court should preclude Plaintiffs from offering evidence or argument concerning the Intervening Valuation Assumptions.[1]

## BACKGROUND

In 2004, John Hancock merged with Manulife Financial Corporation, a Canadian company.  As a result of the merger, John Hancock became subject to certain Canadian legal and regulatory requirements, including the requirement that it calculate reserves—a balance sheet entry representing an insurer's actuarial liabilities for the policies it has issued—in accordance with the International Financial Reporting Standards ("IFRS").

To calculate its IFRS reserves, John Hancock develops what are commonly called "valuation assumptions."  John Hancock then uses the valuation assumptions to project cash flows into the future, and those projections form the principal basis on which John Hancock's IFRS reserves are set.  The valuation assumptions are periodically refined, most commonly following detailed reviews of John Hancock's experience that take place approximately every three years.  The process by which John Hancock develops valuation assumptions is distinct from the product pricing process.  And while John Hancock actuaries tasked with pricing a new product may consider or incorporate valuation assumptions

---

[1] Also submitted herewith is the Declaration of Matthew T. Martens in Support of John Hancock's Motions *in Limine* Nos. 1-11, which attaches all exhibits cited in John Hancock's 11 motions *in limine*.  The exhibits cited herein are cited as "Ex. []."

2

into the pricing process, valuation assumptions and pricing assumptions are not necessarily the same.

The Intervening Valuation Assumptions, which were developed between the pricing of the Subject Policies and the COI Redetermination, include mortality assumptions developed in 2011 and 2014, lapse assumptions developed in 2012 and 2015, and premium persistency assumptions developed in 2013. It is undisputed that the Intervening Valuation Assumptions were not used to price the Subject Policies. Nor were the Intervening Valuation Assumptions used by John Hancock to redetermine COI rates for the Subject Policies. Even Plaintiffs' purported actuarial expert admits as much. *See* Ex. P, Expert Report of Larry N. Stern ("Stern Report") ¶ 129 ("John Hancock did not use JH11 or JH14," mortality assumptions developed in 2011 and 2014, respectively, "to price Plaintiffs' Policies or to determine the final version of the COI Rate Increases.")

Despite the absence of any connection between the Intervening Valuation Assumptions and Plaintiffs' claims, Plaintiffs intend to offer at trial:

- Extensive witness testimony concerning the Intervening Valuation Assumptions.[2]
- Exhibits pertaining to the Intervening Valuation Assumptions.[3]

This evidence—as well as any other evidence or argument concerning the Intervening Valuation Assumptions that Plaintiffs may seek to offer—should be excluded.

---

[2] *See, e.g.*, Plaintiffs' First Amended Deposition Designations, Lauren Cross Depo. Tr. (Feb. 11, 2021) 27:22-28:7, 29:5-11, 29:14-16, 29:19-20, 58:2-3, 58:6-13, 58:16-23, 70:2-5, 70:8-12, 71:4-7, 71:10-14, 80:15-17, 80:20-25; Plaintiffs' First Amended Deposition Designations, Lauren Cross Depo. Tr. (Feb. 12, 2021) 217:14-24, 218:3-10, 218:13-23, 219:2, 225:3-6, 225:9-16; Plaintiffs' First Amended Deposition Designations, Paul Beltramini Depo. Tr. (Oct. 27, 2021) 169:17-21, 169:23-25, 170:2-4, 170:22-23, 170:25, 171:2-7, 171:19-25, 172:2-4, 172:6-12, 172:14-18, 177:16-20, 177:22-25, 178:2-7, 178:9-10, 180:16-19, 180:21-24, 181:2-3; Plaintiffs' First Amended Deposition Designations, Courtney O'Connor Depo. Tr. (Mar. 18, 2021) 364:15-25, 365:3-10, 365:23-25, 366:2-9, 367:6-13, 369:5-10, 369:13-14, 377:16-25, 378:2-13, 378:16-18.

[3] *See, e.g.*, PTX10414, PTX10415, PTX10416, PTX10417, PTX10421, PTX10548, PTX10551, PTX10562, PTX10563, PTX10564, PTX10565, PTX10566, PTX10567, PTX10568, PTX10575, PTX10759, PTX10766, PTX10783, PTX10906.

**ARGUMENT**

Motions *in limine* "can play an especially important and useful role in a jury trial," particularly where, as here, Plaintiffs are seeking to infuse into an already complicated case irrelevant and unnecessary evidence regarding the Intervening Valuation Assumptions that is likely to confuse the jury and waste time. *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Insdustrie*, 2015 WL 5459662, at *1 (S.D.N.Y. Sept. 16, 2015); *see also Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (Hellerstein, J.) ("The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence"). The Court should exclude evidence and argument regarding the Intervening Valuation Assumptions for two reasons. *First*, the Intervening Valuation Assumptions are not relevant to the issues in this action. *Second*, whatever probative value evidence or argument regarding the Intervening Valuation Assumptions might have is "substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, [and] wasting time." Fed. R. Evid. 403.

**I.     The Intervening Valuation Assumptions Are Irrelevant**

Evidence and argument concerning the Intervening Valuation Assumptions has no tendency to make a fact "of consequence" more or less probable than it would be without the evidence and is therefore inadmissible. *See* Fed. R. Evid. 401, 402; *see also, e.g.*, *Busher v. Barry*, 2019 WL 6895281, at *12 (S.D.N.Y. Dec. 18, 2019) (excluding evidence "not relevant to any issue remaining in this case," including "such testimony as is anticipated" from certain witnesses); *Berger v. New York City Police Dep't*, 2019 WL 6909526, at *4 (S.D.N.Y. Dec. 19, 2019) (excluding as "irrelevant and thus inadmissible" evidence concerning matters "not part of this case"). The Intervening Valuation Assumptions have no connection to Plaintiffs' claims, which at bottom depend on whether John Hancock's expectations of future expectations of future experience changed between the time the Subject Policies were originally priced and the time of the COI Redetermination such that John

4

Hancock's increased COI rates were "based" on John Hancock's expectations of future experience.

*First*, the Intervening Valuation Assumptions are irrelevant because they say nothing about John Hancock's expectations of future experience at the two temporal points relevant to this Action.  As even Plaintiffs' purported actuarial expert acknowledges, the Intervening Valuation Assumptions were developed ***after*** the Subject Policies were priced and were ***not*** the assumptions that John Hancock used to calculate redetermined COI rates for the Subject Policies in May 2018.  *See supra* at 2-3.  The Intervening Valuation Assumptions thus say nothing about John Hancock's expectations of future experience at the two temporal points relevant to this Action: the time of original pricing and the time of the COI Redetermination.

*Second*, the Intervening Valuation Assumptions were not developed or used for the purpose of pricing the Subject Policies or the COI Redetermination.  As both Plaintiffs and John Hancock agree, assumptions can be (and are) developed for different purposes, and the purpose for which an assumption is developed can materially affect both the process by which the assumption is determined and the outcome of that process.  *See* Ex. X, Fred Tavan Depo. Tr. (Nov. 1, 2021) at 80:19-23 (testifying that there are "differences between . . . valuation assumptions and . . . pricing assumptions" in the "insurance industry"); Ex. Y, Tony Teta Depo. Tr. (Oct. 20, 2020) at 109:9-110:5 (testifying that assumptions can be developed for, among other purposes, "pricing new products," "asset adequacy testing," and "setting reserves").  The Intervening Valuation Assumptions were developed for the purpose of setting John Hancock's IFRS reserves.  They were not used for the purpose of determining or redetermining COI rates for the Subject Policies.

## II. Evidence And Argument Concerning The Intervening Valuation Assumptions Is Likely To Confuse The Jury And Waste Time

Even if evidence or argument concerning the Intervening Valuation Assumptions were relevant (and it is not), whatever probative value it arguably has would be "substantially outweighed by a danger of . . . confusing the issues, misleading the jury, undue delay, [and] wasting time."  Fed. R. Evid. 403.

The resolution of this matter will hinge on jurors' assessment of whether John Hancock's expectations of future experience at the time the COI rates for the Subject Policies were redetermined changed from John Hancock's expectations of future experience at the time the Subject Policies were priced. Evidence or argument concerning the Intervening Valuation Assumptions—which were not developed or used for either pricing the Subject Policies or the COI Redetermination—would necessitate a series of mini-trials concerning each of the Intervening Valuation Assumptions, none of which have any bearing on Plaintiffs' claims. Such a burdensome undertaking is fundamentally inconsistent with this Court's admonition that this case involves a narrow contract issue. Ex. C, Oct. 13, 2021 Hr'g Tr. at 3:16-19; *see also, e.g.*, *Orsaio v. New York State Dep't of Corr. & Cmty. Supervision*, 2022 WL 351827, at *5 (N.D.N.Y. Jan. 14, 2022) (excluding evidence the admission of which would likely cause one party to expend time "expos[ing] [its] weaknesses," "result[ing] in an undue waste of time"); *Estate of Mali v. Fed. Ins. Co.*, 2011 WL 2516246, at *2 (D. Conn. June 17, 2011) (excluding evidence where it was "almost certain that allowing such evidence would result in confusion amongst the jury and lead to a wasteful and unnecessary debate regarding" the evidence); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding as likely to cause confusion evidence that threatened to turn proceedings into "multi-ringed sideshow of mini-trials on collateral issues").

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court issue an order precluding Plaintiffs from offering evidence or argument regarding the Intervening Valuation Assumptions.

| | |
|---|---|
| Date: January 27, 2023 | */s/ Matthew T. Martens*<br>Matthew T. Martens<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Avenue NW<br>Washington, DC 20006<br>Tel.: (202) 663-6000<br>Fax: (202) 663-6363<br><br>Robert K. Smith (*pro hac vice*)<br>Yavor Nechev (*pro hac vice*)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109 USA<br>Tel.: (617) 526-6000<br>Fax: (617) 526-5000<br><br>John F. LaSalle<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards<br>New York, NY 10001<br>Tel.: (212) 446-2300<br>Fax: (212) 446-2350<br><br>*Attorneys for Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York* |