IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | |

|  |
|---|
| Defendant. |
| EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), <br><br> Defendant. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 2: TO PRECLUDE JOHN HANCOCK FROM PURSUING ITS STRANGER-ORIGINATED LIFE INSURANCE DEFENSE AND TO EXCLUDE EVIDENCE CONCERNING THE ORIGINATION OF PLAINTIFFS' POLICIES**

**TABLE OF CONTENTS**

|      |                                                                                                                                                                                                                                                                        | Page |
|------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION                                                                                                                                                                                                                                                           | 1    |
| II.  | BACKGROUND                                                                                                                                                                                                                                                             | 3    |
|      | A. Life Settlements Are Common, Legal, and Beneficial to Consumers, Particularly Elderly Insureds                                                                                                                                                                      | 3    |
|      | B. John Hancock Has Never Challenged the Validity of Any of Plaintiffs' Policies                                                                                                                                                                                       | 5    |
|      | C. Any STOLI Defense John Hancock May Have Would Be an Equitable Defense that Must Be Tried by the Court After the Jury Decides Plaintiffs' Legal Claims                                                                                                               | 6    |
| III. | LEGAL STANDARDS                                                                                                                                                                                                                                                        | 7    |
|      | A. Motions *in Limine*                                                                                                                                                                                                                                                 | 7    |
|      | B. Insurable Interest Law                                                                                                                                                                                                                                              | 8    |
| IV.  | ARGUMENT                                                                                                                                                                                                                                                               | 9    |
|      | A. The Court Should Bar John Hancock from Pursuing Any STOLI Defense                                                                                                                                                                                                   | 9    |
|      | B. Evidence Concerning the Origination of Plaintiffs' Policies Is Irrelevant to the Claims and Defenses to Be Tried by the Jury                                                                                                                                        | 12   |
|      | C. Even If Evidence of John Hancock's STOLI Argument Is Relevant, and It Is Not, It Should Be Excluded Under Federal Rule of Evidence 403 Because Its Minimal Probative Value Is Substantially Outweighed by the Dangers of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time | 12   |
| V.   | CONCLUSION                                                                                                                                                                                                                                                             | 13   |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*AEI Life LLC v. Lincoln Benefit Life Co.*,
   892 F.3d 126 (2d Cir. 2018)...................................................................................................8

*Am. Gen. Life Ins. Co. v. Salamon*,
   483 F. App'x 609 (2d Cir. 2012) .........................................................................................10

*Beacon Theatres, Inc. v. Westover*,
   359 U.S. 500 (1959).........................................................................................................6, 12

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
   No. 01 Civ. 3796, 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004)............................................7

*Gonzalez v. Digital Equip. Corp.*,
   8 F. Supp. 2d 194 (E.D.N.Y. 1998) .......................................................................................7

*Grigsby v. Russell*,
   222 U.S. 149 (1911)...............................................................................................................4

*Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Tr.*,
   552 F. App'x 664 (9th Cir. 2014) ..........................................................................................8

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008).....................................................................................7

*Kramer v. Phoenix Life Ins. Co.*,
   940 N.E.2d 535 (N.Y. 2010)...............................................................................................4, 8

*LeBlanc-Sternberg v. Fletcher*,
   67 F.3d 412 (2d Cir. 1995).................................................................................................6, 12

*Lewis v. Reed*,
   192 P. 335 (Cal. Ct. App. 1920) ............................................................................................4

*Lincoln Life & Annuity Co. of N.Y. v. Berck*,
   No. D056373, 2011 WL 1878855, at *6 (Cal. Ct. App. May 17, 2011) .................................8

*Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Tr.*,
   638 F. Supp. 2d 1170 (C.D. Cal. 2009) ..................................................................................8

*Luce v. United States*,
   469 U.S. 38 (1984).................................................................................................................7

*New England Mut. Life Ins. Co. v. Caruso*,
   535 N.E.2d 270 (N.Y. 1989)......................................................................................8

*Old Chief v. United States*,
   519 U.S. 172 (1997)..................................................................................................7

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996)........................................................................................7

*U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
   288 F.R.D. 282 (S.D.N.Y. 2012) .....................................................................2, 9, 12

*U.S. Nat'l Bank Ass'n v. PHL Variable Life Ins. Co.*,
   112 F. Supp. 3d 122 (S.D.N.Y. 2015)................................................2, 9, 10, 12, 13

*Wade v. Orange Cnty. Sheriff's Off.*,
   844 F.2d 951 (2d Cir. 1988).................................................................................6, 12

**Statutes**

Cal. Ins. Code § 10113.1.......................................................................................................5

Cal. Ins. Code § 10130.....................................................................................................4, 8

Fed. R. Evid. 401 .................................................................................................................7

Fed. R. Evid. 403 .........................................................................................2, 7, 12, 13

N.Y. Ins. Law § 3205(b)(1) ..................................................................................................4

Plaintiffs VICOF II Trust, Vida Longevity Fund, LP, Life Assets Trust II S.A. Delaware Trust, Vidaquant Sub-Fund Delaware Trust, and Vida Insurance Fund II Series Interests of the SALI Multi-Series Fund, LP (collectively, the "Vida Funds"); EFG Bank AG, Cayman Branch ("EFG"); Wells Fargo Bank, National Association ("Wells Fargo"), as securities intermediary for the Vida Funds and EFG (in such capacity, "Wells Fargo SI"); DLP Master Trust, DLP Master Trust II, GWG DLP Master Trust, Life Funding Trust, PF Participation Funding Trust, and Palm Beach Settlement Company (collectively, "EAA Plaintiffs," and together with Vida Funds, EFG, and Wells Fargo SI, "Plaintiffs") move to preclude Defendants John Hancock Life Insurance Company (U.S.A.) ("JHUSA") and John Hancock Life Insurance Company of New York ("JHNY," and together with JHUSA, "John Hancock" or "Defendants") from pursuing any STOLI defense, including any defense that the Policies were originated through fraud or lacked insurable interest; to exclude evidence and argument concerning the origination of Plaintiffs' Policies, including evidence concerning whether the Policies are STOLI, or were originated through fraud, or lack insurable interest; and grant such other and further relief as the Court deems just and proper under the circumstances.

## I. INTRODUCTION

Plaintiffs filed this action to hold John Hancock accountable for the unjustified cost of insurance ("COI") rate increases (the "COI Rate Increases") it began imposing in 2018 on certain of Plaintiffs' Performance UL policies ("Policies"). In its Answer, John Hancock asserted various defenses like laches, estoppel, and waiver based on vague allegations that Plaintiffs' Policies were issued to or for persons without an insurable interest—i.e., constitute "stranger-originated life insurance" or "STOLI," which may render a policy void.

Plaintiffs' Policies have been in force for 15 to 20 years.  During that time, John Hancock has collected more than half a billion dollars in premiums on the Policies, including over $175 million (and counting) since raising COI rates in 2018.  John Hancock has never rejected or returned any premium payments or told Plaintiffs to stop paying premiums because any of their Policies are invalid.  To the contrary, John Hancock continues to collect millions every month from Plaintiffs, all the while suggesting Plaintiffs' Policies are invalid as STOLI.

Not only are John Hancock's defenses based on STOLI specious, but John Hancock cannot have it both ways.  It cannot continue to collect premiums while purporting to claim Plaintiffs' Policies are STOLI.  *See, e.g.*, *U.S. Nat'l Bank Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 139 (S.D.N.Y. 2015); *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 288 F.R.D. 282, 286-87 (S.D.N.Y. 2012).

Indeed, John Hancock has failed to identify in discovery a single policy it contends is invalid or STOLI or any facts supporting such an assertion.

Therefore, the Court should bar John Hancock from pursuing a STOLI defense in any respect.  In addition, because a STOLI defense is an equitable defense that must be tried by the Court after the jury decides Plaintiffs' legal claims, the Court should not permit John Hancock to admit evidence or make arguments relating to whether Plaintiffs' Policies are STOLI during the jury trial because such evidence is not relevant to any claims or defenses being decided by the jury.  Moreover, the marginal probative value of such evidence to the claims and defenses before the jury (there is none) is substantially outweighed by the danger of unfairly prejudicing Plaintiffs, confusing the issues, misleading the jury, and wasting time, and, therefore, the evidence also should be excluded under Federal Rule of Evidence 403.

## II. BACKGROUND

### A. Life Settlements Are Common, Legal, and Beneficial to Consumers, Particularly Elderly Insureds

Plaintiffs own 108 Performance UL policies that John Hancock issued between 2004 and 2009. Dkt. No. 179 ¶¶ 24-26. Plaintiffs acquired their Policies in or through the secondary and tertiary markets for life insurance. Generally, the secondary market consists of "life settlements"—the sales of life insurance policies by the original owner to a third party. *See, e.g.*, LeQuang Decl. Ex. 11 ¶ 79. The seller receives a cash payment, while the purchaser assumes all future premium payments and receives the right to the death benefit when the insured dies. *See, e.g.*, *id.* Life settlements allow policyholders, particularly elderly individuals, to obtain cash for their policies when they would otherwise lapse or surrender them to the insurer for little or nothing in return. *See, e.g.*, *id.* ¶¶ 80-81. "For older adults who are struggling to pay for health care costs or long-term care in retirement, [a life settlement] can be a much-needed lifeline." *Id.* Ex. 39 at 2. In accordance with state laws, the Policies contain express provisions permitting their assignment. *See, e.g.*, Dkt. No. 179-2 at 14 ("Your interest in this policy may be assigned without the consent of any revocable Beneficiary."); Dkt. No. 179-4 at 16 (same).

The growth of the secondary market for life insurance has been spurred by insurance companies, like John Hancock, who have marketed life insurance as an investment. For example, John Hancock's 2022 Universal Life Portfolio seller's guide (the "UL Seller's Guide") focuses on financial planning with respect to its universal life policies. *See generally* LeQuang Decl. Ex. 40. The UL Seller's Guide notes that John Hancock's universal life policies are stable investments, with flexible funding and higher cash value potential. *Id.* at 2.

As more consumers use life insurance as investments at the encouragement of the insurance companies, like John Hancock, more consumers also seek to monetize their investment when their

personal or financial circumstances change.  In years past, consumers would have had to let their policies lapse and forfeit all premiums paid or surrender their policies for an often-nominal cash surrender value.  Even as of 2015, the Life Insurance Settlement Association reported that $112 billon in death benefits were lost each year by Americans aged 65 and above by lapsing or surrendering their life insurance policies.  *Id.* Ex. 41 at 4.

The secondary market for life insurance policies developed in response to this market deficiency.  It gave consumers an option to realize more from their investments, creating a more efficient market.  The result has been a robust and healthy secondary market for life settlements, with sales in 2018 estimated to be in the $3.4 billion range.  *See id.* at 10.  Despite what John Hancock has suggested, there is nothing immoral or even out of the ordinary about selling one's life insurance policy, including to an investor in the secondary market who lacks an insurable interest in the life of the insured.

Indeed, the United States Supreme Court recognized over a century ago that life insurance is personal property that may be sold like any other asset.  *See Grigsby v. Russell*, 222 U.S. 149 (1911).  State legislatures adopted this approach as well.  For example, under New York insurance law, "[a]ny person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation" and "[n]othing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated." N.Y. Ins. Law § 3205(b)(1); *see also Kramer v. Phoenix Life Ins. Co.*, 940 N.E.2d 535 (N.Y. 2010) (holding that New York law permits individuals to transfer life insurance policies to investors).  Likewise, California's law has recognized for over a century that "[a] life or disability policy may pass by transfer, will or succession to any person, whether or not the transferee has an insurable interest." Cal. Ins. Code. § 10130; *see also Lewis v. Reed*, 192 P. 335,

336 (Cal. Ct. App. 1920) (holding that statute and public policy allow sales of life insurance policies to persons having no insurable interest in the life of the insured).

### B. John Hancock Has Never Challenged the Validity of Any of Plaintiffs' Policies

In May 2018, John Hancock notified Plaintiffs that it was increasing the COI rates on Plaintiffs' Policies. *See, e.g.*, Dkt. No. 179-7, 179-8, 179-9. In telling Plaintiffs they must pay more premiums to John Hancock, John Hancock did not say anything about STOLI or express any concerns or doubt about the validity of Plaintiffs' Policies. *See, e.g.*, *id.* It simply told Plaintiffs that they "need to increase [their] premiums" to keep their Policies inforce. *See, e.g.*, *id.* At the time John Hancock notified Plaintiffs of the COI Rate Increases, it had already collected more than $400 million in premiums on the Policies. In 2019, Plaintiffs filed this action challenging the COI Rate Increases. Dkt. No. 1. In its Answer, John Hancock asserted an affirmative defense claiming, for the first time in the 10 to 15 years, that some unspecified policies are STOLI:

> Plaintiffs' claims against John Hancock are barred in whole or in part by laches, estoppel, waiver, ratification, unclean hands, acquiescence, or other related equitable doctrines on grounds that may include, but are not limited to, the following: (i) at the time of application of one or more of Plaintiffs' Policies, there was an intention on behalf of the proposed owner that a party, other than the proposed owner, would obtain a right, title or interest in the policy issued on the life of the proposed life insured as a result of the application, and John Hancock issued the policies in reliance on the fact that there was no such intention; (ii) one or more of Plaintiffs' Policies were purchased for the intended benefit of a person who, at the time of policy issuance, did not have an insurable interest in the life of the insured, and John Hancock issued the policies in reliance on the fact there was an insurable interest in the life of the insured[.]"

Dkt. No. 18 at 28; *see also* Dkt. No. 180 at 23-24.[1] Plaintiffs served John Hancock with discovery requests at the outset of discovery seeking the basis for these defenses, including which Plaintiff

---

[1] John Hancock's Answer merely parrots definitions of STOLI in state insurance laws. *See, e.g.*, Cal. Ins. Code § 10113.1.

-5-

Policies John Hancock contends supports the defenses. *See, e.g.*, LeQuang Decl. Ex. 42 at 3. In response to Plaintiffs' interrogatory seeking this information, John Hancock simply repeated verbatim its affirmative defenses (which itself simply repeats STOLI laws) and did not identify any Policies it contends are void or provide any additional facts supporting these defenses. *Id.* Ex. 43 at 14-15. John Hancock stated it may supplement its response after taking discovery, *see id.*, but it has never supplemented these responses.

To the contrary, since filing its Answer and serving its discovery responses, John Hancock has continued to provide Plaintiffs with annual statements itemizing the charges and deductions John Hancock has taken from the Policies' accounts. *See, e.g.*, LeQuang Decl. Exs. 44 & 45. These annual statements state the "Policy Status" of Plaintiffs' Policies as "Inforce Premium Paying." *See, e.g., id.* Ex. 44 at -343; *id.* Ex. 45 at -423. They also state the "Current Insurance Benefit" under Plaintiffs' Policies. *See, e.g., id.* Ex. 44 at -344; *id.* Ex. 45 at -424. In addition, the annual statements state that "your policy has been in good standing for more than 10 years[.]" *See, e.g., id.* Ex. 44 at -345; *id.* Ex. 45 at -425. Additionally, when Plaintiffs' Policies' accounts have had insufficient funds to cover the monthly charges, John Hancock has sent Plaintiffs notices demanding more premiums. *See, e.g., id.* Ex. 46 at -595 ("Unless the premium payment described herein shall be paid to the company … the policy or annuity contract and all payment thereon will become forfeited and void[.]"). John Hancock also has provided Plaintiffs with written "Verifications of Coverage" stating, among other things, that their Policies are "Inforce (Premium Paying)." *See, e.g., id.* Exs. 47 & 48.

      C. **Any STOLI Defense John Hancock May Have Would Be an Equitable Defense that Must Be Tried by the Court After the Jury Decides Plaintiffs' Legal Claims**

While Plaintiffs believe the Court should bar John Hancock from pursuing any STOLI defense for the reasons discussed above and further below, even if the Court is inclined to allow

John Hancock to pursue this defense, it is an equitable defense that must be tried by the Court after the jury decides Plaintiffs' legal claims. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir. 1995); *Wade v. Orange Cnty. Sheriff's Off.*, 844 F.2d 951, 954 (2d Cir. 1988). Thus, in no event will the origination of Plaintiffs' Policies, including whether Plaintiffs' Policies were originated through fraud or lack insurable interest, have anything whatsoever to do with the claims and defenses at issue in the jury trial.

### III. LEGAL STANDARDS

#### A. Motions *in Limine*

Federal district courts have the inherent authority to rule on motions *in limine* to manage the course of trials. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Id.* (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

In deciding motions *in limine*, courts may exclude clearly irrelevant and inadmissible evidence. *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796, 2004 WL 1970144, at *5-6 (S.D.N.Y. Sept. 3, 2004). Evidence is relevant where it makes a fact that is of consequence to determining the action more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Relevant evidence may also be excluded if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. "'Unfair prejudice' [under Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172,

180 (1997). The trial court's balancing of prejudice against probative value is afforded "broad discretion … since so much depends upon critical perceptions of the jury's reaction to day-to-day dynamics of a trial not evident from the printed record." *Gonzalez v. Digital Equip. Corp.*, 8 F. Supp. 2d 194, 198 (E.D.N.Y. 1998).

### B. Insurable Interest Law

Under both New York and California law, even if the Policies were issued in the manner described in John Hancock's affirmative defense, the Policies would not be void for lack of insurable interest as purported "STOLI." The New York Court of Appeals, in reviewing this exact issue, expressly held that "New York law permits a person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such purpose." *Kramer v. Phoenix Life Ins. Co.*, 940 N.E.2d 535, 536-37 (N.Y. 2010). Further, "under New York law, wagering insurance contracts entered for the benefit of parties that lack an insurable interest are simply voidable, not void ab initio, and therefore cannot be challenged after the contestability period has expired." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 137-38 (2d Cir. 2018) (citing *New England Mut. Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 273-75 (N.Y. 1989)).

Likewise, under California law, an insurance policy is impermissible STOLI only "if there is no insurable interest at the time the policy takes effect." *Hartford Life & Annuity Ins. Co. v. Doris Barnes Family 2008 Irrevocable Tr.*, 552 F. App'x 664, 665 (9th Cir. 2014). "The plain language of the California Insurance Code permits owners of life insurance policies to transfer such policies to third parties who lack an insurable interest." *Id.* (citing Cal. Ins. Code § 10130). Moreover, "the California Court of Appeal . . . explained that a pre-existing intent to transfer life insurance policies 'does not negate the fact that when the [original owner] acquired the policies,

they were supported by an insurable interest.'" *Id.* (quoting *Lincoln Life & Annuity Co. of N.Y. v. Berck*, No. D056373, 2011 WL 1878855, at *6 (Cal. Ct. App. May 17, 2011) (unpublished)); *see also Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Tr.*, 638 F. Supp. 2d 1170, 1177-79 (C.D. Cal. 2009) (holding that life insurance policies are valid under the California law so long as there exists an insurable interest at the time the policy takes effect).

## IV. ARGUMENT

### A. The Court Should Bar John Hancock from Pursuing Any STOLI Defense

An insurance company cannot claim a policy is STOLI while continuing to collect premiums. In *U.S. Bank*, a policyholder sued an insurance company claiming the insurance company breached their policies by raising cost of insurance rates. *U.S. Bank*, 288 F.R.D. at 284. The insurance company sought discovery concerning the origination of the plaintiff's policies to support arguments that the policies were STOLI while continuing to collect premiums on the policies. *Id.* at 286-287. Magistrate Judge Francis denied the insurance company's motion to compel documents and interrogatory responses related to its STOLI arguments and held that if "PHL [the insurance company] intends to pursue this defense, it must seek a declaratory judgment [that the policies are void]" and "it may not continue to collect premiums." *Id.* at 286. Magistrate Judge Francis concluded that unless the insurance company "affirmatively asserts a STOLI defense"—by ceasing collection of premiums and seeking a declaratory judgment that the policies are void—"the circumstances surrounding the origination of the policies are not relevant to this case." *Id.* at 287.

Three years later, in the leadup to trial, the plaintiff policyholder also filed a motion *in limine* to exclude evidence and argument related to the policies being STOLI. *U.S. Bank*, 112 F. Supp. 3d at 138-39. Judge McMahon agreed with Magistrate Judge Francis that unless the insurance company affirmatively asserted a STOLI defense by ceasing collection of premiums and

seeking a declaratory judgment, the circumstances surrounding the origination of the policies were irrelevant. *Id.* at 139. Judge McMahon granted the plaintiff's motion *in limine* to exclude such evidence and held: "The jury will not be informed about the origination of STOLI policies or the many nefarious schemes that have cropped up as a result." *Id.* Judge McMahon's and Magistrate Judge Francis's rulings are consistent with "the well settled rule of New York insurance law that the continued acceptance of premiums by the carrier after learning of facts which allow for the rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind." *Am. Gen. Life Ins. Co. v. Salamon*, 483 F. App'x 609, 610 (2d Cir. 2012).

The principle articulated by Judge McMahon and Magistrate Judge Francis in *U.S. Bank* applies here to bar John Hancock from pursuing any STOLI defense (which, as discussed above, would have to be tried by the Court after the jury decides Plaintiffs' legal claims). John Hancock has been paid more than half a billion dollars in premiums on Plaintiffs' Policies to date, and Plaintiffs alone have paid approximately $300 million. Contrary to its vague assertion that some or all of Plaintiffs' Policies are void due to lack of insurable interest or fraud in connection with the Policies' origination, John Hancock has continued accepting premium payments and deducting COI charges from Plaintiffs' Policies' accounts. *See, e.g.*, LeQuang Decl. Ex. 45 at -430 ($78.8K COI charged deducted from the policy account in December 2021); Ex. 44 at -349 ($17.5K COI charge deduced from the policy account in July 2022). Because John Hancock continues to collect, and profit, on Plaintiffs' Policies, it has waived any STOLI defense. *See U.S. Bank*, 112 F. Supp. 3d at 139; *Am. Gen. Life Ins.*, 483 F. App'x at 610.

John Hancock's responses to Plaintiffs' interrogatories further show that it is not affirmatively pursuing a STOLI defense. For example, in response to the EFG Plaintiffs' Interrogatory No. 5, which asked John Hancock to state all facts that support its affirmative defense

that Plaintiffs' claims are barred by unclean hands (among other things), John Hancock merely parroted the vague assertions in its Answer (which merely parroted STOLI laws) that "at the time of application of one or more of Plaintiffs' policies, there was an intention by the proposed owner that a party, other than the proposed owner, would obtain a right, title or intertest in the policy issued on the life of the proposed life insurance as a result of the application, and John Hancock issued the policies in reliance on the fact that there was no such intention," and that "one or more of Plaintiffs' Policies were purchased for the intended benefit of a person who, at the time of policy issuance, did not have an insurable interest in the life of the insured, and John Hancock issued the policies in reliance on the fact there was an insurable interest in the life of the insured." LeQuang Decl. Ex. 43 at 13-14. John Hancock did not then, and has not to date, identified any specific one of Plaintiffs' 108 Policies that it contends are STOLI, let alone provide any specific facts and evidence supporting such an assertion. John Hancock further objected to the interrogatory on grounds that disclosing such facts would be "premature prior to the close of discovery," while reserving "the right to modify, amend and/or supplement" its response. *Id.* at 14-15. John Hancock never did modify, amend, and/or supplement its response. Nor has John Hancock ever disclosed any persons with personal knowledge about the origination of Plaintiffs' Policies. *Id.* Ex. 49 at 2-5. At bottom, the statements in John Hancock's Answer and its discovery responses invoke certain discovery about the insureds' intent or plans for the benefit of a third party require additional disclosures of witnesses and facts that John Hancock has never disclosed.

Here, just as in *U.S. Bank*, John Hancock has never stopped collecting premiums or sought a declaration that any of Plaintiffs' Policies are void. Just as in *U.S. Bank*, John Hancock has no STOLI defense, and the Court should bar it from pursuing one.

B.  **Evidence Concerning the Origination of Plaintiffs' Policies Is Irrelevant to the Claims and Defenses to Be Tried by the Jury**

Evidence and arguments concerning the origination of Plaintiffs' Policies, including evidence pertaining to whether the Policies were originated through fraud, is irrelevant for all the reasons discussed above. In addition, such evidence is irrelevant to the jury trial because even if John Hancock is allowed to pursue a STOLI defense, that defense must be tried by the Court, not the jury. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 432 (2d Cir. 1995); *Wade v. Orange Cnty. Sheriff's Off.*, 844 F.2d 951, 954 (2d Cir. 1988). Without a STOLI defense available, any evidence that tends to support a STOLI argument is inconsequential and, therefore, irrelevant to the jury trial. *U.S. Bank*, 288 F.R.D. at 286-87; *U.S. Bank*, 112 F. Supp. 3d at 138-39.

C.  **Even If Evidence of John Hancock's STOLI Argument Is Relevant, and It Is Not, It Should Be Excluded Under Federal Rule of Evidence 403 Because Its Minimal Probative Value Is Substantially Outweighed by the Dangers of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time**

Because John Hancock has waived any STOLI defense, if the circumstances surrounding the Policies' origination have any relevance, it is de minimis and substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time. This case is about whether John Hancock breached Plaintiffs' Policies, breached the implied covenant of good faith and fair dealing (in contract and in tort), and converted Plaintiffs' property by raising COI rates. The origination of the Policies and arguments they are STOLI is a complete and utter sideshow that has no place in this trial. John Hancock's apparent intent is to inject this issue into the trial to distract the jury from John Hancock's conduct and color the jury against Plaintiffs. Federal Rule of Evidence 403, therefore, bars admission.

-12-

Indeed, Judge McMahon in *U.S. Bank* recognized this as well. In noting "the New York Court of Appeals has declared that STOLI transactions are legal in New York," Judge McMahon found:

> The prejudice from the inflammatory rhetoric [plaintiff] seeks to preclude necessarily outweighs the probative value of information about the STOLI industry—information that a jury would undoubtedly find distasteful . . . and which perforce results in prejudice that does not derive from proof relevant to the issues in the case—the very sort of prejudice against which Rule 403 guards.

*U.S. Bank*, 112 F. Supp. 3d at 139 (internal citations omitted).

If John Hancock is permitted to present evidence that the Policies are STOLI, Plaintiffs will have to present evidence showing that their Policies are not STOLI, were not originated through fraud, and did not violate insurable interest law. This will not only be prejudicial to Plaintiffs, but will take a significant amount of time and turn into a wasteful side-show trial about irrelevant issues that have no probative value. Indeed, whole trials are conducted on the issue of insurable interest alone. This no doubt would result in a trial within a trial that would confuse and mislead the jury and consume an inordinate amount of time in an already complicated case. As Judge McMahon recognized, this is the exact type of evidence that Rule 403 guards against. *See id.*

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order *in limine* precluding John Hancock from pursuing any STOLI defense, including any defense that the Policies were originated through fraud or lacked insurable interest; and excluding evidence and argument concerning the origination of Plaintiffs' Policies, including evidence concerning whether the Policies are STOLI, were originated through fraud, or lack insurable interest; and grant such other and further relief as the Court deems just and proper under the circumstances.

| | |
|---|---|
| Dated: January 27, 2023 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br><br>By: /s/ Khai LeQuang<br>KHAI LEQUANG<br><br>Attorneys for Plaintiffs VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUB-FUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; EFG BANK AG, CAYMAN BRANCH; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUB-FUND DELAWARE TRUST, VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP, AND EFG BANK AG, CAYMAN BRANCH; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST; LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; AND PALM BEACH SETTLEMENT COMPANY |