# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>               Plaintiffs,<br>   v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br>               Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br>               Plaintiffs,<br>   v.<br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>               Defendant. | |

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

                        Plaintiffs,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                        Defendant.

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING JOHN HANCOCK'S ILLUSTRATIONS AND ILLUSTRATION TESTING AND CERTIFICATION PRACTICES**

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "Defendants" or "John Hancock") respectfully move this Court for an order *in limine* precluding Plaintiffs from offering evidence or argument regarding illustrations for the Performance UL policies at issue in this Action ("Subject Policies") or John Hancock's illustration testing and certification practices.

As the Court has already acknowledged, "this is a contract case," and the crux of the upcoming trial is the language found in the Performance UL policy forms. *See* Ex. A, Jan. 9, 2023 Status Conference Tr. at 32:10-11. Unlike the settled class action lawsuit that involved the same Performance UL policy forms at issue here, Plaintiffs in this case do *not* assert any fraud or misrepresentation claims based on John Hancock's illustrations—documents that present hypothetical account values at specified future years for a given policy using certain stated assumptions, including the amount and timing of the premiums paid by the policyholder. *See* Ex. I, Life Insurance Illustrations Model Regulation ("LIIMR"). Indeed, there is not a single mention of the word "illustration" in Plaintiffs'

1

Second Amended and Consolidated Complaint (ECF No. 179) ("Compl."). But despite the narrow focus of the case to be tried, Plaintiffs' exhibit list includes approximately 200 illustrations for the Subject Policies, and Plaintiffs' proposed deposition designations include dozens of pages of testimony relating to John Hancock's illustrations and how it is John Hancock complied with the regulatory illustration certification requirement. Such evidence concerning John Hancock's illustrations is irrelevant and a waste of time in this proceeding, and it must therefore be excluded pursuant to Federal Rules of Evidence 401, 402, and 403.[1]

## BACKGROUND

As both this Court and Plaintiffs have repeatedly recognized, "this is a contract case, not a regulatory case." Ex. A, Jan. 9, 2023 Status Conference Tr. at 32:10-11; *see also, e.g.*, *id.* at 32:22-23 ("I repeat, this is not a regulatory case. It's a contract case."); Ex. C, Oct. 13, 2021 Hr'g Tr. at 3:16-19 ("This is a contract claim and the contract spells out exactly what it is that's at issue."); Ex. D, Jan. 5, 2022 Hr'g Tr. at 18:24-25 (Plaintiffs' counsel acknowledging that the "liability side of the case" revolves around "whether John Hancock breached the policies of improperly raising rates").

Specifically, Plaintiffs claim that John Hancock breached the unambiguous terms of the Performance UL policies by increasing cost of insurance or "COI" rates allegedly in an unfairly discriminatory manner and based on considerations other than the expectations of future experience specified in the contracts. *See* Compl. at ¶¶ 4, 51. The policy provisions that Plaintiffs assert that John Hancock breached appear in two policy forms on which the Performance UL Products were issued.[2] The 03PERUL policy form states, in relevant part:

> The Applied Monthly Rates will be **based on *our* expectations of future investment earnings, persistency, mortality, expense and reinsurance costs**

---

[1] Also submitted herewith is the Declaration of Matthew T. Martens in Support of John Hancock's Motions *in Limine* Nos. 1-11, which attaches all exhibits cited in John Hancock's 11 motions *in limine*. The exhibits cited herein are cited as "Ex. []."

[2] One of the relevant policy forms refers to "Applied Monthly Rates" whereas the other relevant policy form refers to "Cost of Insurance Rates." For ease of reference and simplicity, John Hancock will refer herein to both as "COI rates."

> **and future tax, reserve and capital requirements** …. Any change in the Applied Monthly Rates for the Basic Sum Insured or for the Additional Sum Insured will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force for the same length of time.

*See, e.g.*, Ex. E, DX C, JH_LEONARD_000011149 at -164 (emphasis added).  The 06PERFUL policy form states, in relevant part:

> The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and will be **based on *our* expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions** …. We review our Cost of Insurance rates from time to time, and may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured.

*See* Ex. F, DX D, JH_LEONARD_000175087 at -109 (emphasis added).  As Plaintiffs' counsel has previously admitted, Plaintiffs' additional implied covenant of good faith and fair dealing and conversion claims rise and fall on John Hancock's compliance with the above contractual provisions. *See* Ex. G, July 21, 2022 Hr'g Tr. at 6:25-7:3 (Plaintiffs' counsel acknowledging all claims in the case are derivative of the breach of contract claim, stating it is "likely" that if Plaintiffs "[lose] on the breach of contract, [they] lo[]se everything").

Plaintiffs do not, however, assert illustration-based claims or otherwise allege that John Hancock's illustrations were misleading.  In fact, Plaintiffs' 81-paragraph complaint does not even contain the word "illustration."  *See generally* Compl.[3]  Notwithstanding the limited scope of the claims to be tried, among the more than 4,900 exhibits that still remain on Plaintiffs' Fifth Amended Exhibit List, Plaintiffs intend to introduce numerous illustrations and various documents concerning John Hancock's illustration certification practices.  *See* Ex. B, Plaintiffs' Fifth Amended Exhibit List.  The following categories illustrate the types of documents that Plaintiffs are trying to inject into the trial:

1. <u>Illustrations</u>:  Plaintiffs' exhibit list includes approximately 200 illustrations for the Subject Policies.

---

[3] Plaintiffs' prior versions of their complaint likewise did not mention illustrations. *See generally* ECF No. 1; ECF No. 102.

2. <u>Illustration Testing and Certification</u>: Plaintiffs' exhibit list includes approximately 15 documents regarding the LIIMR and Actuarial Standard of Practice No. 24 ("ASOP 24")—which both address illustration testing and annual certification requirements—and John Hancock's approach to illustration testing and certification. These exhibits include correspondence with insurance regulators, illustration testing results, and two drafts of an internal Life Insurance Illustration Model Regulation Interpretation document that assesses various illustration certification regulations and John Hancock's approach to the annual illustration certification process.

Additionally, Plaintiffs have designated countless excerpts of deposition testimony related to John Hancock's illustrations and illustration testing and certification practices, including the deposition testimony of Geoff Gittins and Catherine Murphy, two John Hancock employees who previously served as the Company's appointed illustration actuary (*i.e.*, an actuary appointed by an insurer's board of directors who is responsible for certifying annually that the disciplined current scale used in the insurer's illustrations complies with the LIIMR and ASOP 24) but had no involvement with John Hancock's COI Redetermination that is the subject of Plaintiffs' contract claims. *See* Ex. J, Geoff Gittins Depo. Tr. (Jan. 15, 2021) at 32:11-16 ███████████████████████████ ███████████████████████████ Ex. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 25:18-26:1 ███████████████████████████ ███████████████████████████ 143:3-4 ███████████████████████████ ███████████. Examples of illustration-related deposition testimony that Plaintiffs have nonetheless designated for use at trial include:

Q: ███████████████ Ex. J, Geoff Gittins Depo. Tr. (Jan. 15, 2021) at 40:16)

A: ███████████████████████ Ex. J, Geoff Gittins Depo. Tr. (Jan. 15, 2021) at 40:19-21)

Q: ███████████████████████████ ███████████████████████████ Ex. J, Geoff Gittins Depo. Tr. (Jan. 15, 2021) at 105:9-14)

4

**A:** █████████████████████████████████████████
█████████████████████████ (Ex. J, Geoff Gittins Depo. Tr. (Jan. 15, 2021) at 105:17-21)

**Q:** █████████████████████████████████████████
(Ex. L, Geoff Gittins Depo. Tr. (Jan. 19, 2021) at 152:12-13)

**A:** █████████████████████████████████████████
█████████████████████████ Ex. L, Geoff Gittins Depo. Tr. (Jan. 19, 2021) at 152:16-21)

**Q:** █████████████████████████████████████████
█████████████████████████ x. L, Geoff Gittins Depo. Tr. (Jan. 19, 2021) at 158:21-25)

**A:** █████████████████████████████████████████
█████████████████████████ Ex. L, Geoff Gittins Depo. Tr. (Jan. 19, 2021) at 159:3-6)

**Q:** █████████████████████████████████████████
Ex. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 64:10-13)

**A:** █████████████████████████████████████████
x. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 64:16-18)

**Q:** █████████████████████████████████████████ Ex. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 79:8-9)

**A:** █████████████████████████████████████████ Ex. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 79:12-13)

**Q:** █████████████████████████████████████████
Ex. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 141:21-24)

**A:** █████████████████████████████████████████ Ex. K, Catherine Murphy Depo. Tr. (Jan. 27, 2021) at 142:3-4)

**Q:** █████████████████████████████████████████
x. M, Catherine Murphy Depo. Tr. (Jan. 28, 2021) at 242:10-13)

A: ███████████████████████████████████ Ex. M, Catherine Murphy Depo. Tr. (Jan. 28, 2021) at 242:15-16)

None of this is relevant to Plaintiffs' actual contract claims and will only confuse the jury.

## ARGUMENT

Motions *in limine* "can play an especially important and useful role in a jury trial," particularly where, as here, Plaintiffs are seeking to infuse into an already complicated case irrelevant and unnecessary evidence regarding John Hancock's illustrations and illustration testing and certification practices that is likely to confuse the jury and waste time. *See Luitpold Pharm., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Insdustrie*, 2015 WL 5459662, at *1 (S.D.N.Y. Sept. 16, 2015); *see also Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 424 (S.D.N.Y. 2004) (Hellerstein, J.) ("The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." (citation omitted)). The Court should exclude evidence concerning John Hancock's illustrations and illustration testing and certification practices for three reasons. *First*, Plaintiffs do not bring a claim alleging that John Hancock's illustrations were misleading. *Second*, illustrations are irrelevant to Plaintiffs' breach of contract claim and will only confuse the jury and waste time. *Third,* illustrations would not be relevant to any possible calculation of breach of contract damages.

**I.  Evidence Concerning Illustrations Is Irrelevant Because Plaintiffs Do Not Allege That John Hancock's Illustrations Were Misleading**

Plaintiffs have brought a breach of contract case—not a fraud or misrepresentation case. Unlike the settled cost of insurance class action involving the same Performance UL policies, Plaintiffs here do not assert illustration-based claims under New York Insurance Law Section 4226 ("Section 4226"), New York General Business Law Section 349 ("Section 349"), or the California Unfair Competition Law, Cal. Bus. & Prof. Code Sections 17200 et seq. ("UCL"). *See* Leonard et al. v. John Hancock Life

Ins. Co. of New York et al., Case No. 1:18-cv-04994 (S.D.N.Y. 2018) (ECF No. 167) (alleging claims under Section 4226, Section 349, and the UCL).

Indeed, there is not a single allegation in the Complaint suggesting that John Hancock's illustrations contained misleading statements or otherwise misrepresented the terms, benefits, or advantages of the Performance UL policies. *See generally* Compl. While John Hancock's illustrations and illustration practices would plainly be relevant to a case asserting illustration-based claims, no such claims are to be tried in this case.

II. **Evidence Concerning Illustrations Is Irrelevant to Plaintiffs' Breach Of Contract Claim**

Plaintiffs' breach of contract claim asserts that John Hancock breached the unambiguous terms of the Performance UL policy forms by increasing cost of insurance rates allegedly in an unfairly discriminatory manner and based on considerations other than the expectations of future experience specified in the contracts. *See* Compl. at ¶¶ 4, 51. But the illustrations for Performance UL policies are not relevant to this breach of contract claim.

*First*, the illustrations that Plaintiffs intend to offer at trial are not part of the policy forms. Plaintiffs do not—and could not—suggest otherwise. Indeed, the policy forms make clear that "[t]he entire contract between the applicant and [John Hancock] consists of the policy, such application, and any riders and endorsements …. ***Nothing is incorporated by reference***." *See* 03PERUL Policy Form, Ex. E, DX C, JH_LEONARD_000011149 at -168 (emphasis added); 06PERFUL Policy Form, Ex. F, DX D, JH_LEONARD_000175087 at -114 (emphasis added); *see also* N.Y. Ins. Law § 3204(a)(1) ("Every policy of life … insurance … delivered or issued for delivery in this state, shall contain the entire contract between the parties, and nothing shall be incorporated therein by reference to any writing, unless a copy thereof is endorsed upon or attached to the policy or contract when issued."); *cf. Jackson v. Minn. Life Ins. Co.*, 275 F. Supp. 3d 712, 735 (E.D.N.C. 2017) ("Plaintiffs fail to plausibly allege that either the August 2009 Illustration or Minnesota Life March 2010 Illustration formed part of the contract

7

consisting [of] the Policy … The Policy as issued does not include the illustrations. The illustrations were 'not referred to in the policy, and [were] not even attached to it.'").

*Second*, illustrations issued to applicants or policyholders are not themselves contracts. Rather, illustrations are non-contractual documents that reflect hypothetical account values for the Performance UL policies at future durations under certain expressly stated assumptions, including assumptions as to matters that are inherently unknowable or are dependent on policyholder behavior or circumstances. *See* Ex. N, PTX 2782, VIDA-JH-000018866; Ex. I, LIIMR; *cf. Jackson*, 275 F. Supp. 3d at 735-36 ("[T]he illustrations concerning the Policy fail to meet the requirements of contract formation …. [P]laintiffs still could not plausibly allege the meeting of the minds required to form a valid contract. At the bottom of the illustration, it states that it is based on assumptions that are 'not likely to occur and actual results may be more or less favorable than those shown.' Nowhere does the illustration contain language plausibly interpreted as manifesting the parties' intent to be bound by it, nor was it signed by the parties.").

*Third*, evidence concerning John Hancock's compliance with illustration-related regulations and standards of practice are not relevant to Plaintiffs' breach of contract claim and will only confuse the jury and waste time. While Plaintiffs intend to offer a plethora of evidence regarding the LIIMR, ASOP 24, and John Hancock's illustration testing and certification practices—including correspondence with insurance regulators, illustration testing results, internal documents that assess John Hancock's approach to illustration testing and annual certification requirements, and countless pages of deposition testimony from John Hancock's former appointed illustration actuaries—none of this evidence bears any relevance on the central questions to be tried: whether John Hancock redetermined the cost of insurance rates for Plaintiffs' policies in an unfairly discriminatory manner and based on considerations other than the expectations of future experience specified in the contracts. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); *see also, e.g.*, *Busher v. Barry*, 2019 WL 6895281, at *12

(S.D.N.Y. Dec. 18, 2019) (excluding evidence "not relevant to any issue remaining in this case," including "such testimony as is anticipated" from certain witnesses); *Berger v. New York City Police Dep't*, 2019 WL 6909526, at *4 (S.D.N.Y. Dec. 19, 2019) (excluding as "irrelevant and thus inadmissible" evidence concerning matters "not part of this case"). Instead, this evidence regarding John Hancock's illustration testing and certification practices will only serve to confuse the issues and needlessly lengthen the trial by requiring mini-trials regarding matters irrelevant to Plaintiffs' actual asserted claims. *See* Fed. R. Evid. 403; *see also, e.g.*, *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 260, 271 (S.D.N.Y. 2015) (excluding evidence given "capacity of such evidence and lawyer arguments" to "confuse the jury and create unfair prejudice").

**III.    Illustrations Are Not Relevant To Any Calculation Of Breach Of Contract Damages**

Finally, John Hancock's illustrations are not relevant to any conceivable measure of breach of contract damages in this case. Illustrations present hypothetical account values at specified future years that the policy may be in force using certain stated assumptions, including the amount and timing of the premiums paid by the policyholder. *See* Ex. I, LIIMR. If, for example, a policyholder chooses to pay premiums for a Performance UL policy of a different amount or at different intervals than those that appear in an illustration (a choice over which John Hancock has no control), that will mean a different amount of premium and interest will be credited to the policy's account value, which in turn will result in a different cost of insurance charge being deducted from the policy's account value than that reflected in the illustration. Indeed, all illustrations for the Performance UL policies state that the illustrations are "not intended to predict actual performance," and "[v]alues set forth in the illustration are not guaranteed." *See* Ex. N, PTX 2782, VIDA-JH-000018866. Given that illustrations reflect assumed premium payments and non-guaranteed rates and values, illustrations do not specify any purported "price" for the Performance UL policies that could be used to calculate breach of contract damages.

For that reason, it is no surprise that Plaintiffs' proposed method for calculating their damages at trial does not turn on illustrations. Plaintiffs' loss calculation methodology consists of two components: (1) the actual amount of monthly deduction for COI charges that John Hancock deducted from each Performance UL policy less the amount that Plaintiffs assert would have been deducted had the COI rate increases not been made; and (2) the amount of policy sales load that John Hancock charged to the policyholder on the portion of premiums that Plaintiffs assert were paid to cover the increased COI charges. *See* Ex. O, Expert Report of Donald D. Solow ("Solow Report") at ¶¶ 29-36. Plaintiffs' damages expert used "annual statements or quarterly statements"—not illustrations—to determine these amounts. *Id.* at ¶¶ 33-34. In fact, the Solow Report does not even mention illustrations for the Performance UL policies. *See generally id.* Accordingly, John Hancock's illustrations play no role in measuring any breach of contract damages in this case.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court issue an order precluding Plaintiffs from introducing any evidence or argument regarding illustrations for the Performance UL policies or John Hancock's illustration testing and certification practices.

| | |
|---|---|
| Date: January 27, 2023 | */s/ Matthew T. Martens* |
| | Matthew T. Martens |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 1875 Pennsylvania Avenue NW |
| | Washington, DC 20006 |
| | Tel.: (202) 663-6000 |
| | Fax: (202) 663-6363 |
| | |
| | Robert K. Smith (*pro hac vice*) |
| | Yavor Nechev (*pro hac vice*) |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 60 State Street |
| | Boston, MA 02109 USA |
| | Tel.: (617) 526-6000 |
| | Fax: (617) 526-5000 |
| | |
| | John F. LaSalle |
| | BOIES SCHILLER FLEXNER LLP |
| | 55 Hudson Yards |
| | New York, NY 10001 |
| | Tel.: (212) 446-2300 |
| | Fax: (212) 446-2350 |
| | |
| | *Attorneys for Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York* |