**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

VICOF II TRUST; VIDA LONGEVITY
FUND, LP; WELLS FARGO BANK,
NATIONAL ASSOCIATION, as securities
intermediary for VICOF II TRUST and VIDA
LONGEVITY FUND, LP; and PF
PARTICIPATION FUNDING TRUST,

        Plaintiffs,

        v.

JOHN HANCOCK LIFE INSURANCE
COMPANY OF NEW YORK,

        Defendant.

Index No. 19-cv-11093 (AKH)

VICOF II TRUST; VIDA LONGEVITY
FUND, LP; LIFE ASSETS TRUST II S.A.
DELAWARE TRUST; VIDAQUANT
SUBFUND DELAWARE TRUST; VIDA
INSURANCE FUND II SERIES INTERESTS
OF THE SALI MULTI-SERIES FUND, LP;
WELLS FARGO BANK, NATIONAL
ASSOCIATION, as securities intermediary for
VICOF II TRUST, VIDA LONGEVITY
FUND, LP, LIFE ASSETS TRUST II S.A.
DELAWARE TRUST, VIDAQUANT
SUBFUND DELAWARE TRUST, and VIDA
INSURANCE FUND II SERIES INTERESTS
OF THE SALI MULTI-SERIES FUND, LP;
DLP MASTER TRUST; DLP MASTER
TRUST II; GWG DLP MASTER TRUST
LIFE FUNDING TRUST; PF
PARTICIPATION FUNDING TRUST; and
PALM BEACH SETTLEMENT COMPANY,

        Plaintiffs,

        v.

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.),

|                                              |
| -------------------------------------------- |
| Defendant.                                   |

| |
| EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH, |
| Plaintiffs, |
| v. |
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), |
| Defendant. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 3: TO EXCLUDE EVIDENCE RELATING TO THE ETHICS AND MORALITY OF LIFE SETTLEMENTS AND INVESTING IN LIFE INSURANCE**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     BACKGROUND ....................................................................................................... 2

        A.     Life Settlements Are Common, Legal, and Beneficial to Consumers, Particularly Elderly Insureds ................................................................... 2

        B.     John Hancock Intends to Turn This Trial into an Inquisition on the Ethics, Morality, and Propriety of Investing in Life Insurance ......................... 4

III.    LEGAL STANDARDS ............................................................................................ 5

IV.   ARGUMENT ........................................................................................................... 6

        A.     Evidence Concerning the Ethics and Morals of Investing in Life Insurance Is Irrelevant and Should Be Excluded Under Federal Rule of Evidence 402 ........ 6

        B.     Federal Rule of Evidence 403 Bars Admissibility of This Evidence Because the Marginal Probative Value of the Evidence—and There Is None—Is Substantially Outweighed by the Dangers of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time ............................ 6

V.     CONCLUSION ........................................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
No. 01 Civ. 3796, 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004) ..............................................5

*Gonzalez v. Digital Equip. Corp.*,
8 F. Supp. 2d 194 (E.D.N.Y. 1998) ..........................................................................................5

*Grigsby v. Russell*,
222 U.S. 149 (1911) ..................................................................................................................3

*Highland Capital Mgmt., L.P. v. Schneider*,
551 F. Supp. 2d 173 (S.D.N.Y. 2008) .......................................................................................5

*Kramer v. Phoenix Life Ins. Co.*,
940 N.E.2d 535 (N.Y. 2010) .....................................................................................................4

*Lewis v. Reed*,
192 P. 335 (Cal. Ct. App. 1920) ...............................................................................................4

*Luce v. United States*,
469 U.S. 38 (1984) ....................................................................................................................5

*Old Chief v. United States*,
519 U.S. 172 (1997) ...............................................................................................................5, 7

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996) .......................................................................................................5

**Statutes**

Cal. Ins. Code. § 10130 ..................................................................................................................4

N.Y. Ins. Law § 3205(b)(1) ...........................................................................................................4

**Other Authorities**

Fed. R. Evid. 401 ...........................................................................................................................5

Fed. R. Evid. 401(a) .......................................................................................................................6

Fed. R. Evid. 401(b) .......................................................................................................................6

Fed. R. Evid. 402 .......................................................................................................................1, 6

Fed. R. Evid. 403 ...................................................................................................................1, 5, 7

Plaintiffs VICOF II Trust, Vida Longevity Fund, LP, Life Assets Trust II S.A. Delaware Trust, Vidaquant Sub-Fund Delaware Trust, and Vida Insurance Fund II Series Interests of the SALI Multi-Series Fund, LP (collectively, the "Vida Funds"); EFG Bank AG, Cayman Branch ("EFG"); Wells Fargo Bank, National Association ("Wells Fargo"), as securities intermediary for the Vida Funds and EFG (in such capacity, "Wells Fargo SI"); DLP Master Trust, DLP Master Trust II, GWG DLP Master Trust, Life Funding Trust, PF Participation Funding Trust, and Palm Beach Settlement Company (collectively, "EAA Plaintiffs," and together with Vida Funds, EFG, and Wells Fargo SI, "Plaintiffs") move the Court to exclude evidence and argument concerning Plaintiffs' ethics and morality, and the ethics and morality of investing in life insurance, and grant such other and further relief as the Court deems just and proper under the circumstances.

## I.   <u>INTRODUCTION</u>

Plaintiffs[1] filed this action to hold Defendants John Hancock Life Insurance Company (U.S.A.) ("JHUSA") and John Hancock Life Insurance Company of New York ("JHNY," and together with JHUSA, "John Hancock" or "Defendants") accountable for the unjustified cost of insurance ("COI") rate increases (the "COI Rate Increases") it began imposing in 2018 on certain of Plaintiffs' Performance UL policies ("Policies"). John Hancock has indicated it plans to try to distract the jury from its misconduct by shifting the jury's focus to the fact that Plaintiffs are investors who purchased their Policies in the secondary or tertiary markets and questioning the morality and ethics of such investments because Plaintiffs receive money (i.e., the death benefit under a life insurance policy) when the insured dies. Plaintiffs' morals, however, are not on trial

---

[1] For purposes of this motion, references to "Plaintiffs" solely refer to the entitlement holders who own the ultimate beneficial interest in the policies at issue, and does not include Wells Fargo, National Association, which is the securities intermediary for the entitlement holders.

in this case.  And there is nothing wrong or even out of the ordinary about consumers selling their life insurance policies to investors.

Evidence concerning the morality or ethics of Plaintiffs' businesses and investments is irrelevant to whether John Hancock's COI Rate Increases were proper and, therefore, is inadmissible under Federal Rule of Evidence 402.  In addition, the probative value of such evidence (there is none) is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time.  It is apparent John Hancock wants to introduce this evidence is to mislead the jury into deciding this case due to an aversion for life settlements as opposed to the merits of the case.  This is improper and such evidence or argument should be excluded under Federal Rule of Evidence 403.  The Court should not allow John Hancock to attempt to turn this case into an inquisition on the ethics, morality, and the propriety of investing in life insurance.

## II.    BACKGROUND

### A.    Life Settlements Are Common, Legal, and Beneficial to Consumers, Particularly Elderly Insureds

Plaintiffs own 108 Performance UL policies that John Hancock issued between 2004 and 2009.  Dkt. No. 179 ¶¶ 24-26.  Plaintiffs acquired their Policies in or through the secondary and tertiary markets for life insurance.  Generally, the secondary market consists of "life settlements"—the sales of life insurance policies by the original owner to a third party.  *See, e.g.*, LeQuang Decl. Ex. 11 ¶ 79.  The seller receives a cash payment, while the purchaser assumes all future premium payments and receives the right to the death benefit when the insured dies.  *See, e.g.*, *id.*  Life settlements allow policyholders, particularly elderly individuals, to obtain cash for their policies when they would otherwise lapse or surrender them to the insurer for little or nothing in return.  *See, e.g.*, *id.* ¶¶ 80-81.  "For older adults who are struggling to pay for health care costs

or long-term care in retirement, [a life settlement] can be a much-needed lifeline." *Id.* Ex. 39 at 2. In accordance with state laws, the Policies contain express provisions permitting their assignment. *See, e.g.*, Dkt. No. 179-2 at 14 ("Your interest in this policy may be assigned without the consent of any revocable Beneficiary."); Dkt. No. 179-4 at 16 (same).

The growth of the secondary market for life insurance has been spurred by insurance companies, like John Hancock, who have marketed life insurance as an investment. For example, John Hancock's 2022 Universal Life Portfolio seller's guide (the "UL Seller's Guide") focuses on financial planning with respect to its universal life policies. *See generally* LeQuang Decl. Ex. 40. The UL Seller's Guide notes that John Hancock's universal life policies are stable investments, with flexible funding and higher cash value potential. *Id.* at 2.

As more consumers use life insurance as investments at the encouragement of the insurance companies, like John Hancock, more consumers also seek to monetize their investment when their personal or financial circumstances change. In years past, consumers would have had to let their policies lapse and forfeit all premiums paid or surrender their policies for an often-nominal cash surrender value. Even as of 2015, the Life Insurance Settlement Association reported that $112 billon in death benefits were lost each year by Americans aged 65 and above by lapsing or surrendering their life insurance policies. *Id.* Ex. 41 at 4.

The secondary market for life insurance policies developed in response to this market deficiency. It gave consumers an option to realize more from their investments, creating a more efficient market. The result has been a robust and healthy secondary market for life settlements, with sales in 2018 estimated to be in the $3.4 billion range. *See id.* at 10. Despite what John Hancock has suggested, there is nothing immoral or even out of the ordinary about selling one's

life insurance policy, including to an investor in the secondary market who lacks an insurable interest in the life of the insured.

Indeed, the United States Supreme Court recognized over a century ago that life insurance is personal property that may be sold like any other asset. *See Grigsby v. Russell*, 222 U.S. 149 (1911). State legislatures adopted this approach as well. For example, under New York insurance law, "[a]ny person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation" and "[n]othing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated." N.Y. Ins. Law § 3205(b)(1); *see also Kramer v. Phoenix Life Ins. Co.*, 940 N.E.2d 535 (N.Y. 2010) (holding that New York law permits individuals to transfer life insurance policies to investors). Likewise, California's law has recognized for over a century that "[a] life or disability policy may pass by transfer, will or succession to any person, whether or not the transferee has an insurable interest." Cal. Ins. Code. § 10130; *see also Lewis v. Reed*, 192 P. 335, 336 (Cal. Ct. App. 1920) (holding that statute and public policy allow sales of life insurance policies to persons having no insurable interest in the life of the insured).

**B.** **John Hancock Intends to Turn This Trial into an Inquisition on the Ethics, Morality, and Propriety of Investing in Life Insurance**

John Hancock has made clear its intention to divert the jury's attention from the merits by making the trial about whether Plaintiffs are "bad people" for acquiring life insurance in the secondary and tertiary markets. For example, when deposing EAA's corporate representative, Ingo Wichelhaus, John Hancock asked: "[I]s there something distasteful about German investors seeking to profit from the death of various elderly U.S. citizens?" LeQuang Decl. Ex. 50 at 160:2-7. John Hancock posed similar questions to Adam Meltzer, a former Vida employee. *See, e.g.*, *id.* Ex. 51 at 94:2-3 (Q. "What are the ethics of investing life settlements,"); *id.* at 96:23-97:2 (Q.

"All things being equal, you would much rather have an insured die while coverage is in force than have the policy lapse or surrender, right?"); *id.* at 140:16-18 (Q. "Holding everything else constant, Vida is in a better economic situation if its insureds die sooner, rather than later?").  John Hancock followed the same refrain with EFG's corporate representative, Tobias Schmelz, asking him whether he thought EFG's decision not to invest any longer in life settlements was "based on a moral objection to investment in life settlements," LeQuang Decl. Ex. 52 at 55:20-22, and whether EFG's investments would "be more profitable if insureds die of COVID-19," *id.* Ex. 53 at 33:12-16.

III.   **LEGAL STANDARDS**

Federal district courts have the inherent authority to rule on motions *in limine* to manage the course of trials.  *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).  Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."  *Id.* (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

In deciding motions *in limine*, courts may exclude clearly irrelevant and inadmissible evidence.  *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796, 2004 WL 1970144, at *5-6 (S.D.N.Y. Sept. 3, 2004).  Evidence is relevant where it makes a fact that is of consequence to determining the action more or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401.  Relevant evidence may also be excluded if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.  *See* Fed. R. Evid. 403.  "'Unfair prejudice' [under Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  *Old Chief v. United States*, 519 U.S. 172,

180 (1997).  The trial court's balancing of prejudice against probative value is afforded "broad discretion … since so much depends upon critical perceptions of the jury's reaction to day-to-day dynamics of a trial not evident from the printed record."  *Gonzalez v. Digital Equip. Corp.*, 8 F. Supp. 2d 194, 198 (E.D.N.Y. 1998).

## IV. <u>ARGUMENT</u>

### A. <u>Evidence Concerning the Ethics and Morals of Investing in Life Insurance Is Irrelevant and Should Be Excluded Under Federal Rule of Evidence 402</u>

The testimony John Hancock sought to elicit through its deposition questioning of Plaintiffs' witnesses about the ethics and morals of investing in life insurance is irrelevant, and any questioning or argument at trial that mirrors this pattern should be barred.  As discussed above, there is nothing illegal, improper, or even unusual about consumers selling their life insurance policies on the secondary market.  The ethics and morality of Plaintiffs' acquisition of these policies (at great benefit to consumers) and their overall investment strategies have nothing to do with whether the COI Rate Increases complied with Plaintiffs' Policies.  Nor do they have anything to do with any of John Hancock's defenses.  Accordingly, such evidence and argument has no "tendency to make a fact more or less probable than it would be without the evidence," nor does it relate to any "fact [] of consequence in determining the action."  Fed. R. Evid. 401(a)-(b).  It is therefore inadmissible under Federal Rule of Evidence 402.

### B. <u>Federal Rule of Evidence 403 Bars Admissibility of This Evidence Because the Marginal Probative Value of the Evidence—and There Is None—Is Substantially Outweighed by the Dangers of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time</u>

Evidence and arguments concerning the ethics and morality of Plaintiffs' investments in life insurance are highly prejudicial to Plaintiffs.  Indeed, the manner in which John Hancock posed questions on these topics during its depositions suggests that its sole motive in presenting evidence of Plaintiffs' procurement of the Policies in the secondary and tertiary markets is to prejudice the

jury into believing that Plaintiffs are immoral or have done something wrong in investing in life settlements. Worse yet, John Hancock appears intent on trying to stoke the flames of xenophobia by explicitly calling out the fact that two of the Plaintiffs, EFG and EAA, are European companies whose Policies insure the lives of U.S. citizens.

Putting aside that John Hancock's characterization of the life settlement industry is false, it is also the type of evidence Rule 403 is intended to guard against. John Hancock apparently intends to lead the jury to impermissibly considering Plaintiffs' ethics and morality in evaluating the merits of Plaintiffs' claims. The danger of unfair prejudice substantially outweighs the evidence's probative value (which is none), and should be barred under Federal Rule of Evidence 403. As *Old Chief* explains, "unfair prejudice" "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one." *Old Chief*, 519 U.S. at 180. John Hancock's questions that ask for personal insights on whether Plaintiffs profit from COVID-19 deaths or are Germans profiting off the lives of U.S. senior citizens, for example, fall squarely within that definition. And, as explained above, that question does not assist the jury in resolving any of the claims and defenses at issue.

The consequence of permitting these questions is clear: it will unfairly prejudice the jury against Plaintiffs. John Hancock should not be permitted to disparage Plaintiffs for investing in life insurance policies. The Federal Rules contemplate this very danger and forbid it under Federal Rule of Evidence 403.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* and enter an order excluding evidence and argument concerning Plaintiffs' ethics and morality, and the ethics

and morality of investing in life insurance, and grant such other and further relief as the Court

deems just and proper under the circumstances.

Dated: January 27, 2023                    ORRICK, HERRINGTON & SUTCLIFFE LLP

                                           By: _____
                                                      KHAI LEQUANG

                                           Attorneys for Plaintiffs
                                           VICOF II TRUST; VIDA LONGEVITY
                                           FUND, LP; LIFE ASSETS TRUST II S.A.
                                           DELAWARE TRUST; VIDAQUANT SUB-
                                           FUND DELAWARE TRUST; VIDA
                                           INSURANCE FUND II SERIES INTERESTS
                                           OF THE SALI MULTI-SERIES FUND, LP;
                                           EFG BANK AG, CAYMAN BRANCH;
                                           WELLS FARGO BANK, NATIONAL
                                           ASSOCIATION, as securities intermediary for
                                           VICOF II TRUST, VIDA LONGEVITY
                                           FUND, LP, LIFE ASSETS TRUST II S.A.
                                           DELAWARE TRUST, VIDAQUANT SUB-
                                           FUND DELAWARE TRUST, VIDA
                                           INSURANCE FUND II SERIES INTERESTS
                                           OF THE SALI MULTI-SERIES FUND, LP,
                                           AND EFG BANK AG, CAYMAN BRANCH;
                                           DLP MASTER TRUST; DLP MASTER
                                           TRUST II; GWG DLP MASTER TRUST; LIFE
                                           FUNDING TRUST; PF PARTICIPATION
                                           FUNDING TRUST; AND PALM BEACH
                                           SETTLEMENT COMPANY