# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>                    Plaintiffs,<br><br>    v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br>                    Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br><br>                    Plaintiffs,<br><br>    v.<br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>                    Defendant. | |

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

                                  Plaintiffs,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                                  Defendant.

## DEFENDANTS' MEMORANDUM OF LAW ISO MOTION *IN LIMINE* NO. 6 TO PRECLUDE CERTAIN EVIDENCE OR ARGUMENTS FROM OR CONCERNING PLAINTIFFS' ACTUARIAL EXPERT, LARRY STERN

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "Defendants" or "John Hancock") respectfully move this Court for an order *in limine* excluding from trial evidence and argument from or concerning Plaintiffs' actuarial expert, Larry Stern ("Stern"), regarding: (i) extraneous background factual recitations and improper inferences; (ii) improper opinions that seek to usurp the role of the jury and are not helpful to the trier of fact in understanding evidence or determining a fact in issue; and (iii) forecasted opinions not expressly disclosed in Stern's report.[1] Such testimony is not the proper subject of expert opinion. Accordingly, the Court should exclude such evidence or arguments pursuant to Federal Rule of Evidence 702.[2]

---

[1] John Hancock has separately addressed in its Motions *in Limine* Nos. 1, 2, 3, and 4 certain evidence that should be excluded from trial, which would include certain forecasted testimony by Stern. This Motion *in Limine* is directed to forecasted Stern testimony that is not the proper subject of expert opinion under Federal Rule of Evidence 702 or that was not properly disclosed under Federal Rule of Civil Procedure 26.

[2] Also submitted herewith is the Declaration of Matthew T. Martens in Support of John Hancock's Motions in Limine Nos. 1-11, which attaches all exhibits cited in John Hancock's 11 motions in limine. The exhibits cited herein are cited as "Ex. []."

## BACKGROUND

On February 24, 2022, Stern submitted a 103-page single-spaced report ("Stern's Report), purportedly to "analyze, evaluate, and render [his] opinions concerning" the increase in cost of insurance or "COI" rates on certain Performance UL products announced by John Hancock in May 2018 (the "COI Redetermination") and "related issues." Ex. P, Expert Report of Larry N. Stern ("Stern Report") at 1.

Seemingly under the auspices of "related issues," the "background" section of Stern's Report, which spans 60 single-spaced pages, contains a purported "factual" recitation of matters that, as addressed separately in John Hancock's subject matter-focused Motions *in Limine* Nos. 1, 2, 3, and 4, neither has any bearing on the issues to be tried, nor informs any of Stern's relevant opinions. For example, Stern includes separate discussion of illustrations, reinsurance, the New York Department of Financial Services ("NYDFS"), correspondence between John Hancock and the NYDFS, certain regulatory requirements, marketing of the Performance UL policies, the design and pricing of the Performance UL products, the Original Pricing Assumptions used for the Performance UL products, the acquisition of John Hancock by Manulife, and the engagement by John Hancock of certain management consultants and recommendations by the management consultants. Ex. P, Stern Report at 4-64.

Not only is this factual recitation irrelevant, but it is riddled with Stern's own factual inferences and conclusions that are neither supported by the factual record or the documents that he cites nor the proper subject of expert opinion testimony. For example, Stern asserts that Faisel Gulamhussein—one of the actuaries with primary responsibility for the COI Redetermination—testified that John Hancock "selected Performance UL policies for the" COI Redetermination because "John Hancock observed 'lapse losses' (*i.e.*, too few policies lapsing) for the Performance UL policies." Ex. P, Stern Report at 42. Stern, however, flagrantly misstates Mr. Gulamhussein's testimony, which is almost the exact

3

opposite of what Stern purports it to be. *See* Ex. S, Faisel Gulamhussein 30(b)(6) Dep. Tr. (Nov. 9, 2021) at 74:4-21 ("[T]he Performance UL product series had additional analysis completed on it. ***It was not selected at that point in time to have rate increases***" (emphasis added)); *id*. at 79:12-16 ("The readjustment was driven by a change in our future expectations.  It was a prospective readjustment, so ***there was no consideration of a loss that happened in the past*** that would make its way into the readjustment" (emphasis added)).[3]  Stern also baselessly (and incorrectly) presumes that there was some connection between John Hancock engaging a management consultant in the ordinary course of its business and the COI Redetermination.  *See, e.g.*, Ex. P, Stern Report at 40 (asserting that Boston Consulting Group was retained to "improve the financial performance" and inferring that the COI Redetermination was an outgrowth of this engagement).  Stern's speculation, however, is explicitly belied by the testimony of John Hancock actuaries involved in the engagement.  Ex. R, Tony Teta Dep. Tr. (Oct. 29, 2020) at 383:22-384:11 (Mr. Teta testifying that he "do[es] n[o]t believe [the COI Redetermination] originated out of this BCG engagement").

      Similarly, Stern asserts that John Hancock ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and that these Experience Study Standards should purportedly "be used to develop new assumptions *only* 'where the analysis suggests a significant and permanent shift in the emerging experience.'" Ex. P, Stern Report at 44-45 (emphasis added).  But Stern's selective reading of, and improper inferences from, the Experience Study Standards is belied by the Experience Study Standards themselves and testimony by John Hancock's actuaries with responsibility for implementing them.  For example, the Experience Study Standards explicitly refer to the development of new assumptions where

---

[3]   *See also* Ex. S, Faisel Gulamhussein 30(b)(6) Dep. Tr. (Nov. 9, 2021) at 100:4-17 ("The readjustment was due to a prospective view of the change in future experience.  The lapse losses themselves would have been historical at that point in time so that wouldn't have been a driver of the rate increase happening").

4

███████████████████████████████████████████████████████████████—not, as Stern contends, *only* where the analysis suggests a significant and permanent shift in the emerging experience.  See Ex. T, JH37LAR_0261982, p. 9.  Furthermore, P.J. Beltramini—the actuary at John Hancock who previously headed John Hancock's Experience Studies department—testified that "[t]here could be *many* situations where a study would result in a new assumption."  See Ex. U, P.J. Beltramini Dep. Tr. (Oct. 26, 2021) at 15:8-14; *see also* Ex. V, P.J. Beltramini Dep. Tr. (Oct. 27, 2021) at 227:24-228:6 ("Given the unique factors and many of the different experience studies that we conduct, it is very challenging to provide as strict a set of guidelines as [Plaintiffs] are suggesting").[4]

Stern's Report also includes, under the guise of expert opinions, various opinions that are unequivocally not the proper subjects of expert opinion (the "Improper Opinions") because they do not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  For example, Stern opines that the COI Redetermination "violated Plaintiffs' policies," Ex. P, Stern Report at 64, was "not based on changes to John Hancock's expectations" of future experience, *id*. at 64-65, and "unfairly discriminated among policyholders of a given class," *id*. at 89-90.  The Improper Opinions are thinly veiled efforts to improperly interpret legal terms and usurp the role of the jury to determine whether John Hancock breached the Performance UL policies, and accordingly are not the proper subject of expert testimony.[5]

Finally, without actually stating any opinion and the bases for his opinions, Stern's Report asserts that, if asked, he will be prepared to testify at trial with opinions not disclosed in Stern's Report.  For example, Mr. Stern asserts in his Report that, "if asked to do so, I will be prepared to testify at trial

---

[4] *See also* Ex. P, Stern Report at 64-65 (noting that "the expectations used to establish the pre-increased COI rates and the ones at the time of the rate increases must be *reasonable* and *based on the insurance company's experience*," but providing no support for the proposition, which is explicitly undermined by the policy form language, which makes reference to neither "reasonable" expectations nor "the insurance company's experience" (emphasis added)).

[5] For the Court's reference, Ex. P is a copy of the Stern expert report with red highlights showing the general categories of forecasted evidence, opinions, and arguments John Hancock seeks to exclude via this Motion *in Limine*.

about JH11 and JH14, including John Hancock's development of the assumptions, John Hancock's experience considered or not considered in developing the assumptions, and the assumptions themselves." *Id*. at 44.  However, Stern's Report nowhere discloses what his opinions are or would be regarding those matters, or the bases for those opinions.

## ARGUMENT

The Federal Rules of Evidence, and in particular Rule 702, "place appropriate limits on the admissibility of" expert testimony by assigning judges the gatekeeping role of "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Down Pharm.*, 509 U.S. 579, 579-80 (1993).  The district court has "broad discretion to carry out this gatekeeping function" which "is necessarily a 'flexible one.'" *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 658 (2d Cir. 2016).  Federal Rule of Civil Procedure 26 also requires a disclosure of expert witnesses "accompanied by a written report" that must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  Where a party fails to disclose such expert opinions as required under Rule 26, "the party is not allowed to use that information or witness to supply evidence . . . at a trial."  Fed. R. Civ. P. 37(c)(1).

### I. Stern's Factual Assertions, Factual Inferences, and Factual Conclusions ("Background Section Matters") Should Be Excluded

Rule 702 dictates that an expert may only testify in the form of an ***opinion*** if: the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; "the testimony is the product of reliable principles and methods"; and the "expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  Where, as here, Plaintiffs seek to introduce under the guise of expert testimony throngs of extraneous and irrelevant facts, including facts inferred from the record by the expert, such testimony is undeniably not "help[ful to] the trier of fact." *Id*.  Courts in this circuit have repeatedly held that

6

"[n]o proposed expert will be allowed to act as a vehicle for lengthy factual narrative." *Island Intell. Prop. LLC v. Deutsche Bank AG,* 2012 WL 526722, at *2 (S.D.N.Y. Feb. 14, 2012); *see also United States v. Castelle*, 836 F. App'x 43, 45 (2d Cir. 2020) ("Expert testimony should not merely summarize the case's facts"). But, as evidenced by the Background Section Matters in the 60-page background section of Stern's Report, that is precisely what Plaintiffs seek to do with Stern's testimony.

The Background Section Matters are rife with discussions about which Stern has no personal knowledge, but which Plaintiffs nevertheless seek to inject through Stern's testimony—*e.g.*, recitations regarding back-and-forth discussions between John Hancock and the NYDFS and the NYDFS's intentions, John Hancock's marketing of the Performance UL products, and John Hancock's engagement of certain management consultants. Aside from being irrelevant, such matters are neither helpful to the jury nor proper subjects of expert testimony. *See Island Intell. Prop. LLC*, 2012 WL 526722, at *2 ("An expert may offer opinions that will help the jury understand the evidence or determine factual issues. He may not, however, directly transmit facts to the jury, about which he has no personal knowledge, simply because his testimony represents the easiest way to do that.").[6] This is particularly so where, as here, the irrelevant factual recitations are riddled with inaccuracies or draw improper inferences contradicted by the factual record. *See supra* at pp.3-4 (describing Stern's improper and inaccurate inferences and blatant mischaracterization of deposition testimony).

Accordingly, the Court should exclude from trial any testimony by Stern regarding the extraneous Background Section Matters pursuant to Federal Rule of Evidence 702.

## II. Stern's Improper Opinions Are Not Permissible Expert Testimony

It is "axiomatic that an expert is not permitted to . . . interpret legal terms." *In re AXA Equitable Life Ins. Co. COI Litig.*, 595 F. Supp. 3d 196, 255 (S.D.N.Y. 2022) (citation omitted); *see also Scott v.*

---

[6] *See also Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187-88 (S.D.N.Y. 2008) ("[A]n expert's factual narrative is unnecessary" particularly where the expert "has no personal knowledge of the underlying facts" and a jury is "capable of understanding and deciding the[] issues without an expert's opinion").

7

*Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 48 (S.D.N.Y. 2016) ("[C]ourts exclude expert testimony that . . . interpret[s] legal terms; those roles fall solely within the province of the court" (internal quotations omitted)). Expert opinions are also improper under Rule 702 where the expert seeks to usurp the role of the jury by "applying th[e] law to the facts before it." *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible . . . although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts").

It is beyond dispute that certain of Stern's opinions (and forecasted testimony) reflect thinly veiled attempts by Stern to interpret the terms of the relevant policy form language and substitute his judgment for the jury's by applying facts to reach legal conclusion. For example, Stern opines that the COI Redetermination, "from an actuarial perspective, violated Plaintiffs' Policies" and that "based on my actuarial knowledge and experience" the COI Redetermination was purportedly "not based on changes to John Hancock's expectations of the future cost factors enumerated in Plaintiffs' Policies." Ex. P, Stern Report at 64-65. But adding the phrases "from an actuarial perspective" or "based on my actuarial knowledge and experience" does not alter the fact that these "opinions" reflect improper expert interpretation of legal terms and application of the facts to the law to opine on the ultimate issue in the case.

Stern also offers an opinion that the COI Redetermination was discriminatory. Ex. P, Stern Report at 84-91. While Stern acknowledges that the non-discrimination requirement is explicitly documented in Plaintiffs' policy forms—indeed, it is the unambiguous contractual language that governs all of Plaintiffs' claims—he proceeds to then interpret that language and graft onto it a concept ("Policy Class") that is found nowhere in the relevant policy form language.[7] This again is precisely

---

[7] As relevant here, the pertinent language in the two at-issue policy forms states either (i) "[a]ny change in the Applied Monthly Rates . . . will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including

the type of improperly proffered "expert opinion" that invades the province of the jury and is thus not helpful to the factfinder. *See Bilzerian*, 926 F.2d at 1294; *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 179 (S.D.N.Y 2008) ("While the expert can make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts, nor can that testimony track the language of the statute or the law that the defendants are accused of violating"); *see also Scott*, 315 F.R.D. at 48.

Stern's Improper Opinions should be excluded from trial pursuant to Federal Rule of Evidence 702.

### III. Opinions Not Expressly Disclosed in Stern's Report Should Be Excluded

Rule 26 requires that expert opinions be "accompanied by a written report" that must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). To the extent an opinion or the basis for an opinion is not expressly disclosed in her or his report, Rule 37 expressly precludes the expert from providing that opinion at trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial"). Otherwise, Plaintiffs would be allowed to "sandbag" John Hancock by introducing myriad opinions from Stern that were not expressly disclosed in his expert report. *See Rodriguez v. Village of Port Chester*, 535 F. Supp. 3d 202, 209 (S.D.N.Y. 2021) (noting that the purpose of Rule 37(c)(1) is "to prevent the practice of 'sandbagging' an opposing party with new evidence" (citation omitted)); *cf id*. at 210 ("The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified, and that it was harmless" (citation omitted)).

---

smoker status, and whose policies have been in force for the same length of time"; or (ii) "[John Hancock] may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured. *See, e.g.*, Ex. E, DX C, JH_LEONARD_000011149 at -164 (03PERUL policy form); Ex. F, DX D, JH_LEONARD_000175087 at -109 (06PERFUL policy form). Neither policy form makes any reference to a "policy class."

9

Despite these clear proscriptions, Stern's Report asserts that, if asked, he will be prepared to testify at trial with opinions not disclosed in Stern's Report. For example, Mr. Stern asserts in his Report that, "if asked to do so, I will be prepared to testify at trial about JH11 and JH14, including John Hancock's development of the assumptions, John Hancock's experience considered or not considered in developing the assumptions, and the assumptions themselves." Ex. P, Stern Report at 84-91. Nowhere, however, does Stern's Report specify what those opinions are or would be, or the bases for those opinions. *Id*. Indeed, when asked about such undisclosed opinions, Stern acknowledged that he had not reviewed "in great detail" the JH11 and JH14 studies necessary to form opinions regarding them, and even offered that he did not at that time have opinions to offer regarding them.[8] It is thus indisputable that any opinions Stern has about JH11 and JH14 were not disclosed as required by Rule 26. To the extent Plaintiffs intend for Mr. Stern to provide any opinions regarding JH11, JH14, or any other opinions or bases for his opinions undisclosed in Stern's Report, the Court should exclude such opinions pursuant to Federal Rules of Civil Procedure 26 and 37.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court issue an order precluding from trial evidence and argument from or concerning Plaintiffs' actuarial expert, Larry Stern ("Stern"), regarding: (i) extraneous background factual information; (ii) improper opinions that seek to usurp the role of the jury and are not helpful to the trier of fact in understanding evidence or determining a fact in issue; (iii) opinions not expressly disclosed in Stern's Report.

Date: January 27, 2023

                                                                           /s/ Matthew T. Martens
                                                                           Matthew T. Martens

---

[8] *See* Ex. Q, Larry N. Stern Dep. Tr. (July 6, 2022) at 148:19-25 ("Q. Have you already looked into the assumptions, the experience[s] on which they were based and the methodologies John Hancock used to develop JH11 and JH14 in preparing your report? A. Not in great detail, no. Q. Do you have opinions to offer right now? A. No, I don't.").

10

WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

Robert K. Smith (*pro hac vice*)
Yavor Nechev (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109 USA
Tel.: (617) 526-6000
Fax: (617) 526-5000

John F. LaSalle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York*