IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>  Plaintiffs,<br><br>  v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br><br>  Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br><br>  Plaintiffs,<br><br>  v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | |

|  |
|---|
| Defendant. |
| EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,<br><br>           Plaintiffs,<br><br>     v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>           Defendant. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 4: TO EXCLUDE EVIDENCE REGARDING JOHN HANCOCK'S ALTERNATIVE DAMAGES THEORY AND HYPOTHETICAL ALTERNATIVE COI RATE INCREASES, AND TO EXCLUDE THE OPINIONS OF JOHN HANCOCK'S EXPERTS, TIMOTHY PFEIFER AND BRUCE DEAL, BASED ON SUCH EVIDENCE**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. LEGAL STANDARDS ..................................................................................................... 3

III. ARGUMENT ..................................................................................................................... 5

    A. John Hancock's Alternative Damages Theory Is Wrong as a Matter of Law and, Therefore, Irrelevant and Inadmissible Under Federal Rule of Evidence 402 ............................................................................................................ 5

    B. Evidence and Testimony Supporting John Hancock's "Alternative" Damages Theory Also Should Be Excluded Under Federal Rule of Evidence 403 ............................................................................................................ 8

    C. Mr. Pfeifer's and Mr. Deal's Opinions Relating to Hypothetical Alternative COI Rate Increases Also Are Inadmissible Under Federal Rules of Evidence 702 and 703 ............................................................................. 9

IV. CONCLUSION .................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Busher v. Barry*,
  No. 14-CV-4322 (NSR), 2019 WL 6895281 (S.D.N.Y. Dec. 18, 2019) .................................. 8

*Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
  No. 01 Civ. 3796, 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004) ............................................. 3

*DCD Partners, LLC v. Transamerica Life Ins. Co.*,
  817 F. App'x 307 (9th Cir. 2020) ....................................................................................... 5, 6

*Gonzalez v. Digital Equip. Corp.*,
  8 F. Supp. 2d 194 (E.D.N.Y. 1998) ........................................................................................ 4

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) .................................................................................... 3

*In re Lincoln Nat'l COI Litig.*,
  No. CV 16-6605, 2022 WL 4091220 (E.D. Pa. Aug. 9, 2022) ............................................... 6

*Luce v. United States*,
  469 U.S. 38 (1984) .................................................................................................................. 3

*Old Chief v. United States*,
  519 U.S. 172 .......................................................................................................................... 4

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996) .................................................................................................... 3

*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997) .................................................................................................. 4

**Statutes**

Cal. Civ. Code § 3300 .................................................................................................................. 6

**Other Authorities**

CACI No. 350 ........................................................................................................................... 2, 6

Fed. R. Evid. 401 ...................................................................................................................... 4, 8

Fed. R. Evid. 402 ................................................................................................................... 2, 5, 8

Fed. R. Evid. 403 ................................................................................................................... 3, 4, 8

Plaintiffs VICOF II Trust, Vida Longevity Fund, LP, Life Assets Trust II S.A. Delaware Trust, Vidaquant Sub-Fund Delaware Trust, and Vida Insurance Fund II Series Interests of the SALI Multi-Series Fund, LP (collectively, the "Vida Funds"); EFG Bank AG, Cayman Branch ("EFG"); Wells Fargo Bank, National Association ("Wells Fargo"), as securities intermediary for the Vida Funds and EFG (in such capacity, "Wells Fargo SI"); DLP Master Trust, DLP Master Trust II, GWG DLP Master Trust, Life Funding Trust, PF Participation Funding Trust, and Palm Beach Settlement Company (collectively, "EAA Plaintiffs," and together with Vida Funds, EFG, and Wells Fargo SI, "Plaintiffs") move the Court to enter an order *in limine* excluding evidence regarding Defendants John Hancock Life Insurance Company (U.S.A.)'s ("JHUSA") and John Hancock Life Insurance Company of New York's ("JHNY," and together with JHUSA, "John Hancock" or "Defendants") alternative damages theory and hypothetical alternative COI rate increases, and precluding John Hancock from arguing the same; excluding the opinions of John Hancock's experts, Timothy Pfeifer and Bruce Deal, based on such evidence; and grant such other and further relief as the Court deems just and proper under the circumstances.

I. **INTRODUCTION**

Plaintiffs filed this action to hold John Hancock accountable for the unjustified cost of insurance ("COI") rate increases (the "COI Rate Increases") it began imposing in 2018 on certain of Plaintiffs' Performance UL policies ("Policies"). Plaintiffs seek to recover the damages they have incurred because of the COI Rate Increases—i.e., the difference between the deductions and charges John Hancock took using the increased COI rates and the deductions and charges John Hancock would have taken using the original COI rates. For example, if for a policy John Hancock deducted and charged $1,000,000 using the increased COI rates, and would have taken $600,000 using the original COI rates, Plaintiffs' damages for that policy would be $400,000. This is

consistent with the law, which entitles Plaintiffs to recover money that will compensate Plaintiffs "for the harm caused by the breach." California Civil Jury Instructions (2022 ed.) ("CACI") No. 350 (Introduction to Contract Damages).

In an attempt to limit its liability, John Hancock intends to have its damages expert, Bruce Deal, instruct the jury on his own version of damages law. John Hancock intends to have Mr. Deal tell the jury that the proper calculation of damages for breach of contract is instead the difference between what John Hancock charged Plaintiffs using the increased COI rates and hypothetical alternative charges that John Hancock *could have* deducted had it implemented a hypothetical alternative COI rate increase that he or John Hancock's other experts would say would not have breached the contracts. In other words, Mr. Deal will have the jury calculating Plaintiffs' damages not based on John Hancock's conduct—the COI Rate Increases—that caused Plaintiffs' harm, but rather based on John Hancock's failure to do some alternative course of conduct (his hypothetical alternative COI rate increases). John Hancock also intends to offer testimony by its actuarial expert, Timothy Pfeifer, concerning hypothetical alternative rate increases Mr. Pfeifer speculates John Hancock *could have* implemented, which he says would have been in compliance with the Policies' requirements, which Mr. Deal uses to calculate his alternative damages.

John Hancock's argument, and Messrs. Deal's and Pfeifer's testimony, is fundamentally flawed because there is no authority to support John Hancock's position that a hypothetical alternative rate increase somehow excuses or mitigates the damages proximately caused by the actual COI Rate Increases. Indeed, the Ninth Circuit has already thoroughly considered and rejected this position. Accordingly, the hypothetical "alternative" COI charges Mr. Pfeifer determined (and speculates John Hancock could have implemented without violating the Policies), and Mr. Deal's damages calculations using those hypothetical alternative COI charges, are

irrelevant and should be excluded under Federal Rule of Evidence 402. Mr. Pfeifer's and Mr. Deal's opinions concerning the hypothetical alternative COI rate increases also are speculative, unreliable, confusing, misleading, and unfairly prejudicial and, therefore, also are inadmissible under Federal Rules of Evidence 702 and 703. In addition, Mr. Deal's opinions concerning the proper measure of damages are legal opinions or conclusions that are inadmissible under Federal Rule of Evidence 702.

To the extent such evidence has any marginal probative value—and it has none—it is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Plaintiffs vigorously dispute John Hancock's argument that it could have implemented some alternative rate increase that would not breach Plaintiffs' Policies. Plaintiffs' position is that John Hancock could not raise rates on Plaintiffs' Policies by any amount given, among other things, the way John Hancock originally priced them. There should not be a mini-trial evaluating whether something John Hancock did not even do is itself a breach, and whether this hypothetical breach would have produced some different amount of damages. Thus, this evidence and argument also should be excluded under Federal Rule of Evidence 403.

## II. LEGAL STANDARDS

Federal district courts have the inherent authority to rule on motions *in limine* to manage the course of trials. *See Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984)). Motions *in limine* "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain

forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Id.* (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

In deciding motions *in limine*, courts may exclude clearly irrelevant and inadmissible evidence. *Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 Civ. 3796, 2004 WL 1970144, at *5-6 (S.D.N.Y. Sept. 3, 2004). Evidence is relevant where it makes a fact that is of consequence to determining the action more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Relevant evidence may also be excluded if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. "'Unfair prejudice' [under Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 151 (2d Cir. 1997). The trial court's balancing of prejudice against probative value is afforded "broad discretion . . . since so much depends upon critical perceptions of the jury's reaction to day-to-day dynamics of a trial not evident from the printed record." *Gonzalez v. Digital Equip. Corp.*, 8 F. Supp. 2d 194, 198 (E.D.N.Y. 1998).

Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" if the following four conditions are met: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Under Federal Rule of Evidence 703, an expert may disclose to the jury an opinion based on facts or data that "would otherwise be inadmissible" "only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

### III. ARGUMENT

#### A. John Hancock's Alternative Damages Theory Is Wrong as a Matter of Law and, Therefore, Irrelevant and Inadmissible Under Federal Rule of Evidence 402

John Hancock seeks to introduce speculative, irrelevant evidence regarding "alternative" COI rate increases that John Hancock alleges it could have made, but did not make, to avoid having to pay Plaintiffs for all the damages it caused them. This evidence has two components. First, Mr. Pfeifer came up with hypothetical alternative COI rate increases based on assumptions John Hancock did not use and methodologies John Hancock did not follow, which he speculates John Hancock *could* have made in compliance with the contracts. *See, e.g.*, LeQuang Decl. Ex. 37 at 174-179, 182-191. Second, Mr. Deal used Mr. Pfeifer's hypothetical alternative COI rate increases to calculate what he says Plaintiffs' damages would have been in an alternative universe where John Hancock implemented those hypothetical alternative rate increases instead of the COI Rate Increases it actually implemented. *See, e.g., id.* Ex. 38 at 25-37. Mr. Deal premises his calculations on his erroneous contention that "a properly constructed damages estimation should compare the COI charges deducted in the actual world to a realistic estimate of what alternative COI charges John Hancock *could have* deducted consistent with contract provisions." *Id.* ¶ 32 (emphasis added).

The law, not Mr. Deal, dictates how to calculate damages. And Mr. Deal's proposition is contrary to law. Indeed, the Ninth Circuit rejected this very same proposition in *DCD Partners, LLC v. Transamerica Life Ins. Co.*, 817 F. App'x 307, 309 (9th Cir. 2020). In *DCD*, as here, policyholders (DCD) sued an insurance company, Transamerica, claiming COI rate increases

-5-

Case 1:19-cv-11093-AKH   Document 275   Filed 01/27/23   Page 10 of 14

Transamerica imposed on their policies were improper. *See DCD Partners, LLC v. Transamerica Life Ins. Co.*, 2018 WL 3770030, at *1 (C.D. Cal. Aug. 1, 2018). DCD claimed damages in the amount of the difference in the premiums DCD paid using the increased COI rates and the premiums DCD would have paid using the original, pre-increase COI rates. *Id.* at *11. Transamerica argued that DCD had failed to proffer sufficient evidence for the jury to find causation and damages resulting from Transamerica's COI rate increases because DCD did not "show that damages resulted from the failure to use an alternative analysis to set rates." *DCD*, 817 F. App'x at 309. The trial court rejected Transamerica's argument, finding that "the rate ***increase*** itself constitutes the breach" and "directly caused DCD to pay additional premiums." *DCD*, 2018 WL 3770030, at *12-13 (emphasis in original). The Ninth Circuit affirmed the trial court's ruling on appeal. As the Ninth Circuit explained, "the breach was not the failure to use an alternative analysis—it was Transamerica's impermissible rate increase," which "directly caused DCD's damages." *DCD*, 817 F. App'x at 309. Accordingly, DCD presented sufficient evidence of damages based on the "additional premiums paid by DCD as a result of the increase," *id.*, which is what Plaintiffs seek to recover here (more precisely, Plaintiffs seek to recover the excess deductions and charges taken by John Hancock). *See id.* (relying on Cal. Civ. Code § 3300, which provides that the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."); *see also In re Lincoln Nat'l COI Litig.*, No. CV 16-6605, 2022 WL 4091220, at *11 (E.D. Pa. Aug. 9, 2022) (citing *DCD* in support of finding that a damages methodology that uses the pre-increased COI rates as the but-for world is "appropriate"). The Ninth Circuit's reasoning is consistent with CACI No. 350, which instructs that a plaintiff's damages for breach of contract is "how much money will reasonably compensate

-6-

[the plaintiff] for ***the harm caused by the breach***." CACI No. 350 (emphasis added). Numerous courts have reached the same conclusion in the context of plaintiffs suing life insurance companies due to COI rate increases. *See, e.g.*, *Feller v. Transamerica Life Ins. Co.*, 2017 WL 6496803, at *13 (C.D. Cal. Dec. 11, 2017) ("Contrary to Transamerica's assertion, damages will not need to be calculated based on a more complex methodology demonstrating how Transamerica should have conducted its [COI] increases in order to avoid recouping past losses."); *Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 381 (S.D.N.Y. 2019) (internal citations omitted) ("Hanks is not asking the Court to adjudicate what an appropriate COI rate increase would have been or to impose injunctive relief specifying lawful COI rate calculations; she is claiming that the COI rate increase imposed on June 1, 2016 was a breach of contract causing damages classwide. Any future COI rate increase that Lincoln Life or VOYA seek to impose is immaterial to the current litigation."); *In re AXA Equitable Life Ins. Co. COI Litigation*, 595 F. Supp. 3d 196, 228 (S.D.N.Y. 2022), on reconsideration in part, No. 16-CV-740 (JMF), 2022 WL 3018104 (S.D.N.Y. July 29, 2022) ("the Court concludes that Plaintiffs have satisfied their burden to set forth a stable foundation for a reasonable estimate of their damages from AXA's alleged breach – namely, the total amount of the COI Increase that they were charged."). Here, as in *DCD*, *Lincoln*, *Feller*, *Hanks*, and *AXA*, it was the insurance company's (i.e., John Hancock's) ***conduct*** that caused the harm—specifically, the COI Rate Increases—***not*** the insurance company's failure to do some alternative conduct.

Plaintiffs are not aware of any authority for the proposition that the proper measure of damages in the context of a COI rate increase is the difference between the actual COI charges and an "alternative" COI increase that never took place and John Hancock's experts hypothesize about. LeQuang Decl. Ex. 38 ¶ 32. Likewise, Plaintiffs are not aware of any case law supporting John

Hancock's position that a hypothetical alternative rate increase that never occurred somehow excuses or mitigates the damages proximately caused by John Hancock's actual breach. For example, the Policies do not provide that a violation of the cost of insurance rate provisions will be excused or cured if an alternative increase is implemented years later (or according to John Hancock's theory, could have been implemented) that complied with the contractual requirements. Hypothetical, alternative increases (that themselves must be evaluated if they occurred) have no bearing on the damages Plaintiffs are entitled to recover if they prevail on their claims. Permitting insurance companies to reduce their liability for impermissible rate increases by coming up with fictitious "alternative" rate increases would only encourage and incentivize insurance companies to try to get away with as much as they can. It is not Plaintiffs' job to validate or invalidate hypothetical rate increases that John Hancock did not implement.

Because John Hancock's "alternative damages theory" is contrary to law, it should be excluded as irrelevant under Federal Rule of Evidence 402. Evidence and testimony regarding this alternative damages theory does not meet the relevance threshold defined by Federal Rule of Evidence 401 because it has no bearing on any facts relevant to the current claims or defenses. *See* Fed. R. Evid. 401; *see, e.g.*, *Busher v. Barry*, No. 14-CV-4322 (NSR), 2019 WL 6895281, at *13 (S.D.N.Y. Dec. 18, 2019) (Román, J.) (excluding evidence contrary to law).

    **B.**    **Evidence and Testimony Supporting John Hancock's "Alternative" Damages Theory Also Should Be Excluded Under Federal Rule of Evidence 403**

Any testimony about a hypothetical, unspecified COI increase that John Hancock claims would not have breached the Policies would pose a substantial risk of confusing the issues and misleading the jury as to the proper measure of damages and should also be excluded under Federal Rule of Evidence 403. *See* Fed. R. Evid. 403. If allowed, this evidence and argument also will amount to a massive waste of time. It would inject into the trial about the COI Rate Increases—

which are complex enough in their own right—an entirely different COI rate increase, essentially transforming the trial into a trial about two different COI rate increases instead of the one that John Hancock actually implemented. Indeed, Plaintiffs believe that if John Hancock is not permitted to argue its alternative damages theory, the parties can stipulate to the amount of damages and remove the need for the parties to call experts to testify on the subject of damages at all.

### C. Mr. Pfeifer's and Mr. Deal's Opinions Relating to Hypothetical Alternative COI Rate Increases Also Are Inadmissible Under Federal Rules of Evidence 702 and 703

For many of the same reasons discussed above, Mr. Pfeifer's and Mr. Deal's opinions relating to any hypothetical alternative COI rate increases also are inadmissible under Federal Rules of Evidence 702 and 703. Their hypothetical alternative COI rate increases are speculative and unreliable. Mr. Deal's opinions also are improper under Federal Rule of 702 in so far as he is instructing the jury on damages law and what the proper measure of damages are under the law. The Court, not Mr. Deal, will instruct the jury on the law.

## IV. CONCLUSION

For all the reasons stated above, Plaintiffs respectfully request that the Court enter an order *in limine* excluding evidence regarding John Hancock's alternative damages theory and hypothetical alternative COI rate increases, and precluding John Hancock from arguing the same; excluding Mr. Pfeifer's and Mr. Deal's opinions based on such evidence; and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: January 27, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Khai LeQuang

KHAI LEQUANG

Attorneys for Plaintiffs
VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUB-FUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; EFG BANK AG, CAYMAN BRANCH; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUB-FUND DELAWARE TRUST, VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP, AND EFG BANK AG, CAYMAN BRANCH; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST; LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; AND PALM BEACH SETTLEMENT COMPANY