IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>                      Plaintiffs,<br>  v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br>                      Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br>                      Plaintiffs,<br>  v.<br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br>                      Defendant. | |

EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,

                        Plaintiffs,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),

                        Defendant.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* NO. 11 TO PRECLUDE EVIDENCE AND ARGUMENT REGARDING SETTLEMENT NEGOTIATIONS AND UNRELATED SETTLEMENTS

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "Defendants" or "John Hancock") respectfully move this Court for an order *in limine* precluding Plaintiffs from offering any evidence or argument regarding settlement negotiations or settlements reached in connection with any dispute or potential dispute between John Hancock and owners of its life insurance policies.

Under Rule 408 of the Federal Rules of Evidence, compromises and compromise negotiations are categorically inadmissible to prove a party's liability. *See* Fed. R. Evid 408. The rule applies equally whether the settlement involves the litigants themselves or a litigant and a third party. *See, e.g., Crigger v. Fahnestock & Co.*, 2005 WL 857368, at *1 (S.D.N.Y. Apr. 14, 2005); *Sun Oil Co. v. Govostes*, 474 F.2d 1048, 1049 (2d Cir. 1973). Despite the clear prohibition under the Federal Rules, among the more than 4,900 exhibits that still remain on Plaintiffs' Fifth Amended Exhibit List, Plaintiffs intend to introduce evidence regarding settlement negotiations between John Hancock and

other entities. *See* Ex. B, Plaintiffs' Fifth Amended Exhibit List. In addition to the prohibition under Rule 408, these exhibits are also irrelevant. Settlements and settlement negotiations with different entities prove nothing regarding the claims in this case and would only unfairly prejudice John Hancock. Accordingly, such evidence and argument must be excluded pursuant to Federal Rules of Evidence 401, 402, 403, and 408.[1]

## BACKGROUND

As the Court is aware, this is a breach of contract case about policies issued on two specific policy forms to a specific group of Plaintiffs. Plaintiffs claim that John Hancock breached the unambiguous terms of certain Performance UL policies by increasing cost of insurance or "COI" rates ("COI Redetermination") allegedly in an unfairly discriminatory manner and based on considerations other than the expectations of future experience specified in the contracts. *See* Plaintiffs' Second Amended and Consolidated Complaint ("Compl.") (Dkt. 179) at ¶¶ 4, 51. The policy provisions that Plaintiffs assert that John Hancock breached appear in two policy forms on which the Performance UL Products were issued.[2] The 03PERUL policy form states, in relevant part:

> The Applied Monthly Rates will be **based on *our* expectations of future investment earnings, persistency, mortality, expense and reinsurance costs and future tax, reserve and capital requirements** …. Any change in the Applied Monthly Rates for the Basic Sum Insured or for the Additional Sum Insured will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force for the same length of time.

*See* Ex. E, DX C, JH_LEONARD_000011149 at -164 (emphasis added). The 06PERFUL policy form states, in relevant part:

---

[1] Also submitted herewith is the Declaration of Matthew T. Martens in Support of John Hancock's Motions *in Limine* Nos. 1-11, which attaches all exhibits cited in John Hancock's 11 motions *in limine*. The exhibits cited herein are cited as "Ex. []."

[2] One of the relevant policy forms refers to "Applied Monthly Rates" whereas the other relevant policy form refers to "Cost of Insurance Rates." For ease of reference and simplicity, John Hancock will refer herein to both as "COI rates."

3

> The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and will be **based on _our_ expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions** …. We review our Cost of Insurance rates from time to time, and may re-determine Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured.

See Ex. F, DX D, JH_LEONARD_000175087 at -109 (emphasis added). As Plaintiffs' counsel has previously admitted, Plaintiffs' additional implied covenant of good faith and fair dealing and conversion claims rise and fall on John Hancock's compliance with the above contractual provisions. See Ex. G, July 21, 2022 Hr'g Tr. at 6:25-7:3 (Plaintiffs' counsel acknowledging all claims in the case are derivative of the breach of contract claim, stating it is "likely" that if Plaintiffs "[lose] on the breach of contract, [they] lo[]se everything").

As this Court is aware, different groups of plaintiffs have brought litigation related to John Hancock's cost of insurance rate increases on its Performance UL products, most of which have been settled. Specifically, John Hancock settled a class action with a group of plaintiffs for claims arising out of the exact same increase in COI rates at issue in this Action. *See Leonard as Tr. of Poplawski 2008 Ins. Tr. v. John Hancock Life Ins. Co. of New York,* No. 18-cv-04994 (S.D.N.Y. May 17, 2022), ECF No. 221 ("COI Class Action"). John Hancock has also settled several opt-out cases arising out of the exact same increase in COI rates at issue in this Action ("Opt-Out Actions").

John Hancock has also been involved in litigation concerning COI rates charged for other of its life insurance products, which litigation has also settled. *See 37 Besen Parkway, LLC v. John Hancock Life Ins. Co. (U.S.A.),* 2019 WL 6521515 (S.D.N.Y. Mar. 29, 2019) ("*37 Besen Parkway* Action"). These settlements were the subject of news coverage in the press.

Finally, John Hancock on occasion is approached by ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ about the settlement of

4

potential claims for fraud or other unlawful conduct that John Hancock has against those policyholders (or that those policyholders purport to have against John Hancock). Ex. EE, Naveed Irshad Depo. Tr. (Oct. 23, 2022) 175:3-13 ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████ *See, e.g.*, Ex. EE, Naveed Irshad Depo. Tr. (Oct. 23, 2022) 179:9-23 ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████ "Commuting" a policy involves the insurer making a lumpsum payment to the owner of a life insurance policy to discharge the insurers obligations under the life insurance policy.

Although Rule 408 clearly states that evidence of settlements or settlement negotiations are inadmissible, Plaintiffs have not excluded the possibility that they may introduce evidence or argument regarding settlements related to the increase in COI rates at issue in this Action, and have made clear their intent to introduce:

1. A blog post announcing the settlement in the *37 Besen Parkway* Action.[3]

2. Communications and internal presentations regarding commutations of insurance policies as part of potential settlements with policyholders.[4]

None of this evidence is admissible and whatever relevance it may have is far outweighed by its prejudicial effect.

---

[3] *See* Ex. FF, PTX10144, *37 Besen Parkway* Action Blog Post.

[4] *See, e.g.*, PTX10413, PTX10424, PTX10477, PTX10510.

## ARGUMENT

While Rule 408 is most often invoked to exclude offers of settlement between the parties to a case, the Rule's prohibition against the introduction of completed settlements between a party and third parties is equally clear. *See* Fed. Rule of Evid. 408, advisory committee note ("While the rule is ordinarily phrased in terms of offers of compromise, it is apparent that a similar attitude must be taken with respect to completed compromises when offered against a party thereto. The latter situation will not, of course, ordinarily occur except when a party to the present litigation has compromised with a third person."). Evidence regarding settlements and settlement negotiations between John Hancock and other entities is just such evidence. It should be excluded.

### I. Evidence Or Argument Regarding Settlements Related To The COI Redetermination At Issue In This Action Must Be Excluded

Any settlement related to the increase in COI rates at issue in this Action is inadmissible under Rule 408 and highly prejudicial.

As an initial matter, any evidence regarding the settlement of the COI Class Action and Opt-Out Actions is categorically inadmissible to prove liability. *See Sun Oil Co. v. Govostes*, 474 F.2d 1048, 1049 (2d Cir. 1973) ("Settlements are not to be used to establish liability against a party in other suits arising out of the same occurrence."). That is because "[s]ettlements have always been looked on with favor, and courts have deemed it against public policy to subject a person who has compromised a claim to the hazard of having a settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction." *See Hawthorne v. Eckerson Co.*, 77 F.2d 844, 847 (2d Cir. 1935).

Moreover, the settlements—even if admissible for a purpose other than proving liability—are plainly prejudicial given that the jury may inaccurately infer that John Hancock has acknowledged wrongdoing when it has not. *See, e.g., Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d

173, 199 (S.D.N.Y. 2008) ("[U]nder Rule 403, any probative value that the settlement agreement might have is far outweighed by the significant risk of unfair prejudice. There is a significant risk that the jury would infer from the settlement agreement that GRS or Rauch were the wrongdoers and consider that in determining the Schneiders' liability."); *Moore v. Rubin*, 2020 WL 13573582, at *1 (E.D.N.Y. Jan. 31, 2020) (explaining that "[p]arties settle litigation for many reasons unrelated to liability; it is not always an admission of guilt" and excluding evidence of settlements with other plaintiffs because "[b]esides interjecting unfair prejudice into the case, the admission of prior settlement information between . . . will confuse the issues and waste time").

## II. Evidence And Argument Regarding The Settlement Of The *37 Besen Parkway* Action Must Be Excluded

The blog post discussing—and any other evidence or argument regarding—the settlement in the *37 Besen Parkway* Action is inadmissible, irrelevant, and prejudicial.

*First*, the blog post serves only to summarize the existence of the settlement in the *37 Besen Parkway* Action, *see* Ex. FF, PTX10144, *37 Besen Parkway* Action Blog Post, the admission of which to prove liability is plainly precluded by Rule 408, *see Sun Oil Co*, 474 F.2d at 1049.

*Second*, the *37 Besen Parkway* Action settlement is plainly irrelevant. The *37 Besen Parkway* Action did not concern ***any*** of the products at issue in this Action. *Compare* Complaint (asserting breach of 03PERUL and 06PERFUL policy forms in connection with a COI increase) *with 37 Besen Parkway* Action, Case No. 1:15-cv-09924 (ECF No. 6) (asserting claims in connection with other policy forms in connection with a COI decrease). As such, it has no relevance to Plaintiffs' claims in this Action. *See Liberty Mut. Fire Ins. Co. v. J.&S. Supply Corp.*, 2015 WL 13649824, at *8 (S.D.N.Y.

June 29, 2015) (holding the terms of an insurance policy not at issue "are not relevant in determining the parties' rights and obligations" under a separate policy); *see also* Motion in *Limine* No. 9.[5]

*Third*, the *37 Besen Parkway* Action settlement is highly prejudicial. Not only could the jury draw the false inference that John Hancock is a serial wrongdoer with respect to redetermining COI rates (which it is not), but it also discloses a specific settlement amount from which the jury may infer an ability to pay a substantial damages award. Courts regularly exclude settlement amounts from evidence because settlement amounts may bias the jury towards an increased award. *See, e.g., Crigger*, 2005 WL 857368, at *2 ("Once the jury learns of the settlement, disclosure of its amount serves no purpose and could result in additional speculation. If the amount is high, the jury might infer that the settling defendant bears more responsibility[.]"); *cf. Weinstein's Federal Evidence* § 408.04 (2d ed. 2005) ("Even if the fact of the settlement is admissible for a purpose other than proof of liability, disclosure of the settlement amount may constitute reversible error.").

## III. Evidence And Argument Regarding Settlement And Associated Policy Commutations With Entities Other Than Plaintiffs Must Be Excluded

John Hancock's internal discussions regarding potential settlements and associated policy commutations with entities other than Plaintiffs are inadmissible, irrelevant, and prejudicial.

*First*, to the extent they are offered to suggest that John Hancock has acknowledged wrongdoing, they are plainly inadmissible under Rule 408. John Hancock's policy commutations were in the context of settlement negotiations by which both John Hancock and the owners of its policies would release claims either party may have against the other. *See supra* at 4-5. As such, they are no different to

---

[5] To the extent Plaintiffs argue that the *37 Besen Parkway* Action—a COI *decrease* case, not a COI *increase* case—is relevant because it somehow shows the absence of a deterioration in John Hancock's expectations of experience, that argument is specious. Not only did the *37 Besen Parkway* Action not concern the products at issue in this Action, but it concerned John Hancock's expectations in years well before the COI Redetermination, and allegations—not proven facts—that John Hancock did not *decrease* COI rates says nothing about the extent to which John Hancock's expectations of future experience deteriorated in a way that would warrant an increase.

8

evidence of settlement the admission of which to prove liability is precluded by Rule 408. *See Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 528-30 (3d Cir.1995) (holding that Rule 408 bars the admission of internal memoranda prepared for settlement negotiations); *5 Weinstein's Federal Evidence* § 408.05 (2d ed. 2005) ("To promote settlement of disputes, there must be full and frank disclosure by each party of his or her position, and the facts on which he or she relies to sustain that position.").

*Second*, discussions regarding potential settlements and associated policy commutations are simply irrelevant. As an initial matter, . *See, e.g.*, Ex. EE, Naveed Irshad Depo. Tr. (Oct. 23, 2022) at 179:9-23 (emphasis added)).

Plaintiffs also cannot plausibly argue that John Hancock's discussions of potential settlements and associated commutations of John Hancock's policies owned by other entities is at all relevant to Plaintiffs' claim that John Hancock breached the terms of the Performance UL policies by increasing COI rates in a way that was unfairly discriminatory. The Performance UL policies at issue only preclude *changing COI rates* in a manner that is unfairly discriminatory; they say nothing about offering to settle potential claims and commute policies belonging to some policyholders and not others. *See, e.g.*, Ex. E, DX C, JH_LEONARD_000011149 at -164 (03PERUL form stating: "Any *change* in the Applied Monthly Rates for the Basic Sum Insured or for the Additional Sum Insured will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including smoker status, and whose

9

policies have been in force for the same length of time."); Ex. F, DX D, JH_LEONARD_000175087 at -109 (06PERFUL form stating: "We review our Cost of Insurance rates from time to time, and may *redetermine* Cost of Insurance rates at that time on a basis that does not discriminate unfairly within any class of lives insured."). Thus, a potential settlement and related policy commutations have no bearing on whether John Hancock *redetermined COI rates* in a manner that was unfairly discriminatory. *See* Fed. R. Evid. 401 (defining as relevant evidence that has any tendency to make a fact of consequence more or less probable than it would be without the evidence).[6] And even if it did have some bearing on Plaintiffs' claims, Plaintiffs have no evidence that there were *in fact* any commutations of Performance UL policies owned by other entities ▮▮▮.

Finally, communications regarding potential settlements and associated commutations—even if admissible for a purpose other than proving liability—are plainly prejudicial given that the jury may inaccurately infer that John Hancock has acknowledged wrongdoing when it has not. *See, e.g., Antilles S.S. Co. v. Members of Am. Hull Ins. Syndicate*, 733 F.2d 195, 200 n.3 (2d Cir. 1984) (finding material tied to a settlement but not directly covered by Rule 408 was irrelevant and prejudicial as "a desire to avoid substantial litigation expenses, the need to maintain good client relations or even a mistaken view of the facts … or law might have motivated the [party] to pay.").

For the foregoing reasons, the Court should exclude evidence regarding settlement discussions and associated policy commutations with third parties pursuant to Fed. R. Evid. 401, 402, 403, and 408.

---

[6] Indeed, the argument proves too much: if settlements and associated policy commutations breach the Performance UL policies, any settlement agreement entered into with one group of policyholders but not others—including the class settlement agreement approved by this Court, *see Leonard as Tr. of Poplawski 2008 Ins. Tr. v. John Hancock Life Ins. Co. of New York*, No. 18-cv-04994 (S.D.N.Y. May 17, 2022), ECF No. 221—would be a breach of the Performance UL policies.

## CONCLUSION

For the foregoing reasons, John Hancock respectfully requests that the Court issue an order precluding Plaintiffs from introducing any evidence or argument regarding settlement negotiations or settlements reached in connection with any dispute or potential dispute between John Hancock and owners of its life insurance policies.

Date: January 27, 2023

/s/ Matthew T. Martens
Matthew T. Martens
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363


Robert K. Smith (*pro hac vice*)
Yavor Nechev (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109 USA
Tel.: (617) 526-6000
Fax: (617) 526-5000

John F. LaSalle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York*