IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>          Plaintiffs,<br><br>          v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br><br>          Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br><br>          Plaintiffs,<br><br>          v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | |

|  |
|---|
| Defendant. |
| EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,<br><br>          Plaintiffs,<br><br>    v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>          Defendant. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 5: TO EXCLUDE EXPERT TESTIMONY OF LARRY STERN ABOUT WHETHER JOHN HANCOCK ACTED IN GOOD FAITH**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 2

III. LEGAL STANDARDS ................................................................................................... 5

IV. ARGUMENT ................................................................................................................... 6

    A. Mr. Stern's Testimony About Whether John Hancock Acted in Good Faith Should Be Excluded Because It Is a Lay Matter Reserved for the Jury, and Is Not a Proper Subject of Expert Testimony ......................................................... 6

    B. Mr. Stern's Testimony About Whether John Hancock Acted in Good Faith Should Be Excluded Because He Does Not Have Expertise in Assessing a Person's State of Mind or Intent ............................................................................. 7

    C. Mr. Stern's Testimony About Whether John Hancock Acted in Good Faith Should Be Excluded Under Federal Rule of Evidence 703 Because Its Probative Value, If Any, Is Substantially Outweighed by the Dangers of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time ................................................................................................................... 8

V. CONCLUSION ................................................................................................................ 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
815 F. Supp. 2d 673 (S.D.N.Y. 2011) ..................................................................................6

*Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*,
No. 01 CIV. 3796 (PKL), 2004 WL 1970144 (S.D.N.Y. Sept. 3, 2004) ..............................6

*In re Fosamax Prod. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009) .................................................................................7

*Palmieri v. Defaria*,
88 F.3d 136 (2d Cir. 1996) .................................................................................................6

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ..............................................................................6, 7

*SEC v. Am. Growth Funding II, LLC*,
No. 16-CV-828 (KMW), 2019 WL 1772509 (S.D.N.Y. Apr. 23, 2019) ............................6

*Whalen v. CSX Transp., Inc.*,
No. 13-cv-3784 (LGS), 2016 WL 5723877 (S.D.N.Y. Sept. 29, 2016) ..............................6

**Statutes**

Fed. R. Evid. 403 ....................................................................................................................5, 8

Fed. R. Evid. 702 ...........................................................................................................5, 6, 7, 9

Plaintiffs VICOF II Trust, Vida Longevity Fund, LP, Life Assets Trust II S.A. Delaware Trust, Vidaquant Sub-Fund Delaware Trust, and Vida Insurance Fund II Series Interests of the SALI Multi-Series Fund, LP (collectively, the "Vida Funds"); EFG Bank AG, Cayman Branch ("EFG"); Wells Fargo Bank, National Association ("Wells Fargo"), as securities intermediary for the Vida Funds and EFG (in such capacity, "Wells Fargo SI"); DLP Master Trust, DLP Master Trust II, GWG DLP Master Trust, Life Funding Trust, PF Participation Funding Trust, and Palm Beach Settlement Company (collectively, "EAA Plaintiffs," and together with Vida Funds, EFG, and Wells Fargo SI, "Plaintiffs") move the Court to exclude the expert testimony of Larry Stern (or any expert) about whether Defendants John Hancock Life Insurance Company (U.S.A.) ("JHUSA") and John Hancock Life Insurance Company of New York ("JHNY," and together with JHUSA, "John Hancock" or "Defendants") or its actuaries or personnel acted in good faith, including Mr. Stern's testimony in LeQuang Decl. Ex. 63 at 253:10-255:11 and 255:18-256:1, and to grant such other and further relief as the Court deems just and proper under the circumstances.

## I. INTRODUCTION

Plaintiffs seek an order from this Court to exclude expert Larry Stern's (or any expert's) testimony regarding (1) whether John Hancock's actuaries acted in good faith and (2) whether John Hancock's actuaries should be reported to the Actuarial Board for Counseling and Discipline. The Court should exclude such testimony for several reasons. First, neither Mr. Stern nor any other expert can offer an "expert" opinion on John Hancock's mental state because that issue is exclusively reserved to the jury. Second, neither Mr. Stern nor any other expert in this case is qualified to offer an expert opinion about anyone's mental state. And third, the probative value of Mr. Stern's testimony, which is none, is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time.

## II. BACKGROUND

Plaintiffs own 108 Performance UL policies (the "Policies") that John Hancock raised cost of insurance ("COI") rates on in 2018 ("COI Rate Increases"). The Policies require John Hancock to base COI rates on its expectations of future mortality and other enumerated factors. *See, e.g.*, Dkt. No. 179, Second Amended and Consolidated Complaint ("SACC"), Exs. 2, 4, 6. John Hancock violated Plaintiffs' Policies because the COI Rate Increases were not based on its expectations of future mortality and other enumerated factors and by "discriminating unfairly within any class of lives insured." *Id.* In addition, John Hancock's conduct was objectively unreasonable and done in bad faith. Evidence of John Hancock's bad faith includes, among other things:



- ███████████████████████████████████
  ███████████████████████████████████
  ███████████████████████████████████
  ███████████████████████████████████
  █████████ *See, e.g.*, LeQuang Decl. Ex. 3 at -398; *id.* Ex. 5 at -826; *id.* Ex. 9 at -487; *id.* Ex. 54.

- ███████████████████████████████████
  ████████████████████████████ *See, e.g.*, LeQuang Decl. Ex. 55 at -179-180, -214; *id.* Ex. 56 at -222; *id.* Ex. 57 at -228.

- ███████████████████████████████████
  ███████████████████████████████████
  ████████████████████████████ *See, e.g., id.* Ex. 58 at -681; *id.* Ex. 59 at -150, -162.

- 

  *See, e.g., id.* Ex. 60 at 307:5-13; *id.* Ex. 61 at -814.

Plaintiffs retained Larry Stern, an actuary with over 50 years of experience, to analyze the COI Rate Increases and offer actuarial opinions about them. Plaintiffs did not ask Mr. Stern to analyze and opine on John Hancock's and its actuaries' intent or state of mind, including whether they acted in good faith, and Mr. Stern did not do so. Mr. Stern documented his opinions in a 103-page report identifying numerous ways in which the COI Rate Increases were actuarially unreasonable, contrary to industry and actuarial custom and practice, and not based on John Hancock's actual expectations of the future. For example, Mr. Stern opined that the COI Rate Increases were "not based on changes to John Hancock's expectations of the enumerated cost factors." LeQuang Decl. Ex. 11 at 3. Mr. Stern also opined that the COI Rate Increases were unfairly discriminatory because John Hancock treated "policies within the same class differently." *Id.* at 3-4. Mr. Stern further concluded that "John Hancock's actuaries failed to fully follow several ASOPs [Actuarial Standards of Practice] when determining and implementing the COI Rate Increases." *Id.* at 4. Mr. Stern does ***not*** opine on whether John Hancock acted in good faith, or even mention "good faith" (or bad faith) in his report. *See generally* LeQuang Decl. Ex. 11.

At his deposition, John Hancock asked Mr. Stern several times whether he believed John Hancock's actuaries acted in good faith. Mr. Stern testified repeatedly that he was not asked to render, and was not rendering, an opinion on John Hancock's actuaries' intent or whether they acted in good faith, but rather whether the COI Rate Increases were actuarially reasonable and consistent with industry and actuarial custom and practice. Nevertheless, John Hancock's counsel

persisted in asking these questions throughout the deposition. For instance:

> Q. Mr. Stern, are you offering any opinion in your report that John Hancock made an intentional misrepresentation concerning any aspect of the policies at issue in this litigation?
> MR. KREBS: Objection to form.
> A. **I am not offering that opinion.**

LeQuang Decl. Ex. 62 at 42:23-43:3.

--

> Q. And just to be clear, comparing what you just said now to your earlier opinion, it's your view is that John Hancock should have used the higher assumption and should have realized that they should have used the higher assumption, but not that they intentionally misrepresented some feature?
> MR. KREBS: Objection -- hold on – objection to the form.
> A. I think if they were cognizant of their underlying experience, compared to the assumption that they were using to price the product, they would recognize that the mortality assumption was not reasonable. And I think Carmello's statement, it appears to him that it was not reasonable. **And so I don't know what was in the mind of the John Hancock actuaries at the time that they priced the products.** I don't know if they did or did not recognize that the assumption they were using had no relevance to their underlying experience, or if they did recognize that and blindly said, we're going to use this other assumption because we know it's going to result in being able to have the lowest cost product in the industry. **I wasn't there when they priced it. I don't know what was in their mind. So I can't speak to what their intent was.** I can speak to the fact that I think the assumption they used was unreasonable.

*Id.* at 123:25-124:25.

--

> Q. And is it your view that John Hancock used that 75/80 table in some way to intentionally create incorrectly low premium solves, or not?
> MR. KREBS: Objection to the form.
> A. **I don't know what was the in mind of the John Hancock actuaries, whether or not they intentionally did what they did or not.** I think they should have at least understood that what they were doing was going to lead to the result that -- that they wanted, to be able to have low premium solves. And also led to what Carmello commented on, and his belief that it appeared that it was an unreasonable assumption.

*Id.* at 171:1-13.

In response to one of these questions—and after testifying several times that he is not

rendering an opinion concerning whether John Hancock or its actuaries acted in good faith—Mr. Stern responded: "I'm not rendering an opinion with regard to that. I think the actuaries acted in good faith. But I think their performance is questionable with regard to -- especially the opinions that I state in my report." *Id.* Ex. 63 at 255:23-256:1. Mr. Stern also testified that he would not report John Hancock's actuaries for discipline to the Actuarial Board for Counseling and Discipline (the "ABCD") because he would have to first determine whether their violations of the actuarial standards were "way out of bounds," such as "cases of actuaries committing fraud," something he did not consider in conducting his work on this case. *See id.* at 253:10-255:11.

In its motion for summary judgment (which the Court denied), John Hancock cited Mr. Stern's testimony in support of its argument that John Hancock acted in good faith. Dkt. No. 191 ("MSJ") at 12. For the reasons discussed herein, however, such evidence is inadmissible, particularly in light of Mr. Stern's repeated answers that he was not offering an opinion about the states of mind of John Hancock's actuaries.

### III. LEGAL STANDARDS

Federal Rule of Evidence 403 grants the Court authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Under Federal Rule of Evidence 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d)

the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

If the evidence that a party plans to use at trial is inadmissible under any of the above rules, the Court may exclude the evidence before trial on a motion *in limine*. *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *see also Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, No. 01 CIV. 3796 (PKL), 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004).

IV. **ARGUMENT**

    A. **Mr. Stern's Testimony About Whether John Hancock Acted in Good Faith Should Be Excluded Because It Is a Lay Matter Reserved for the Jury, and Is Not a Proper Subject of Expert Testimony**

"Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004). Whether a party has acted in bad faith or with any specific intent are "lay matters which a jury is capable of understanding and deciding without the expert's help[,]" *id.* at 546 (quotation marks omitted), which means that such expert testimony is not helpful to the jury and violates Federal Rule of Evidence 702. Accordingly, courts in this district have consistently found that experts may not opine on a person's or company's good or bad faith. *See, e.g.*, *SEC v. Am. Growth Funding II, LLC*, No. 16-CV-828 (KMW), 2019 WL 1772509, at *1 (S.D.N.Y. Apr. 23, 2019) (finding expert's opinion about the defendant's "good faith belief" was "not an appropriate subject for expert testimony"); *Whalen v. CSX Transp., Inc.*, No. 13-cv-3784 (LGS), 2016 WL 5723877, at *9 (S.D.N.Y. Sept. 29, 2016) ("[A]n expert . . . may not opine as to a party's state of mind, whether a party acted in bad faith, or as to the credibility of witnesses."); *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 679 (S.D.N.Y. 2011) (finding expert could not testify that a party "acted in bad faith.").

Here, John Hancock seeks to establish that it acted in good faith by introducing expert testimony from Mr. Stern.  *See* MSJ at 12; *see also* LeQuang Decl. Ex. 63 at 255:18-256:1.  Setting aside whether Mr. Stern is rendering that opinion (he testified that he is not) and whether Mr. Stern has expertise in analyzing a person's intent (he does not), the simple fact remains that the inquiry into John Hancock's good faith is not a permissible topic for expert testimony.  A party's mental state is quintessentially a jury issue, not an expert issue.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547.  Therefore, the Court should exclude Mr. Stern's testimony that John Hancock acted in good faith.

> B. **Mr. Stern's Testimony About Whether John Hancock Acted in Good Faith Should Be Excluded Because He Does Not Have Expertise in Assessing a Person's State of Mind or Intent**

An expert witness must be qualified in the subject matter of an opinion to render that opinion admissible.  Federal Rule of Evidence 702 requires the expert witness to be "qualified as an expert by knowledge, skill, experience, training, or education" such that the "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702.  Courts in this district have excluded expert opinions regarding "the intent, motives or states of mind of corporations" because those experts had "no basis in any relevant body of knowledge or expertise" from which to form their opinions.  *See, e.g.*, *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).

Mr. Stern is an actuary, not a psychologist or mind reader.  He is not trained in diagnosing people's state of mind and intent.  As such, while Mr. Stern is highly qualified to opine on actuarial matters, he is not qualified to give an opinion about what other people were thinking or what their intent was in carrying out their job responsibilities.  *In re Fosamax Prod. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (granting motion to exclude expert testimony about "the knowledge,

motivations, intent, state of mind, or purposes" of the defendant and noting that the expert's professional experience "does not give her the ability to read minds."). An opinion about the subjective intent of John Hancock's actuaries, including whether they acted in good faith, is beyond the scope of Mr. Stern's expertise, and should be excluded under Federal Rule of Evidence 702.

### C. Mr. Stern's Testimony About Whether John Hancock Acted in Good Faith Should Be Excluded Under Federal Rule of Evidence 703 Because Its Probative Value, If Any, Is Substantially Outweighed by the Dangers of Unfair Prejudice, Confusing the Issues, Misleading the Jury, and Wasting Time

The Court also should exclude Mr. Stern's testimony about the purported "good faith" of John Hancock's actuaries under Federal Rule of Evidence 403 because any marginal probative value (it has none) is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Mr. Stern's view of what constitutes good or bad faith is not the law. The jury must be guided by the law, which they will be instructed in, in evaluating whether John Hancock acted in good faith. That is why the law puts this issue squarely in the jury's hands. Mr. Stern's definition of good faith could mean any number of things that have little or nothing to do with the law. If John Hancock is permitted to admit evidence concerning Mr. Stern's view of whether John Hancock acted in good faith, Plaintiffs will have to spend time examining Mr. Stern about his definition of good faith, which inevitably will depart from the law the jury will be instructed in. This would raise the strong likelihood of confusing the jury about what it is supposed to evaluate in determining whether John Hancock acted in good faith and misleading the jury into applying Mr. Stern's standard as opposed to the law. All this

confusion and misdirection can easily be avoided by excluding this inadmissible evidence and leaving the issue of good faith with the jury where it belongs.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter an order *in limine* excluding evidence by Larry Stern (or any expert) about whether John Hancock or its actuaries or personnel acted in good faith, including Mr. Stern's testimony in LeQuang Decl. Ex. 63 at 253:10-255:11 and 255:18-256:1, and grant such other and further relief as the Court deems just and proper under the circumstances.

Dated: January 27, 2023

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: /s/ Khai LeQuang

KHAI LEQUANG

Attorneys for Plaintiffs
VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUB-FUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; EFG BANK AG, CAYMAN BRANCH; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUB-FUND DELAWARE TRUST, VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP, AND EFG BANK AG, CAYMAN BRANCH; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST; LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; AND PALM BEACH SETTLEMENT COMPANY