IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK,<br><br>Defendant. | Index No. 19-cv-11093 (AKH) |
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), | |

|  |
|---|
| Defendant. |
| EFG BANK AG, CAYMAN BRANCH; and WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for EFG BANK AG, CAYMAN BRANCH,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),<br><br>　　　　　　Defendant. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 6: TO EXCLUDE EVIDENCE OF PLAINTIFFS' LIFE EXPECTANCIES AND POLICY VALUATIONS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................................ 1
II.    FACTUAL BACKGROUND .............................................................................................. 2
III.   LEGAL STANDARDS ....................................................................................................... 5
IV.    ARGUMENT ....................................................................................................................... 5
       A.   Evidence of Plaintiffs' Life Expectancies and Policy Valuations Is
            Irrelevant and Should Be Excluded Pursuant to Federal Rule of Evidence
            402 ............................................................................................................................ 5
       B.   Even If Evidence of Life Expectancies or Policy Valuations is Relevant—
            And It is Not—It Should Be Excluded Under Federal Rule of Evidence
            403 ............................................................................................................................ 7
V.     CONCLUSION .................................................................................................................... 8

-ii-

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996)......................................................................................................5

*Vega-Ruiz v. Montefiore Med. Ctr.*,
  408 F. Supp. 3d 530 (S.D.N.Y. 2019).....................................................................................5

**Other Authorities**

Federal Rule of Evidence 401................................................................................................................5

Federal Rule of Evidence 402........................................................................................................2, 5, 7

Federal Rule of Evidence 403........................................................................................................2, 5, 8

Plaintiffs VICOF II Trust, Vida Longevity Fund, LP, Life Assets Trust II S.A. Delaware Trust, Vidaquant Sub-Fund Delaware Trust, and Vida Insurance Fund II Series Interests of the SALI Multi-Series Fund, LP (collectively, the "Vida Funds"); EFG Bank AG, Cayman Branch ("EFG"); Wells Fargo Bank, National Association ("Wells Fargo"), as securities intermediary for the Vida Funds and EFG (in such capacity, "Wells Fargo SI"); DLP Master Trust, DLP Master Trust II, GWG DLP Master Trust, Life Funding Trust, PF Participation Funding Trust, and Palm Beach Settlement Company (collectively, "EAA Plaintiffs," and together with Vida Funds, EFG, and Wells Fargo SI, "Plaintiffs") move the Court to exclude evidence concerning Plaintiffs' life expectancies and policy valuations; and to grant such other and further relief as the Court deems just and proper under the circumstances.

## I. INTRODUCTION

Plaintiffs filed this action to hold Defendants John Hancock Life Insurance Company (U.S.A.) ("JHUSA") and John Hancock Life Insurance Company of New York ("JHNY," and together with JHUSA, "John Hancock" or "Defendants") accountable for the unjustified cost of insurance ("COI") rate increases (the "COI Rate Increases") it began imposing in 2018 on certain of Plaintiffs' Performance UL policies ("Policies"). John Hancock violated Plaintiffs' Policies in several ways, including because the COI Rate Increases were not based on its expectations of future mortality. This violates the Policies' requirement that COI rates "will be based on [John Hancock's] expectations of future mortality [and other enumerated factors]." *See* Dkt. No. 179-4 at 12. John Hancock's mortality assumptions and experience are therefore directly relevant to Plaintiffs' claims.

While the Policies require John Hancock to base COI rates on **John Hancock's** expectations of future mortality, John Hancock seeks to introduce evidence of life expectancies

-1-

prepared by third parties for Plaintiffs, and policy valuations based on those life expectancies, and compare them to John Hancock's mortality assumptions. Plaintiffs' life expectancies and policy valuations, however, have no bearing on whether John Hancock based the COI Rate Increases on its expectations of future mortality, or any other relevant issue in this case. Plaintiffs' policy valuations also are irrelevant to damages because Plaintiffs seek damages in the amount of the excess deductions and charges John Hancock took based on the increased COI rates, not diminution in value or anything else concerning valuations.

Evidence of Plaintiffs' life expectancies and policy valuations is therefore irrelevant and inadmissible under Federal Rule of Evidence 402. To the extent any such evidence is relevant, and it is not, it should be excluded under Federal Rule of Evidence 403 because its marginal probative value (none) is substantially outweighed by a danger of confusing the issues, misleading the jury, and wasting time.

## II. FACTUAL BACKGROUND

Plaintiffs' Policies state that COI rates "will be based on [John Hancock's] expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions" (or substantially similar language). *See, e.g.*, Dkt. No. 179-4 at 12.



*See, e.g.*, LeQuang Decl. Ex. 20 at -507-508.

*See, e.g.*, LeQuang Decl. Ex. 58 at -669-670. Plaintiffs claim John Hancock breached Plaintiffs' Policies because, among other reasons, the COI Rate Increases were not based

on John Hancock's actual expectations of future mortality. Whether JH17 reflected John Hancock's actual expectations of future mortality is, therefore, a relevant issue in this case.

A mortality assumption, like JH17, projects expected **_rates of death across large populations_**. The experience an insurance company uses to develop their mortality assumption is based on the original underwriting status of the population. A life expectancy, on the other hand, is the mean length of time **_an individual is expected to live_** based on the individual's health at the time the life expectancy is measured. An individual's life expectancy can change dramatically based on changes in her or his health. A life expectancy Plaintiffs obtain for an individual insured in 2017 is very likely going to reflect different and deteriorated underwriting compared to the original underwriting status of the insured at the time John Hancock issued the policy. Plaintiffs pay third parties to provide a life expectancy estimate of an individual based on their review of the individual's most recent medical records. This life expectancy, which is measured in months, is used to estimate how long Plaintiffs expect to pay premiums on a policy before it matures. A policy valuation is derived from a life expectancy and generally reflects the difference between the premiums Plaintiffs expect to pay over a future period and the payment of the death benefit at the end of the period.



See generally LeQuang Decl. Ex. 58. ██████████████████████████████████████████████

██████████████████████████████████████████████ *See generally id.* Ex. 7; *id.* Ex. 6; *id.* Ex. 20 at -508. John Hancock did not use Plaintiffs' life expectancies or policy valuations in any respect to determine the COI Rate Increases. Nor could

it have, because Plaintiffs' life expectancies and policy valuations are proprietary, and John Hancock did not have access to them until Plaintiffs produced them to John Hancock in discovery in this litigation (subject to Plaintiffs' relevance and other objections).

Nonetheless, John Hancock's preliminary exhibit list and deposition designations indicate that John Hancock intends to present evidence of Plaintiffs' life expectancies and policy valuations. *See, e.g.*, LeQuang Decl. Ex. 51 at 46:10-47:12, 49:10-21, 52:20-53:8, 53:20-55:25; *id.* Ex. 64 at -991-993; *id.* Ex. 65; *id.* Ex. 52 at 80:2-5, 81:12-21; *id.* Ex. 66.

Additionally, John Hancock intends to offer testimony by its actuarial expert, Timothy Pfeifer, comparing Plaintiffs' life expectancies with John Hancock's mortality assumptions as a basis for his opinion that John Hancock's mortality assumptions were reasonable. *See id.* Ex. 37 ¶¶ 292-293. For example, Mr. Pfeifer asserts:



*Id.* ¶ 293 (emphasis in original). Mr. Pfeifer asserts that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." *See id.* Ex. 67 at 173:2-20. These life expectancies are estimates of how long one individual will live based on her or his health—it has no bearing on population mortality rates. As explained below, Mr. Pfeifer's use of life expectancies as comparisons to John Hancock's JH17 mortality assumptions is an

irrelevant, unfairly prejudicial, unreliable, confusing, and misleading apples to oranges comparison.

## III. LEGAL STANDARDS

Irrelevant evidence is inadmissible. Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may rule on the relevance of evidence on an *in limine* motion. *See, e.g.*, *Vega-Ruiz v. Montefiore Med. Ctr.*, 408 F. Supp. 3d 530, 533 (S.D.N.Y. 2019) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).

Federal Rule of Evidence 403 grants the Court authority to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## IV. ARGUMENT

### A. Evidence of Plaintiffs' Life Expectancies and Policy Valuations Is Irrelevant and Should Be Excluded Pursuant to Federal Rule of Evidence 402

John Hancock has attempted to conflate its own mortality assumptions with Plaintiffs' life expectancies throughout this litigation. But a life expectancy is not a mortality assumption. As explained above, life expectancies are specific to individual insureds and estimate on average how long that individual may live based on her or his health. John Hancock, on the other hand, develops mortality assumptions, which consist of tables showing the number of expected deaths per 1,000 persons for large groups of lives. Those mortality assumptions are used for every person within a group and does not account for any specific person's health. To develop a mortality assumption, John Hancock looks at deaths across large populations of individuals. Insurance companies like

John Hancock do not use life expectancies to develop mortality assumptions. One individual's health, or even multiple individuals' health, says nothing about John Hancock's mortality assumption, which is based on the number of deaths among thousands of individuals. Whether a single insured is in good or bad health does not make it more likely than not that John Hancock has experienced, or will experience, more deaths than expected for a given population of insureds.

Comparing John Hancock's mortality assumptions to Plaintiffs' life expectancies and policy valuations is comparing apples and oranges. Plaintiffs' life expectancies predict how many months a specific individual has to live based on her or his current health and medical conditions at the time the life expectancy is measured, whereas John Hancock's mortality assumptions predict rates of death per 1,000 lives across large populations of policies, and are based (or, at least, are supposed to be based) on John Hancock's mortality experience, not any individual's health. John Hancock did not consider, and could not have considered, Plaintiffs' life expectancies and policy valuations based on those life expectancies in developing its mortality assumptions, because such information is proprietary to Plaintiffs. Insurance companies also are not entitled to insureds' updated medical information after initial underwriting. The only underwriting John Hancock has is the original underwriting of the insureds at the time their policies were issued years (often decades) earlier.

Evidence of Plaintiffs' policy valuations also is not relevant to the alleged defense that Plaintiffs have not suffered an injury or damage caused by John Hancock. *See* Dkt. No. 180, Defendants' Answer to Second Amended Complaint, at 22 (Third Defense). As explained above, Plaintiffs seek the excess deductions and charges John Hancock took as a result of the COI Rate Increases. Plaintiffs are ***not*** seeking damages based on their policy valuations or how the COI Rate Increases impacted their Policies' value. Plaintiffs' valuations do not factor into the

calculation of the excess charges and deductions John Hancock has taken as a result of the COI Rate Increases. That calculation stays the same no matter what value Plaintiffs assign to a policy.

Mr. Pfeifer admitted that . LeQuang Decl. Ex. 67 at 178:20-179:3, 179:14-19. He also testified that ." *Id.* at 186:9-187:6. Moreover, Mr. Pfeifer admitted . *Id.* at 176:22-178:7. The fundamental dissimilarities between Plaintiffs' life expectancies and John Hancock's mortality assumptions, including the information they are developed based on and what they are used to measure, render the "mortality rates" Mr. Pfeifer created based on Plaintiffs' life expectancies unreliable and useless to compare JH17 to.

Accordingly, evidence of Plaintiffs' life expectancies and policy valuations should be excluded because it is irrelevant and inadmissible under Federal Rule of Evidence 402.

**B.     Even If Evidence of Life Expectancies or Policy Valuations is Relevant—And It is Not—It Should Be Excluded Under Federal Rule of Evidence 403**

Any marginal probative value of evidence concerning Plaintiffs' life expectancies or policy valuations—and there is none—is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. As discussed above, Plaintiffs' life expectancies are not analogous to John Hancock's mortality assumptions, which are the real issue in this case. If John Hancock is allowed to present evidence of Plaintiffs' life expectancies or policy valuations, there is a significant risk that the jury will be confused about whether Plaintiffs'

life expectancies and policy valuations can or should be used to evaluate John Hancock's mortality assumptions. To the extent John Hancock attempts to argue as such, the jury is likely to be misled into believing Plaintiffs' life expectancies are comparable to John Hancock's mortality assumptions, or that policy valuations can be used in evaluating mortality assumptions. Plaintiffs will then be forced to spend unnecessary time presenting evidence to show why their life expectancies and policy valuations are irrelevant, and why they do not reflect John Hancock's expectations of future mortality, after John Hancock would have already wasted time presenting evidence regarding Plaintiffs' life expectancies and policy valuations to begin with.

Additionally, evidence of Plaintiffs' valuations could confuse the jury and mislead them to believe that the valuations must be considered in determining damages. The presentation of evidence related to Plaintiffs' valuations as they relate to Plaintiffs' damages (which they do not) is a waste of time and detracts from the actual issues that need to be resolved at trial. Evidence of Plaintiffs' life expectancies and policy valuations should therefore be excluded under Rule 403.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court enter an order *in limine* excluding evidence relating to Plaintiffs' life expectancies and policy valuations; and grant such other and further relief as the Court deems just and proper under the circumstances.

-9-

| | |
|---|---|
| Dated: January 27, 2023 | ORRICK, HERRINGTON & SUTCLIFFE LLP<br><br>By: _/s/ Khai LeQuang_<br>KHAI LEQUANG |

Attorneys for Plaintiffs
VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUB-FUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; EFG BANK AG, CAYMAN BRANCH; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUB-FUND DELAWARE TRUST, VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP, AND EFG BANK AG, CAYMAN BRANCH; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST; LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; AND PALM BEACH SETTLEMENT COMPANY