# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICOF II TRUST; VIDA LONGEVITY FUND, LP; WELLS FARO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST and VIDA LONGEVITY FUND, LP; and PF PARTICIPATION FUNDING TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK, <br> Defendant. | Index No. 19-cv-11093 (AKH) |

VICOF II TRUST; VIDA LONGEVITY FUND, LP; LIFE ASSETS TRUST II S.A. DELAWARE TRUST; VIDAQUANT SUBFUND DELAWARE TRUST; VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; WELLS FARGO BANK, NATIONAL ASSOCIATION, as securities intermediary for VICOF II TRUST, VIDA LONGEVITY FUND, LP, LIFE ASSETS TRUST II S.A. DELAWARE TRUST, VIDAQUANT SUBFUND DELAWARE TRUST, and VIDA INSURANCE FUND II SERIES INTERESTS OF THE SALI MULTI-SERIES FUND, LP; DLP MASTER TRUST; DLP MASTER TRUST II; GWG DLP MASTER TRUST LIFE FUNDING TRUST; PF PARTICIPATION FUNDING TRUST; and PALM BEACH SETTLEMENT COMPANY,

                              Plaintiffs,

     v.

JOHN HANCOCK LIFE INSURANCE COMPANY
(U.S.A.),

                    Defendant.

EFG BANK AG, CAYMAN BRANCH; and WELLS
FARGO BANK, NATIONAL ASSOCIATION, as
securities intermediary for EFG BANK AG,
CAYMAN BRANCH,

                        Plaintiffs,

    v.

JOHN HANCOCK LIFE INSURANCE COMPANY
(U.S.A.),

                        Defendant.

**DEFENDANTS JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.) AND
DEFENDANT JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW
YORK'S MEMORANDUM IN SUPPORT OF
<u>MOTION FOR CONTINUED SEALING</u>**

Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York (together, "John Hancock") respectfully request that the Court maintain under seal certain exhibits submitted in connection with Plaintiffs' oppositions to John Hancock's Motions *in Limine* Nos. 1-11 and Plaintiffs' opposition to John Hancock's Renewed Motion for Summary Judgment ("Plaintiffs' Oppositions"), as well as quotations from or summaries of information in those exhibits in Plaintiffs' Oppositions, Plaintiffs' Pretrial Memorandum, Plaintiffs' Responses and Objections to John Hancock's Rule 56.1 Statement of Undisputed Material Facts, and Plaintiffs' Rule 56.1 Statement of Additional Material Facts in Opposition to John Hancock's Renewed Motion for Summary Judgment.

This Motion pertains to two sets of documents Plaintiffs filed with this Court.  The first are exhibits to the Declaration of Khai LeQuang in Opposition to John Hancock's Motions *in Limine*, which Plaintiffs filed on February 16, 2023 in connection with their oppositions to John Hancock's Motions *in Limine*.  *See* ECF Nos. 306-315, 323-334, 336, 345, 350-355.  On February 17, 2023, John Hancock informed the Court that, pursuant to the terms of the Stipulated Confidentiality Agreement and Protective Order entered in this case (ECF No. 34) ("Protective Order"), it would move to maintain certain of the exhibits to the LeQuang Declaration under seal on or before March 9, 2023.  *See* ECF No. 366.[1]  The second set of documents are exhibits to the Declaration of Richard W. Krebs in Support of Plaintiffs' Opposition to John Hancock's Renewed Motion for Summary Judgment and the Declaration of Larry N. Stern in Support of Plaintiffs' Opposition to

---

[1]     Under the Protective Order, "[a]ny party seeking to have Confidential Discovery Material filed with the Court shall file a motion for leave to file under seal in compliance with Rule 4(B)(ii) of the Court's Individual Rules."  Protective Order ¶ 10(b).  "Within twenty-one (21) days after the filing of a motion for leave to file Confidential Discovery Material under seal, any party may file a motion with the Court seeking the continued sealing of the information, or certain parts of the information, originally sought to be filed under seal."  *Id.* ¶ 11.

John Hancock's Motion for Summary Judgment, which Plaintiffs file on March 5, 2023.  *See* ECF Nos. 388-400.  On March 8, 2023, John Hancock informed the Court that, pursuant to the terms of the Protective Order, it would move to maintain certain of the exhibits to the Krebs and Stern Declarations under seal on or before March 27, 2023.  *See* ECF No. 405.  John Hancock now moves to maintain under seal (i) the exhibits to the three relevant declarations identified in Exhibits 1, 2, and 3 to the Proposed Order accompanying this Motion; and (ii) references to or summaries of those exhibits in Plaintiffs' Oppositions, Plaintiffs' Pretrial Memorandum, Plaintiffs' Responses and Objections to John Hancock's Rule 56.1 Statement of Undisputed Material Facts, and Plaintiffs' Rule 56.1 Statement of Additional Material Facts in Opposition to John Hancock's Renewed Motion for Summary Judgment. (collectively the "Confidential Information").

As set forth in the accompanying Declaration of Zahir Bhanji ("Bhanji Declaration") and described more fully below, the Confidential Information consists of two categories of non-public, commercially sensitive, and proprietary information the disclosure of which would cause John Hancock significant competitive harm:

- Information concerning John Hancock's product development and management practices, including experience monitoring and analysis, actuarial assumptions and other product parameters, projections, analysis of product performance and profitability, and assessment of the regulatory environment applicable to John Hancock's products.

- Business strategy, including strategy with respect to disputes or potential disputes between John Hancock and owners of its life insurance policies, and proposed and/or contemplated strategic initiatives related to the management of John Hancock's various blocks of business, including blocks of business with no connection to this case.

Courts—including this Court—routinely order that material of this nature be maintained under seal.  *See, e.g.*, ECF Nos. 195, 215, 297, 372, 375 (sealing similar—and sometimes identical—materials).  The Court should do the same here.

3

## LEGAL STANDARD

While court records enjoy a presumption of openness to public inspection, that presumption is "rebuttable upon demonstration that closure is essential to preserve higher values and is narrowly tailored to serve that interest."  Rule 4(A), Individual Rules of the Honorable Alvin K. Hellerstein (internal quotation marks omitted).  To resolve a party's motion to keep certain "judicial documents" under seal, courts consider and balance (i) "the weight of the presumption of [public] access" against (ii) any "countervailing factors" including "the privacy interests of those resisting disclosure."  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006) (internal quotation marks omitted).

As the Second Circuit has instructed, "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."  *Lugosch*, 435 F.3d at 119 (internal quotation mark and brackets omitted).  Generally, the information at issue "will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance."  *Id.* (internal quotation mark omitted).  "[T]he presumption of public access in filings submitted in connection with discovery disputes or motions *in limine* is generally somewhat lower than the presumption applied to material introduced at trial, or in connection with dispositive motions such as motions for dismissal or summary judgment."  *Brown v. Maxwell*, 929 F.3d 41, 50 (2d Cir. 2019).  But even where the materials to be sealed were submitted together with a dispositive motion, the presumption of public access is lower where, as here, those materials are irrelevant to the motion's resolution.  *See City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 1177737, at *2 (S.D.N.Y. Mar. 29, 2021) ("[O]nly

a weak presumption of public access applies" to documents that are "irrelevant to the summary judgment motion," and that "the Court did not consider").[2]

After determining the weight of the presumption of access, the Court must "balance competing considerations against it," including a party's privacy interests in maintaining information under seal.  *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted).  "In determining the weight to be accorded an assertion of a right of privacy, courts should … consider the degree to which the subject matter is traditionally considered private rather than public," as well as "the sensitivity of the information and the subject."  *Amodeo*, 71 F.3d at 1051.  "Documents falling into categories commonly sealed are those containing trade secrets, confidential research and development information, marketing plans, revenue information, pricing information, and the like."  *Grayson v. Gen. Elec. Co.*, 2017 WL 923907, at *1, 3 (D. Conn. Mar. 7, 2017) (internal quotation marks omitted) (sealing "documents or information relevant to pricing, sales and profit"); *see also, e.g.*, *Tyson Foods, Inc. v. Keystone Foods Holdings, Ltd.*, 2020 WL 5819864, at *2 (S.D.N.Y. Sept. 30, 2020) (sealing sensitive business information); *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F.Supp.3d 566, 600 (S.D.N.Y. Sept. 28, 2018).  Such competing considerations can outweigh the presumption of public access to documents submitted together with dispositive motions—particularly where, as here, those materials are irrelevant to a motion's resolution.  *See Hanks v. Voya Ret. Ins. & Annuity Co.*, 2021 WL 2451981, at *2 (S.D.N.Y. June

---

[2]    As Plaintiffs acknowledged in their Opposition to John Hancock's Renewed Motion for Summary Judgment, John Hancock's Renewed Motion for Summary Judgment "raise[d] narrow questions of law" as to which no factual background was necessary.  *See* ECF No. 289 at 3. Plaintiffs nevertheless gratuitously introduced a significant volume of materials together with their Opposition, ostensibly because they "never had a chance to respond to the facts put forward by John Hancock in its original summary judgment papers."  *Id.*  These materials are not relevant to the Court's resolution of John Hancock's Renewed Motion for Summary Judgment.  And given the Parties recent stipulation, *see* ECF No. 404, the Court may never need to resolve that motion.

16, 2021) (sealing materials filed together with motion for summary judgment where materials represented "commercially sensitive information" such as "actuarial assumptions Defendants sued in the modeling and implementation of" cost of insurance rate redetermination").

Where the Court has found sealing appropriate for materials on summary judgment, sealing of the same materials is appropriate when submitted on a motion *in limine*.  *See Hanks v. Voya Ret. Ins. & Annuity Co*., 2021 WL 2451981, at *2 (S.D.N.Y. June 16, 2021).

## ARGUMENT

The Confidential Information identified in Exhibit 1 to the Proposed Order should be sealed because John Hancock's strong privacy interest in preventing disclosure of its non-public, proprietary, and commercially sensitive information outweighs the presumption of public access to such information.

## I.     The Confidential Information Is Commercially Sensitive, And Disclosure Would Materially Injure John Hancock's Business

"Foremost among the competing concerns that a court weighing disclosure must consider is the privacy interest of the person resisting disclosure." *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (internal quotation marks omitted).  In evaluating an asserted privacy interest by a party seeking to seal confidential information, courts consider both (i) "the degree to which the subject matter is traditionally considered private rather than public" and (ii) the "nature and degree of injury" that may flow from disclosure.  *Amodeo*, 71 F.3d at 1051.  "Commercial competitors seeking an advantage over rivals need not be indulged in the name of monitoring the courts." *Id.* For that reason, "courts will commonly grant a company's request for sealing of proprietary business information, such as internal analyses" or "business strategies" when "disclosure of that information could provide competitors with an unearned advantage." *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, 2022 WL 890184, at *2 (S.D.N.Y. Mar. 25, 2022).

Here, the Confidential Information consists of or expressly refers to two categories of non-public, proprietary, and/or commercially sensitive information the disclosure of which would cause John Hancock significant competitive harm: (i) information concerning John Hancock's product development and management practices,, including experience monitoring and analysis, actuarial assumptions and other product parameters, projections, analysis of product performance and profitability, and assessment of the regulatory environment applicable to John Hancock's products; and (ii) non-public financial information and business strategies, including strategy with respect to disputes or potential disputes between John Hancock and owners of its life insurance policies  and proposed and/or contemplated strategic initiatives related to the management of John Hancock's various blocks of business, including blocks of business with no connection to this case.

*First*, disclosure of non-public information concerning the development and management of John Hancock's products would cause John Hancock substantial competitive harm—a fact this Court has previously recognized when granting several of John Hancock's motions to seal.  *See, e.g.*, ECF Nos. 195, 215, 297.  As described in the Bhanji Declaration submitted with this Motion, the Confidential Information consists of non-public, commercially sensitive, and proprietary information that goes to the very heart of John Hancock's business, including pricing assumptions and parameters; projections; analysis of product performance and profitability; and assessment of the regulatory environment.  Bhanji Decl. ¶ 4.  This information is highly sensitive.  Life insurance companies compete with one another in large part through the manner in which they structure, price, and manage their products.  If John Hancock's competitors were able to obtain detailed information concerning John Hancock's proprietary product development and management practices, which it expends significant time and resources to develop, those competitors could use that information to price their competing life insurance products to undercut John Hancock's

competitive position and lure away prospective customers. *Id.* Disclosure could also substantially impair John Hancock's bargaining position when negotiating reinsurance coverage with its reinsurers, making any reinsurance obtained by John Hancock—and John Hancock's reinsured products—more expensive relative to competitors for which reinsurers do not have access to similar information. *Id.*

Given the substantial competitive harm that would flow from disclosing information concerning John Hancock's product development and management practices, it is no surprise that courts—including this Court—routinely order that such information be maintained under seal. *See, e.g.*, *W.J. Deutsch & Sons Ltd.*, 2022 WL 890184, at *3 (sealing documents related to "pricing lists" and "marketing strategies"); Order Granting Motion to Seal, *Relx Inc. v. Informatica Corp.*, 16-cv-9718-AKH (S.D.N.Y. Aug. 20, 2018), ECF No. 125 at 1–2 (Hellerstein, J.) (granting motion to seal exhibits "contain[ing] confidential … pricing information"); Memorandum Opinion and Order, *In re AXA Equitable Life Ins. Co.*, No. 1:16-cv-00740-JMF (S.D.N.Y. Nov. 3, 2017), ECF No. 135 at 4 (granting motion to seal documents disclosing "proprietary actuarial assumptions, processes, methodologies, and judgements that continue to inform or reflect [the life insurance company's] current mortality assumptions" (internal quotation mark omitted)); *Grayson*, 2017 WL 923907, at *3 (sealing "information relevant to pricing, sales and profit"); Order Granting Motion to Seal, *Decision Modeling, Inc. v. Timevalue Software, Inc.*, 9-cv-8364-AKH (S.D.N.Y. Jan. 11, 2010), ECF No. 54 (Hellerstein, J.) (granting motion to seal documents that would give a competitor insight into the moving party's internal development process and future products and plans).

*Second*, disclosure of John Hancock's non-public financial information and business strategy, including strategy with respect to disputes or potential disputes between John Hancock

and owners of its life insurance policies and various strategic initiatives that John Hancock has contemplated or undertaken, would cause John Hancock substantial competitive harm. If disclosed, competitors could use John Hancock's non-public financial information and business strategy to their competitive advantage. Bhanji Decl. ¶ 5. This information would enable John Hancock's competitors to take advantage of what they perceive as weaknesses in John Hancock's competitive position, and to use John Hancock's business strategy as a road map to usurp opportunities that John Hancock has begun to develop. *Id.* Disclosure of John Hancock's non-public financial information and business strategy would also place John Hancock at a comparative disadvantage in pursuing strategic initiatives with other market participants or in settlement negotiations with owners of its life insurance policies, which could use their greater knowledge of John Hancock's financial position and business strategy to John Hancock's disadvantage. *Id.* For example, reinsurance companies might seek to extract higher rates than they would have been able to but for the disclosure of the Confidential Information. *Id.*

As with pricing and product development information, courts routinely hold that documents reflecting non-public financial information and business strategy may be maintained under seal. *See, e.g.*, Order, *In re AXA Equitable Life Ins. Co.*, No. 1:16-cv-00740-JMF (S.D.N.Y. Mar. 23, 2017), ECF No. 315 (granting motion to seal document containing life insurance company's financial projections and planned accounting treatment of certain products); *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580, at *19 (S.D.N.Y. Jan. 10, 2018) (granting motion to seal documents "strategic in nature" and "reflect[ing] sensitive business information that the parties could reasonably wish to remain confidential"); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (allowing party to "maintain under seal," *inter alia*, "information relating to (1) its advertising expenditures and plans

[and] (2) its merchandising strategies, polices and sales"); *Nanjing Textiles IMP/EXP Corp. v. NCC Sportswear Corp.*, 2006 WL 2381847, at *2 (S.D.N.Y. Aug. 14, 2006)) (granting motion to seal audited financial statement).

## II.   John Hancock's Request To Maintain The Confidential Information Under Seal Is Narrowly Tailored

Requests to maintain material under seal are narrowly tailored if they are no broader than necessary to protect the compelling interests at stake.  In certain circumstances, a narrowly tailored request may require redactions.  *See, e.g.*, *Sellick v. Consol. Edison Co. of N.Y., Inc.*, 2017 WL 1133443, at *8 (S.D.N.Y. Mar. 23, 2017) (finding that "limited redaction" of terms related to parties' settlement agreement was "narrowly tailored" and granting motion to redact "handful of phrases and sentences in … opposition brief").  But sealing an entire document may be appropriate where the extent of the necessary redactions makes redaction impractical, *Hypnotic Hats, Ltd.*, 335 F. Supp. 3d at 600 (maintaining entire exhibit under seal because it could not "be practicably redacted"), such as where the document consists entirely of material that meets the criteria for sealing, *see Avocent Redmond Corp. v. Raritan Ams., Inc.*, No. 10 CIV. 6100 PKC, 2012 WL 3114855, at *16 (S.D.N.Y. July 31, 2012) (sealing in their entirety exhibits containing commercially sensitive information).

John Hancock's request to maintain the Confidential Information under seal is narrowly tailored.  John Hancock has proposed that certain exhibits and limited portions of Plaintiffs' Oppositions. Plaintiffs' Pretrial Memorandum, Plaintiffs' Responses and Objections to John Hancock's Rule 56.1 Statement of Undisputed Material Facts, and Plaintiffs' Rule 56.1 Statement of Additional Material Facts in Opposition to John Hancock's Renewed Motion for Summary Judgment be redacted in a manner that balances the public's interest in disclosure against John Hancock's interest in confidentiality.  The proposed redactions are no broader than necessary to

ensure that John Hancock does not suffer competitive harm while also enabling the public to evaluate the Parties' submissions.  The remaining exhibits consist almost entirely of non-public, commercially sensitive, and proprietary information and therefore cannot practicably be redacted without unduly burdening John Hancock's legitimate and substantial interest in confidentiality. Accordingly, it is appropriate to seal those exhibits in their entirety.

## CONCLUSION

In light of the foregoing, John Hancock respectfully requests that the Court grant this motion for continued sealing and enter the Proposed Order submitted herewith.

Date: March 9, 2023

/s/ Matthew T. Martens
Matthew T. Martens
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363

Robert K. Smith (*pro hac vice*)
Yavor Nechev (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109 USA
Tel.: (617) 526-6000
Fax: (617) 526-5000

John F. LaSalle
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Tel.: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Defendants John Hancock Life Insurance Company (U.S.A.) and John Hancock Life Insurance Company of New York*